DAVID L. NEALE (SBN 141225)
JEFFREY S. KWONG (SBN 288239)
LEVENE, NEALE, BENDER, YOO & Golubchik L.L.P.
2818 La Cienega Avenue
Los Angeles, California 90034
Telephone: (310) 229-1234; Facsimile: (310) 229-1244
Email: dln@lnbyg.com; jsk@lnbyg.com

Proposed Attorneys for Chapter 11 Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
SAN FERNANDO VALLEY DIVISION**

| | |
|---|---|
| In re: <br><br> AFTERSHOCK COMICS, LLC, a California limited liability company, <br><br> Debtor and Debtor in Possession. | Case No.: 1:22-bk-11456-MB <br><br> Chapter 11 Case <br><br><br> **EX PARTE MOTION FOR ENTRY OF AN ORDER FOR JOINT ADMINISTRATION OF CASES; DECLARATION OF JONATHAN KRAMER IN SUPPORT THEREOF** <br><br> [No Hearing or Notice Required Pursuant To Local Bankruptcy Rule 1015-1] |

1

Pursuant to Local Bankruptcy Rule 1015-1(b)[1], Aftershock Comics, LLC, a California limited liability company ("Aftershock") and Rive Gauche Television, a California corporation ("RGTV, and together with Aftershock, the "Debtors") move (the "Motion"), on an *ex parte* basis, for the entry of an order for joint administration of the Debtors' cases.

### I.    STATEMENT OF FACTS

#### A.    BACKGROUND

1. Each of the Debtors filed a voluntary petition under Chapter 11 of 11 U.S.C. §§ 101 *et seq*. (the "Bankruptcy Code") on December 19, 2022 (the "Petition Date").  The Debtors continue to operate their businesses, manage their financial affairs and operate their bankruptcy estates as debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

2. Together, the Debtors comprise (and work together as) the "Aftershock Media" enterprise ("ASM") – which unites a rapidly growing comic creation and publishing business (Aftershock) with a proven film/television production and distribution platform (RGTV) for a global audience.  ASM has three principal lines of business:

- (1) "**Traditional TV Licensing and Advertising Video on Demand (AVOD) Distribution**" related to RGTV's distribution of rights to the RGTV Library (defined below, and which consists primarily of unscripted television programming);
- (2) "**Retail Comics**" related to Aftershock's sale of comic books and related products through retail channels; and
- (3) "**Comic Book IP Development and Exploitation**" related to Aftershock's creation, worldwide licensing, and/or sale of comic IP (defined below) for use in scripted television or film programming.

3. Aftershock is engaged in the business of developing, creating, and publishing comic books and graphic novels, which it sells through retail channels (*e.g.*, bookstores).  Aftershock also

---

[1] Because the Debtors have been informed that Judge Barash will be presiding over both of the Debtors' cases, this Motion is being filed on an *ex parte* basis pursuant to LBR 1015-1(b)(1).

creates and owns original intellectual property content related to its comic books ("IP"), which it controls for exploitation in all forms of media. Exploitation of the IP includes not only Aftershock's ability to sell the IP, but also to license such IP to other companies for conversion to other forms of media such as scripted television and film. Aftershock currently has interests in more than 150 IP properties (which it expects to increase by approximately 36 IP properties per year).

4. Aftershock's affiliate, RGTV, is a leading co-producer and distributor of television programing around the world. Since its founding in 1994, RGTV has acquired distribution rights ("Distribution Rights") to a library of over 166 titles, representing over 2,200 episodes and 1,700 hours of non-scripted television and documentary programming (the "RGTV Library"). Well known series in the RGTV Library include *Dog Whisperer with Cesar Milan*, *Homicide Hunter*, *My Strange Addiction*, *Ice Cold Killers*, and *Sins and Secrets*, and the genres in the RGTV Library include true crime, reality, animal/wildlife, and documentary.

5. RGTV generates revenue by sublicensing or selling its Distribution Rights to broadcast networks and other licensees in territories around the world. When RGTV sublicenses or sells distribution rights in a territory, it earns a sales fee and recoups any advances paid to the producers/licensors of the series, as well as any marketing costs advanced. Active titles in the RGTV Library have generated approximately $102 million in revenue since inception, and $19.4 million in sales over the past five (5) years.

6. The Debtors' senior secured lender is Access Road Capital LLC, a Delaware limited liability company (the "Lender" or "Access Road"). The Debtors originally[2] borrowed money from the Lender in March 2020 in the principal amount of $11,090,000[3] (the "Loan") pursuant to the

---

[2] RGTV and East West Bank ("EWB") previously entered into the "*Amended and Restated Credit and Security Agreement, dat4ed as of November 23, 2012*" (as amended, supplemented, or otherwise modified, the "EWB Credit Agreement"), pursuant to which EWB extended a revolving credit facility to RGTV (the "EWB Loan"). A portion of the proceeds from the Loan (as defined above) were subsequently used for Access Road's purchase of the EWB Loan from EWB.

[3] The initial Loan amount, as set forth in the Loan Agreement, consists of: (1) $11,000,000 for the "Base Loan Amount"; (2) $35,000 for the Lender's legal fees; and (3) $55,000 for the "BondIt arrangement fee."

"*Second Amended And Restated Credit And Security Agreement*" (the "Loan Agreement," and collectively with the other loan documents, the "Loan Documents"). The Loan Agreement was amended by the "*Amendment To Second Amended And Restated Credit And Security Agreement*" dated October 15, 2021 (the "Amendment") whereby the Lender agreed to lend additional funds to RGTV, in an amount "equal to . . . 85% . . . of [certain] receivables . . . payable to RG[TV] . . . not to exceed . . . $2,392,000[.]" The Debtors are jointly and severally liable to repay the Loan, and Lender asserts that the Loan is secured by all, or substantially all, of the Debtors' assets.

7. Pursuant to the Loan Documents, the Debtors were required to make: (1) "Required Interest Payments" on "(a) September 26, 2021; (b) March 26, 2022; (c) September 26, 2022; (d) March 26, 2023; (e) September 26, 2023; and (f) March 26, 2024"; and (2) "Principal Payments" on "(a) March 26, 2022; (b) March 26, 2023; and (c) March 26, 2024, but only if the Lender has . . . agreed to extend the Maturity Date by twelve (12) months." (Loan Agreement, pgs. 11 & 15).

8. Although the Debtors' businesses were highly successful prior to the COVID-19 pandemic (the "Pandemic"), the circumstances surrounding the Pandemic have detrimentally impacted the Debtors' operations and financial condition. For example, after the Pandemic started: (1) RGTV's revenues and sales suffered because channel buyers were taking longer to decide on transactions with RGTV regarding Distribution Rights licenses and sales; and (2) Aftershock's revenues and sales suffered because many of the retail outlets for comic books and related material were closed during the Pandemic, and Aftershock's management was forced to hold back new comic IP releases during the height of the Pandemic.

9. In addition, the Debtors' financial problems were exacerbated by liquidity problems associated with insufficient junior capital to fund the high cash requirements of their new business ventures that have long investment lead times. For example, regarding ASM's:

- (1) **"AVOD Distribution" line of business**: RGTV experienced delayed decisions with clients and broadcasters during the COVID-19 pandemic that led to revenue shortfalls, high upfront AVOD costs, and a longer delivery process for content, and longer payment terms.

- (2) **"Retail Comics" line of business**: Aftershock faced higher printing costs as a result of supply chain issues. Moreover, Aftershock's liquidity problems can be attributed to substantial investments that are associated with the creation of new comic IP.
- (3) **"Development and Exploitation of Comic IP" line of business**: Aftershock experienced longer than expected negotiations for comic IP "option" deals, and a longer than expected developmental process to convert IP "options" to film and television production. However, with respect to the IP "options," many of these deals are on the cusp of reaching a steady-state to generate revenue to Aftershock.

10. As a result of these liquidity and other financial issues, the Debtors were unable to make certain Loan payments to the Lender (and several of their other creditors and vendors). The Lender asserted that defaults occurred under the Loan, and: (1) provided the Debtors with a written Notice of Default; and (2) on October 10, 2022, initiated an action in the California Superior Court titled "*Access Road Capital, LLC v. Rive Gauche Television, et al.*," LASC Case No.22STCV33196 (the "State Court Action") against the Debtors and other parties. Although the Debtors attempted pre-petition to negotiate in good faith to reach an agreement with the Lender, those negotiations reached an impasse.

11. In order to, among other reasons, continue operations and preserve the Debtors' going concern values for their creditors, the Debtors filed for bankruptcy protection on the Petition Date. In their respective Chapter 11 cases, the Debtors plan to restructure their financial affairs, obtain possible refinancing of the debt facility (with the current Lender or a new lender), seek investors, and/or propose a joint plan which will pay their creditors.

12. Although Aftershock's and RGTV's bankruptcy cases were initially assigned to Judge Martin Barash and Judge Victoria Kaufman respectively, the Debtors were subsequently informed by the Court that Judge Barash would be presiding over both of the Debtors' cases.

B. **JOINT ADMINISTRATION MOTION**

13. Through this Motion, the Debtors are seeking joint administration of their bankruptcy cases.

14. As noted above, the Debtors together comprise (and work together as) the ASM enterprise to unite a proven film/TV production and distribution platform with a rapidly growing comic creation and publishing business for a global audience. In addition, the Debtors share a common secured creditor (*i.e.*, the Lender) that has security interests in substantially all of the Debtors' assets. As of November 2022, the Lender contends that the Debtors are jointly and severally indebted to the Lender in an amount of approximately $16,785,928 (which includes asserted default interest) under the Loan.

15. Further, the Debtors are "affiliates" of one another. Jon Kramer ("Kramer") is the trustee of The Kramer Family Trust dated April 11, 1994 (the "Trust"), the sole shareholder of RGTV. Kramer also owns 40.88% of the ownership interest in Aftershock. As a result, Kramer ultimately owns, controls, or holds with power to vote, more than 20% of the outstanding voting securities of both of the Debtors.

## II.    BASIS FOR RELIEF

Rule 1015(b) of the Federal Rules of Bankruptcy Procedure ("Rule 1015(b)") provides, in pertinent part, "[i]f a joint petition or two or more petitions are pending in the same court by or against . . . (4) a debtor and an affiliate, the court may order joint administration of the estates. Prior to entering an order, the court shall give consideration to protecting creditors of different estates against potential conflicts of interest. . . ." Fed. R. Bankr. P. 1015(b).

Joint administration of the Debtors' cases is warranted and appropriate under Rule 1015(b) of the Federal Rules of Bankruptcy Procedure because the Debtors are "affiliates," as that term is defined in the Bankruptcy Code. Bankruptcy Code 101(2)(A) and (B) defines affiliate, in pertinent part, as follows: "An [entity] that directly or indirectly owns, controls, or holds with power to vote, 20 percent or more of the outstanding voting securities of the debtor . . . corporation 20 percent or more of whose outstanding voting securities are directly or indirectly owned, controlled, or held with power to vote, by the debtor, or by an entity that directly or indirectly owns, controls, or holds with power to vote, 20 percent or more of the outstanding voting securities of the debtor." *See* 11 U.S.C. § 101(2)(A) and (B).

The Debtors are "affiliates" of one another.  Kramer is the trustee of The Kramer Family Trust dated April 11, 1994 (the "Trust"), the sole shareholder of RGTV.  Kramer also owns 40.88% of the ownership interest in Aftershock.  As a result, Kramer ultimately owns, controls, or holds with power to vote, more than 20% of the outstanding voting securities of both of the Debtors.

In addition, the affairs of the Debtors are sufficiently intertwined to warrant joint administration of their two cases.  As discussed above, the Debtors together comprise (and work together as) the "Aftershock Media" enterprise – which unites a rapidly growing comic creation and publishing business (Aftershock) with a proven film/television production and distribution platform (RGTV) for a global audience.

The proposed joint administration of the Debtors' estates will not have a detrimental impact on creditors of different estates with respect to potential conflicts of interest. This Motion seeks joint administration for procedural efficiency purposes, and not substantive consolidation of the estates.

Joint administration will further the goals of procedural efficiency – especially because the Debtors also share the Lender as a major creditor in their cases.  Specifically, as of November 2022, the Lender contends that the Debtors are jointly and severally indebted to the Lender under the Loan.  The Debtors' financial problems were exacerbated by liquidity problems associated with insufficient junior capital to fund the high cash requirements of their new business ventures that have long investment lead times.  As a result, the Debtors were unable to make certain Loan payments to the Lender, and certain of its vendors.  Shortly before the Petition Date, the Lender initiated the State Court Action against, among other parties, the Debtors.  In order to, among other reasons, continue operations and preserve the Debtors' going concern values for their creditors, the Debtors filed for bankruptcy protection on the Petition Date.  In their respective Chapter 11 cases, the Debtors plan to restructure their financial affairs, obtain possible refinancing of the debt facility (with the current Lender or a new lender), seek investors, and/or propose a joint plan which will pay their creditors.

The Debtors further believe that joint administration of their cases will avoid duplicative expenses and will ensure that creditors and interested parties in the cases will receive appropriate notice of all pertinent matters. In addition, the Debtors believe that the joint administration of the Debtors' cases, including the use of a single pleadings docket, the combining of notices to interested parties of the Debtors' estates, and the joint handling of purely administrative matters will aid in expediting the cases and rendering the process less costly, without prejudicing the substantive rights of any creditor.

Granting joint administration will eliminate the further need for the Debtors to file identical motions and orders in each of the Debtors' cases when seeking relief that is common to all of the Debtors, will avoid the further waste of judicial resources related to, for example, the docketing of identical motions, declarations and orders in each of the cases, and will allow the estates to avoid the substantial copy costs and service costs associated with filing and serving duplicative motions and other pleadings in the cases.

In the event that the Court orders the joint administration of the Debtors' cases, the Debtors respectfully request that the following caption be approved, and that Aftershock's case be designated as the lead case:

| In re:<br><br>AFTERSHOCK COMICS, LLC, a California limited liability company,<br><br>      Debtor and Debtor in Possession. | Lead Case No.: 1:22-bk-11456-MB<br><br>Jointly administered with:<br>1:22-bk-11457-MB (Rive Gauche Television) |
|---|---|
| In re:<br><br>RIVE GAUCHE TELEVISION, a California corporation,<br><br>      Debtor and Debtor in Possession. | Chapter 11 Cases |
| ☐ Affects both Debtors<br>☐ Affects AfterShock Comics, LLC only<br>☐ Affects Rive Gauche Television only | Date:<br>Time:<br>Place: |

8

### III. CONCLUSION

Accordingly, the Debtors respectfully request that this Court enter an order, in the form lodged concurrently herewith:

    (a)    authorizing the joint administration of the Debtors' cases;

    (b)    approving the form of caption suggested herein; and

    (c)    granting such other and further relief as the Court deems just and proper.

Dated: December 19, 2022

AFTERSHOCK COMICS, LLC &
RIVE GAUCHE TELEVISION

*/s/ Jeffrey S. Kwong*
David L. Neale
Jeffrey S. Kwong
LEVENE, NEALE, BENDER, YOO
& GOLUBCHIK L.L.P.
Proposed Counsel for Debtors and Debtors in Possession

## DECLARATION OF JONATHAN KRAMER

I, Jonathan Kramer, hereby declare as follows:

1. I am over 18 years of age. I am the Chief Executive Officer and President of AfterShock Comics, LLC ("Aftershock") and Rive Gauche Television ("RGTV," and together with Aftershock, the "Debtors"), respectively, the debtors and debtors in possession in the above-captioned Chapter 11 bankruptcy cases, and am therefore familiar with the business operations and have access to and knowledge regarding the financial books and records of the Debtors. I have personal knowledge of the facts set forth below and, if called to testify as a witness, I could and would competently testify thereto.

2. I am familiar with the history, organization, operations and financial condition of the Debtors. The records and documents referred to in this Declaration constitute writings taken, made, or maintained in the regular or ordinary course of the Debtors' business at or near the time of act, condition or event to which they relate by persons employed by the Debtors who had a business duty to the Debtors to accurately and completely take, make, and maintain such records and documents. The statements set forth in this declaration are based upon my own personal knowledge and my review of the Debtors' books and records.

3. I make this declaration in support of the *ex parte* motion for joint administration of the Debtors' bankruptcy cases (the "Motion").[4]

4. I believe that the joint administration of the Debtors' Chapter 11 bankruptcy cases is appropriate.

5. As noted in the Motion, the Debtors are "affiliates" of one another. The Kramer Family Trust dated April 11, 1994 (the "Trust"), for which I am a co-trustee, is the sole shareholder of RGTV; and I own 40.88% of the ownership interest in Aftershock. As a result, I ultimately own,

---

[4] All capitalized but undefined terms herein shall have the same meanings ascribed to them in the Motion.

control, or hold with power to vote, more than 20% of the outstanding voting securities of both of the Debtors.

6. Further, the affairs of the Debtors are sufficiently intertwined to warrant joint administration of their two cases. As discussed above, the Debtors together comprise (and work together as) the "Aftershock Media" enterprise – which unites a rapidly growing comic creation and publishing business (Aftershock) with a proven film/television production and distribution platform (RGTV) for a global audience.

7. I believe that the proposed joint administration of the Debtors' estates will not have a detrimental impact on creditors of different estates with respect to potential conflicts of interest. This Motion seeks joint administration for procedural efficiency purposes, and not substantive consolidation of the estates.

8. I believe that joint administration will further the goals of procedural efficiency – especially because the Debtors also share the Lender as a major creditor in their cases. Specifically, as of November 2022, the Lender contends that the Debtors are jointly and severally indebted to the Lender in an amount of approximately $16,785,928 (which includes asserted default interest) under the Loan. The Debtors' financial problems were exacerbated by liquidity problems associated with insufficient junior capital to fund the high cash requirements of their new business ventures that have long investment lead times. As a result, the Debtors were unable to make certain Loan payments to the Lender, and certain of its vendors. Shortly before the Petition Date, the Lender initiated the State Court Action against, among other parties, the Debtors. In order to, among other reasons, continue operations and preserve the Debtors' going concern values for their creditors, the Debtors filed for bankruptcy protection on the Petition Date. In their respective Chapter 11 cases, the Debtors plan to restructure their financial affairs, obtain possible refinancing of the debt facility (with the current Lender or a new lender), seek investors, and/or propose a joint plan which will pay their creditors.

9. I further believe that the joint administration of the Debtors' cases will avoid duplicative expenses and will ensure that creditors and interested parties in the cases will receive

appropriate notice of all pertinent matters. In addition, I believe that the joint administration of the Debtors' cases, including the use of a single pleadings docket, the combining of notices to interested parties of both estates, and the joint handling of purely administrative matters will aid in expediting the cases and rendering the process less costly, without prejudicing the substantive rights of any creditor.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 18 day of December, 2022 at Sherman Oaks, California.

_____
JONATHAN KRAMER

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:  2818 La Cienega Avenue, Los Angeles, CA 90034

A true and correct copy of the foregoing document entitled (*specify*): **EX PARTE MOTION FOR ENTRY OF AN ORDER FOR JOINT ADMINISTRATION OF CASES; DECLARATION OF JONATHAN KRAMER IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On ***December 19, 2022*** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On ***December 19, 2022,*** I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Via First Class Mail
**Honorable Martin Barash**
United States Bankruptcy Court
Central District of California
21041 Burbank Boulevard, Suite 342 / Courtroom 303
Woodland Hills, CA 91367

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on ***December 19, 2022,*** I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| ***December 19, 2022*** | ***Jason Klassi*** | /s/ Jason Klassi |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012* **F 9013-3.1.PROOF.SERVICE**

**1:22-bk-11456-MB Notice will be electronically mailed to:**

David L. Neale on behalf of Debtor AfterShock Comics, LLC
dln@lnbyg.com

United States Trustee (SV)
ustpregion16.wh.ecf@usdoj.gov