1  DAVID L. NEALE (SBN 141225)
2  JEFFREY S. KWONG (SBN 288239)
   LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.
3  2818 La Cienega Avenue
   Los Angeles, California 90034
4  Telephone:  (310) 229-1234; Facsimile:  (310) 229-1244
   Email: dln@lnbyg.com; jsk@lnbyg.com
5
6  Proposed Attorneys for Chapter 11 Debtors
   and Debtors in Possession
7

8           UNITED STATES BANKRUPTCY COURT
            CENTRAL DISTRICT OF CALIFORNIA
9           SAN FERNANDO VALLEY DIVISION

10

11  In re:                                )  Lead Case No. 1:22-bk-11456-MB
                                          )
12  AFTERSHOCK COMICS, LLC, a California  )  Jointly ademinstered with:
    limited liability company,            )  1:22-bk-11457-MB
13                                        )  (Rive Gauche Television).
            Debtor and Debtor in Possession.  )
14  _____  )  Chapter 11 Cases
    In re:                                )
15                                        )
    RIVE GAUCHE TELEVISION, a California  )
16  corporation,                          )
                                          )
17          Debtor and Debtor in Possession.  )
    _____  )
18  ⊠  Affects both Debtors               )
    ☐  Affects AfterShock Comics, LLC only  )
19  ☐  Affects Rive Gauche Television only  )
                                          )
20                                        )  **DECLARATION OF JONATHAN**
                                          )  **KRAMER IN SUPPORT OF**
21                                        )  **DEBTORS' EMERGENCY "FIRST**
                                          )  **DAY" MOTIONS**
22                                        )
                                          )  Hearing
23                                        )  DATE:    To Be Determined
                                          )  TIME:    To Be Determined
24                                        )   PLACE:  Courtroom 303
                                          )           21041 Burbank Boulevard
25                                        )           Woodland Hills, CA 91367
                                          )
26                                        )
                                          )
27                                        )
                                          )
28  _____  )

                              1

I, Jonathan Kramer, hereby declare as follows:

1.      I am over 18 years of age.  I am the Chief Executive Officer and President of AfterShock Comics, LLC ("Aftershock") and Rive Gauche Television ("RGTV," and together with Aftershock, the "Debtors"), respectively, the debtors and debtors in possession in the above-captioned Chapter 11 bankruptcy cases, and am therefore familiar with the business operations and have access to and knowledge regarding the financial books and records of the Debtors.  I have personal knowledge of the facts set forth below and, if called to testify as a witness, I could and would competently testify thereto.

2.      I am familiar with the history, organization, operations and financial condition of the Debtors.  The records and documents referred to in this Declaration constitute writings taken, made, or maintained in the regular or ordinary course of the Debtors' business at or near the time of act, condition or event to which they relate by persons employed by the Debtors who had a business duty to the Debtors to accurately and completely take, make, and maintain such records and documents.  The statements set forth in this declaration are based upon my own personal knowledge and my review of the Debtors' books and records.

3.      I make this declaration in support of the following emergency "first day" motions filed concurrently herewith by the Debtors:

a.    "Debtors' Emergency Motion For Entry Of An Interim Order: (I) Authorizing Debtor To Use Cash Collateral On An Interim Basis Pending A Final Hearing; (II) Granting Adequate Protection Replacement Liens; (III) Scheduling A Final Hearing; And (IV) Granting Related Relief" (the "Cash Collateral Motion").

b.    "Debtors' Emergency Motion For Authority To (1) Pay Pre-Petition Priority Wages And Commissions; And (2) Honor Employment And Benefit Policies" (the "Wage Motion").

c.    "Emergency Motion For Entry Of An Order Authorizing Debtors To Implement And Maintain Cash Management System" (the "Cash Management Motion").

**A.      Background Information And Debtors' Businesses.**

4.      Each of the Debtors filed a voluntary petition under Chapter 11 of 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") on December 19, 2022 (the "Petition Date").  The Debtors

continue to operate their businesses, manage their financial affairs and operate their bankruptcy estates as debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

5. Together, the Debtors comprise (and work together as) the "Aftershock Media" enterprise ("ASM") – which unites a rapidly growing comic creation and publishing business (Aftershock) with a proven film/television production and distribution platform (RGTV) for a global audience. ASM has three principal lines of business:

- (1) "**Traditional TV Licensing and Advertising Video on Demand (AVOD) Distribution**" related to RGTV's distribution of rights to the RGTV Library (defined below, and which consists primarily of unscripted television programming);

- (2) "**Retail Comics**" related to Aftershock's sale of comic books and related products through retail channels; and

- (3) "**Comic Book IP Development and Exploitation**" related to Aftershock's creation, worldwide licensing, and/or sale of comic IP (defined below) for use in scripted television or film programming.

6. Aftershock is engaged in the business of developing, creating, and publishing comic books and graphic novels, which it sells through retail channels (*e.g.*, bookstores). Aftershock also creates and owns original intellectual property content related to its comic books ("IP"), which it controls for exploitation in all forms of media. Exploitation of the IP includes not only Aftershock's ability to sell the IP, but also to license such IP to other companies for conversion to other forms of media such as scripted television and film. Aftershock currently has interests in more than 150 IP properties (which it expects to increase by approximately 36 IP properties per year).

7. Aftershock's affiliate, RGTV, is a leading co-producer and distributor of television programing around the world. Since its founding in 1994, RGTV has acquired distribution rights ("Distribution Rights") to a library of over 166 titles, representing over 2,200 episodes and 1,700 hours of non-scripted television and documentary programming (the "RGTV Library"). Well known series in the RGTV Library include *Dog Whisperer with Cesar Milan*,

1  *Homicide Hunter*, *My Strange Addiction*, *Ice Cold Killers*, and *Sins and Secrets*, and the genres

2  in the RGTV Library include true crime, reality, animal/wildlife, and documentary.

3    8.    RGTV generates revenue by sublicensing or selling its Distribution Rights to

4  broadcast networks and other licensees in territories around the world. When RGTV sublicenses

5  or sells distribution rights in a territory, it earns a sales fee and recoups any advances paid to the

6  producers/licensors of the series, as well as any marketing costs advanced. Active titles in the

7  RGTV Library have generated approximately $102 million in revenue since inception, and $19.4

8  million in sales over the past five (5) years.

9    9.    The Debtors' senior secured lender is Access Road Capital LLC, a Delaware

10  limited liability company (the "Lender" or "Access Road"). The Debtors originally[1] borrowed

11  money from the Lender in March 2020 in the principal amount of $11,090,000[2] (the "Loan")

12  pursuant to the "*Second Amended And Restated Credit And Security Agreement*" (the "Loan

13  Agreement," and collectively with the other loan documents, the "Loan Documents"). The Loan

14  Agreement was amended by the "*Amendment To Second Amended And Restated Credit And*

15  *Security Agreement*" dated October 15, 2021 (the "Amendment") whereby the Lender agreed to

16  lend additional funds to RGTV, in an amount "equal to . . . 85% . . . of [certain] receivables . . .

17  payable to RG[TV] . . . not to exceed . . . $2,392,000[.]" The Debtors are jointly and severally

18  liable to repay the Loan, and Lender asserts that the Loan is secured by all, or substantially all, of

19  the Debtors' assets.

20    10.    Pursuant to the Loan Documents, the Debtors were required to make: (1)

21  "Required Interest Payments" on "(a) September 26, 2021; (b) March 26, 2022; (c) September

22  26, 2022; (d) March 26, 2023; (e) September 26, 2023; and (f) March 26, 2024"; and (2)

---

[1] RGTV and East West Bank ("EWB") previously entered into the "*Amended and Restated Credit and Security Agreement, dated as of November 23, 2012*" (as amended, supplemented, or otherwise modified, the "EWB Credit Agreement"), pursuant to which EWB extended a revolving credit facility to RGTV (the "EWB Loan"). A portion of the proceeds from the Loan (as defined above) were subsequently used for Access Road's purchase of the EWB Loan from EWB.

[2] The initial Loan amount, as set forth in the Loan Agreement, consists of: (1) $11,000,000 for the "Base Loan Amount"; (2) $35,000 for the Lender's legal fees; and (3) $55,000 for the "BondIt arrangement fee."

"Principal Payments" on "(a) March 26, 2022; (b) March 26, 2023; and (c) March 26, 2024, but only if the Lender has . . . agreed to extend the Maturity Date by twelve (12) months." (Loan Agreement, pgs. 11 & 15).

11.    Although the Debtors' businesses were highly successful prior to the COVID-19 pandemic (the "Pandemic"), the circumstances surrounding the Pandemic have detrimentally impacted the Debtors' operations and financial condition.  For example, after the Pandemic started: (1) RGTV's revenues and sales suffered because channel buyers were taking longer to decide on transactions with RGTV regarding Distribution Rights licenses and sales; and (2) Aftershock's revenues and sales suffered because many of the retail outlets for comic books and related material were closed during the Pandemic, and Aftershock's management was forced to hold back new comic IP releases during the height of the Pandemic.

12.    In addition, the Debtors' financial problems were exacerbated by liquidity problems associated with insufficient junior capital to fund the high cash requirements of their new business ventures that have long investment lead times.  For example, regarding ASM's:

- (1) **"Traditional TV Licensing and Advertising Video on Demand (AVOD) Distribution" line of business**: RGTV experienced delayed decisions with clients and broadcasters during the COVID-19 pandemic that led to revenue shortfalls, high upfront AVOD costs, and a longer delivery process for content, and longer payment terms.

- (2) **"Retail Comics" line of business**: Aftershock faced higher printing costs as a result of supply chain issues.  Moreover, Aftershock's liquidity problems can be attributed to substantial investments that are associated with the creation of new comic IP.

- (3) "**Development and Exploitation of Comic IP" line of business**: Aftershock experienced longer than expected negotiations for comic IP "option" deals, and a longer than expected developmental process to convert IP "options" to film and television production.  However, with respect to the IP "options," many of these deals are on the cusp of reaching a steady-state to generate revenue to Aftershock.

13.      As a result of these liquidity and other financial issues, the Debtors were unable to make certain Loan payments to the Lender (and several of their other creditors and vendors). The Lender asserted that defaults occurred under the Loan, and: (1) provided the Debtors with a written Notice of Default; and (2) on October 10, 2022, initiated an action in the California Superior Court titled "*Access Road Capital, LLC v. Rive Gauche Television, et al.*," LASC Case No.22STCV33196 (the "State Court Action") against the Debtors and other parties.  Although the Debtors attempted pre-petition to negotiate in good faith to reach an agreement with the Lender, those negotiations reached an impasse.

14.      In order to, among other reasons, continue operations and preserve the Debtors' going concern values for their creditors, the Debtors filed for bankruptcy protection on the Petition Date.  In their respective Chapter 11 cases, the Debtors plan to restructure their financial affairs, obtain possible refinancing of the debt facility (with the current Lender or a new Lender), seek investors, and/or propose a joint plan which will pay their creditors.

**B.      Cash Collateral Motion[3].**

15.      Pursuant to the Cash Collateral Motion, the Debtors request that the Court's enter an order in substantially the same form as the proposed order attached as **Exhibit "1"** hereto.

16.      The Debtors' primary assets are as follows:

**AFTERSHOCK PRIMARY ASSETS**

      a.      Cash.  As of the Petition Date, Aftershock had cash in the total sum of approximately $16,000.

      b.      Inventory.  As of the Petition Date, Aftershock had "inventory," which includes released books and expenses of unreleased books, conservatively valued at approximately $2.2 million.

      c.      Prepayments.  As of the Petition Date, Aftershock had prepayments that were made to vendors and other parties totaling approximately $315,000.

---

[3] All terms not specifically defined herein shall have the meanings ascribed to them in the Cash Collateral.

d.    <u>Accounts Receivable</u>.  As of the Petition Date, Aftershock had customer accounts receivable totaling approximately $218,000.

e.    <u>Intellectual Property</u>.  As of the Petition Date, Aftershock had comic book related intellectual property, including copyrights and trademarks, that have been independently valued conservatively at approximately $17.2 million.

**<u>RGTV PRIMARY ASSETS</u>**

a.    <u>Cash</u>.    As of the Petition Date, RGTV had cash in the total sum of approximately $680,000.

b.    <u>Accounts Receivable</u>.  As of the Petition Date, RGTV had customer accounts receivable totaling approximately $1 million.

c.    <u>Office Furniture</u>:  As of the Petition Date, RGTV had various items office furniture and equipment that are valued at approximately $15,000.

d.    <u>Licenses and Royalties</u>.  As of the Petition Date, RGTV had distribution recouped minimum guarantees, distribution costs advanced, and other amounts that are due to be paid from certain distributors of the RGTV Library that total approximately $8 million.

e.    <u>Distribution Rights to RGTV Library</u>.  As of the Petition Date, RGTV had Distribution Rights to the RGTV Library that are valued conservatively at approximately $41 million.[4]

f.    <u>Unused Foreign Tax Credits</u>.  As of the Petition Date, RGTV had unused foreign tax credits that total at approximately $772,000.

---

[4]  The value of Access Road's collateral is based upon an independent valuation prepared by Focus Advisory Services, LLC, a well-known firm that specializes in, among other things, the valuation of entertainment industry assets, dated February 4, 2022, a true and correct copy of which is attached hereto as **<u>Exhibit "5"</u>**.  That valuation concluded that the value of just RGTV's library of TV episodes is $56 million.  The $41 million valuation referenced herein is discounted substantially in order to provide a conservative estimate of the value of Access Road's collateral and show that, even at this discounted value, Access Road enjoys a substantial equity cushion.  In the event of litigation with Access Road, the Debtors reserve the right to argue (and show) that the value of Access Road's collateral is higher than the estimate used in this Motion.

17.    It is my understanding and belief that, as of November 2022, the Lender contends that the Debtors are jointly and severally indebted to the Lender in an amount of approximately $16,785,928 (which includes asserted default interest) under the Loan.

18.    The Lender filed UCC-1 financing statements against the Debtors asserting liens against substantially all of the Debtors' assets.  Attached hereto as **Exhibit "4"** are the UCC reports that the Debtors obtained, together with the UCC-1 Financing Statements filed against the Debtors (the "UCC Reports").[5]

19.    Based on the Debtors' operating budgets (the "Budgets"), which set forth the Debtors' projected cash receipts and cash disbursements for the 13-week period following the Petition Date, I believe that the Debtors' continued operations shall generate sufficient funds during those periods to cover the Debtors' costs for such operations.  A true and correct copy of the Budgets[6] of Aftershock and RGTV are attached as **Exhibits "2" and "3"**, respectively, hereto.

20.    I do not believe the Debtors have the ability to continue to maintain and operate their business operations or preserve the value of their assets unless the Debtors have the ability to use cash collateral to pay their projected expenses in accordance with the Budgets.  I believe the Debtors' inability to pay those expenses would cause immediate and irreparable harm to the Debtors' bankruptcy estates.  Indeed, the Debtors' inability to pay their expenses, including honoring pre-petition checks and paying wages and commissions earned immediately prior to the bankruptcy filing, as well as post-petition wages and commissions, and other "bare bones" and necessary operating expenses would very likely result in the immediate shutdown of the Debtors' businesses and the decimation of the value (going-concern or otherwise) of the Debtors' businesses and assets.  I believe that the maintenance of the Debtors' businesses and preservation of the Debtors' assets are critical to maximizing value and providing the greatest likelihood for recoveries by creditors in these cases.

---

[5] The RGTV UCC Report shows that Citibank filed a UCC-1, but this appears to be in error because RGTV does not owe Citibank anything.

[6] Although the Budgets are prepared on a company by company basis, prior to the Petition Date, the Debtors managed their cash on a consolidated basis.

**C.** **Wage Motion.**

21.    Aftershock has: (1) 14 non-insider employees that are paid either based on salary or hourly (the "Aftershock Employees"); and (2) 5 non-insider independent contractors[7] that are paid either based on salary or hourly (the "Aftershock Contractors," and together with the Aftershock Employees, the "Aftershock Employees/Contractors"). The Aftershock Employees/Contractors are either paid on a monthly basis (whereby they are paid on or around the 30th of each month, and approximately one month in arrears) or, alternatively, on a semi-monthly basis (whereby they are paid on or around the 15th and the last day, generally the 30th, of each month, and approximately two weeks in arrears). A list of the Aftershock Employees/Contractors currently employed by Aftershock (together with the RGTV Employees employed by RGTV) which reflects the amount of wages, including all payroll taxes and any insurance reimbursements (the "Wages") estimated to be payable to these individuals each pay period is attached as **Exhibit "6"** hereto and is incorporated herein by this reference.

22.    In addition, Aftershock has 40 sales representatives that are part of Aftershock's "Ambassadors Program" (the "Aftershock Ambassadors") that are paid monthly commissions and bonuses (ranging *on average* from approximately $133.33 to $1,000 per month) based, in part, on the number of physical visits (*i.e.*, $50 per visit) and zoom/phone calls (*i.e.*, $20 per call) made to retail outlets and stores, and appearances at industry events (*i.e.*, $100 per event). The Aftershock Ambassadors are paid on or around the last day of the month. I am not aware of any Aftershock Ambassadors that intend to stop performing services to Aftershock provided they receive timely payment of amounts due to them. Attached as **Exhibit "7"** hereto is a list of the Aftershock Ambassadors, reflecting the average monthly commission that is paid to each of the Aftershock Ambassadors (the "Ambassadors List").

23.    RGTV has 4 non-insider employees that are paid either based on salary or hourly (the "RGTV Employees, and together with the Aftershock Employees/Contractors, the

---

[7] Prior to the Petition Date, Aftershock hired an independent contractor that will not start until January 1, 2023.

"<u>Employees/Contractors</u>").  Each of the RGTV Employees are paid on a semi-monthly basis (whereby they are paid on or around the 15th and the last day, generally the 30th, of each month, and approximately two weeks in arrears).  A list of the RGTV Employees employed by RGTV (together with the Aftershock Employees/Contractors employed by Aftershock) which reflects the amount of Wages estimated to be payable to these individuals each pay period is attached as **Exhibit "6"** hereto and is incorporated herein by this reference.

24.    On or around December 30, 2022 – the Debtors' next payroll date – the Debtors will owe wages to its Employees/Contractors ("<u>Wages</u>") for the pre-petition period (consisting of 3 days) from December 16, 2022 through and including December 18, 2022 (*i.e.*, one day before the Petition Date) – all of which will constitute pre-petition obligations.  The December 30, 2022 payroll will also pay the Employees/Contractors for amounts for the post-petition period of December 19, 2022 through and including December 31, 2022 in the ordinary course of business.

25.    In addition, on or around December 30, 2022, as set forth on the Ambassadors List, Aftershock will owe commissions (the "<u>Commissions</u>") to the Aftershock Ambassadors in the aggregate amount of approximately $15,056.67.  Because some of the owed Commissions constitute pre-petition obligations of Aftershock, I am also requesting that the Court authorize Aftershock to pay the pre-petition portion of the Commissions to the Aftershock Ambassadors.

26.    I estimate that the total payroll obligations due to the Employees/Contractors and Aftershock Ambassadors on the next payroll date of December 30, 2022, including all applicable payroll taxes and insurance reimbursements, will be approximately $103,058.31 (*i.e.*, approximately $88,001.64 owed to Employees/Contractors for Wages, and approximately $15,056.67 owed to the Ambassadors for Commissions).

27.    The Debtors are ***not*** seeking authority to pay the pre-petition priority wages or commissions of any employees or contractors who are, or may be considered, "insiders" within the definition of Section 101(31) of the Bankruptcy Code.  Approval to pay compensation to the

Debtors' "insider" employees will be sought pursuant to Notices of Setting Insider Compensation which will be filed with the United States Trustee.

28.    The Debtors also provide their eligible Employees/Contractors employment and benefit programs that are comparable to the programs which I believe are typically offered by other employers within the industry.  For clarity, these benefits are not available to the Aftershock Ambassadors.

29.    The following employment and benefit programs are proposed to be continued to be offered post-petition:

a.    ***Vacation Time, Paid Holidays, And Personal Leave Policies***.  The Debtors offer paid time off, vacation and sick leave policies for their eligible Employees/Contractors.

Eligible Employees/Contractors accrue vacation days on a yearly basis at a rate of: (1) ten (10) vacation days per year for their first three years of employment; (2) fifteen (15) vacation days per year for their next two years of employment; and (3) twenty (20) vacation days per year after five years of employment with the Debtors.  If an eligible Employee/Contractor does not use his/her accrued paid time off for a particular year, such time will be carried over from year to year.

The Debtors also offer eleven (11) paid holidays to eligible Employees/Contractors, effective upon hire.  If an eligible Employee/Contractor is required to work on a holiday, that employee will be paid holiday pay in accordance with applicable laws.

Eligible California Employee/Contractors are entitled to paid sick leave for three (3) days per year pursuant to the Healthy Workplaces, Healthy Families Act.  The Debtors also have emergency paid sick leave policies for COVID 19, whereby full-time eligible Employees may use up to eighty (80) hours of paid sick leave per year, and part-time eligible Employees may use paid sick leave in the amount not to exceed the average number of hours they work over a two-week period.  Further, Eligible Employee/Contractors are entitled to three (3) days of paid time off for a death in the

immediate family, with additional paid time off being considered on a case-by-case, discretionary basis.

The Debtors desire to continue having their existing vacation, holiday, and sick leave policies in effect, and seek authority to honor such policies post-petition as set forth above.

b.     ***Health Insurance Policy***.  Eligible Employees/Contractors of the Debtors can either obtain company-subsidized medical insurance coverage or, alternatively, a health insurance stipend that generally [8] will not exceed $400 per month.     Eligible Contractors/Employees are entitled to begin health insurance benefits on the first day of the month after completing the introductory period.

c.     ***401(K) Plan Contribution Policy.***     The Debtors offer eligible Employees/Contractors (generally, those individuals that have their Wages paid through ADP Payroll Services) the opportunity to participate in their respective 401(k) plans.  Each of the Debtors' 401(k) plans allows eligible Employees/Contractors to contribute to the applicable 401(k) plan (up to the current IRS maximum) through payroll deductions.  The Debtors desire to continue having their existing 401(k) policies in effect and therefore, seek authority to continue to honor such policies post-petition.

30.     The Debtors must retain their personnel (which includes the Employees/Contractors and Aftershock Ambassadors) to maintain their business operations, and to preserve and maximize the value of their assets.  The Debtors' personnel are familiar with the Debtors' operations, and are thus essential to the preservation of the Debtors' businesses.  The Debtors' failure to pay pre-petition Wages to the Employees/Contractors, to honor the Debtors' employment and benefit programs, or to pay the pre-petition Commissions to the Aftershock Ambassadors will likely result in those individuals quitting or ceasing services (without an ability to quickly or cost-effectively replace such individuals), and will likely result in a

---

[8] For one of Aftershock's employees, an exception was made to the Debtors' health insurance policy to pay him a $800 stipend per month.

shutdown of the Debtors' businesses, to the detriment of creditors. The Debtors' ability to preserve the full value of their businesses and assets depends upon the maintenance of the Debtors' business operations, which cannot occur without the efforts of the Employees/Contractors, and Aftershock Ambassadors.

31.    In order to attract and retain the Employees/Contractors, the Debtors maintain what I believe are competitive and reasonable employment and benefit policies. I believe that maintaining good relationships with, and the morale of, the Employees/Contractors requires continuing to honor the employment and benefit policies currently in effect for the Employees/Contractors.

32.    All of the Employees/Contractors' claims for pre-petition Wages, and Aftershock Ambassadors' claims for pre-petition Commissions are within the $15,150 limit which I am informed is established by the Bankruptcy Code.

33.    The source of the funds to be used to pay and/or honor the pre-petition Wages and Commissions, and to continue honoring the Debtors' employment and benefit policies will be the Debtors' revenue. Based on the operating Budgets submitted in connection with the Debtors' Cash Collateral Motion, I do not believe that the payment of pre-petition priority claims for the Wages, Commissions, and the honoring of employment and benefit policies will render the Debtors' bankruptcy estates administratively insolvent.

**C.    Cash Management Motion.**

34.    Prior to the Petition Date, the RGTV's cash management system was comprised of, among other things, three (3) bank accounts at City National Bank ("CNB") and one (1) bank account at Bank of America ("BofA"), as follows:

- CNB Checking Account No. x4284 (the "Collections Account");

- CNB Checking Account No. x4276 (the "Checking Account");

- CNB CD Account No. x4772 (the "Holding Account"); and

- BofA Checking Account No. x1202 (the "BofA Account").

35.     As discussed above, RGTV generates revenue by sublicensing or selling its Distribution Rights to a large number of broadcast networks and other licensees (the "Customers") in territories around the world.  RGTV's Collections Account functions primarily as a receipt account for, among other things, fees, reimbursements for advances, and other amounts due (the "Customer Fees") from RGTV's Customers, many of whom are foreign entities that conduct business outside of the United States.  In some instances, the amounts due to RGTV would be paid by credit card or PayPal (or another payment processing platform) by Customers, and those funds would be deposited into the Collections Account.  The Fees and other amounts deposited in the Collections Account would oftentimes be subsequently transferred to the Checking Account (*i.e.*, RGTV's primary disbursement account) for the payment of RGTV's operational and other expenses.  RGTV has the Holding Account which was created pursuant to the Loan Documents – whereby the Holding Account was required to have a minimum balance of $660,000, and the Lender is a signatory and has the authority to transfer, dispose, encumber, or control the funds in the Holding Account.  Lastly, the BofA Account holds minimal funds of RGTV (*i.e.*, an amount of less than $200).

36.     Pursuant to the Cash Management Motion, RGTV seeks authority to maintain its cash management system, and requests a Court order allowing RGTV to do the following: (1) keep the Collections Account open solely as a receipt account, with receipts subsequently transferred to the DIP Operating Account (defined below)[9]; (2) keep the Holding Account open; and (3) close the Checking Account and BofA Account, and transfer the funds therein to RGTV's new debtor-in-possession operating account (the "DIP Operating Account").

37.     It is essential that the Court authorize RGTV to keep the Collections Account open post-petition.  RGTV's Collections Account functioned primarily as a receipt account for RGTV's receipt/recovery of, among other things, the Customer Fees from Customers (many of who are foreign entities that conduct business outside of the United States).  Given that RGTV

---

[9] Thus, there is no concern that prepetition debts will be paid without approval of the Court. This would allow RGTV to avoid any interruption in the receipts from Customers.  In addition, all transfers would be reflected in the Debtors' monthly operating reports.

has numerous parties that it does business with, and foreign Customers that have historically paid Customer Fees and/or other amounts to the Collections Account, I believe that it would be disruptive to RGTV's operations if RGTV was forced to close the Customer Account and notify all applicable customers, licensees, and vendors to remit payment post-petition to a new debtor-in-possession account.

38.     Further, because the Holding Account was created and is being maintained pursuant to the Loan Documents, whereby the Lender is a signatory and has the authority to transfer, dispose, encumber, or control the funds in the Holding Account, the Debtors also propose that the Court allow this account to remain open, but preclude Lender from accessing those funds without a further order of the Court.

39.     Allowing RGTV to use the Modified Cash Management System (as defined and described in the Cash Management Motion), including the ability to keep the Collections Account and Holding Account open will: (i) ensure the uninterrupted receipts from Customers and other parties, including receipts from the credit card and other payment processing companies, (ii) minimize the disruption which would result from being forced to redirect Customer Fees and other payments, (iii) allow for the fluid continuance of RGTV's business transactions, including the payment of critical operating expenses, and (iv) assist in RGTV's smooth transition into and through Chapter 11 as a debtor in possession.

40.     As a result, post-petition, RGTV seeks to maintain and keep open the Collections Account at CNB, but will only use the Collections Account as a receipt account. CNB is an approved depository for the Office of the United States Trustee.[10]  RGTV will open the DIP Operating Account, and will transfer receipts into the Collection Account and make all distributions through the DIP Operating Account.  RGTV does not intend to make any disbursements from the Holding Account.  RGTV will report all transactions from the DIP Operating Account, Holding Account, and Collections Account in its monthly operating report filed with the Court.

---

[10] https://www.justice.gov/ust-regions-r16/file/approved_depositories.pdf/download

41.     For clarification, the Cash Management Motion is not seeking relief to keep any of the Aftershock pre-petition bank accounts open.

42.     The Debtors' pre-petition cash management system also includes eight (8) credit cards that were used to pay the Debtors' operating and other expenses – five (5) that are in my name, two (2) that are in my wife's, Martha Kramer's, name, and one (1) that is in Aftershock's name (the "Pre-Petition Credit Cards").  Each of the Pre-Petition Credit Cards were used almost exclusively to pay for work-related expenses, such as amounts owed to creators or printers of Aftershock's IP, work-related travel, and other operational expenses (*e.g.*, purchases at trade conventions, and periodic automatic payments to Zoom, Slack, and Dropbox) (the "Debtors' Expenses").[11]  Except for the credit card in Aftershock's name (which is currently suspended), the Debtors' obligations under the Pre-Petition Credit Cards: are (1) fundamentally, "advances" (or short term loans) made by me and/or Martha Kramer (the "Kramers") using our credit lines with the credit card companies; (2) invoiced to the Kramers monthly; and (3) are paid – partially or fully – on a monthly basis using the Debtors' funds.  The Debtors' Expenses are "advanced" by the Kramers in this manner in the ordinary course of the Debtors' businesses.  This is because, among other reasons, the Debtors were unable to obtain credit lines with credit card companies. The usage of these Pre-Petition Credit Cards not only allow the Debtors to purchase goods and services from vendors, but also serves as a "short term loan" to assist their cash flow needs by giving them a period of time to make payments to the credit card companies on account of these good and services.

43.     I believe that the continued usage of the Credit Cards will assist the Debtors' smooth transition into bankruptcy, and essential to the stability of the Debtors' business.  If the Debtors are not able to use the Credit Cards post-petition, they would have: (1) a difficult time making timely or any purchases from those vendors that require payment by credit cards; (2) to unnecessarily spend valuable time that could be devoted to the Debtors' reorganization to having

---

[11] To the extent that the Credit Cards are used for personal expenses of Jonathan and Martha Kramer, those amounts were paid off monthly pre-petition.

to transition the accounts where automatic payments are tied to the Credit Cards (*e.g.*, Zoom, Slack, and Dropbox) to their bank accounts, assuming that doing so is even possible; and (3) a difficult time paying for necessary work-related travel expenses for its management and/or employees because such expenses were ordinarily paid using the Credit Cards pre-petition. As a result, the inability of the Debtors to use the Credit Cards post-petition would cause significant disruptions to the Debtors' business.

44.    Through this Motion, the Debtors are also seeking authority to continue to use two (2) of the Pre-Petition Credit Cards – the American Express Platinum credit cards issued to Jonathan Kramer and Martha Kramer (collectively, the "Credit Cards") – and to pay down the balances of the Credit Cards for the Debtors' Expenses accruing post-petition in the ordinary course of business and consistent with the Debtors' pre-petition practices. For clarity, the Debtors will not use the Pre-Petition Credit Cards other than the Credit Cards, and will not pay the pre-petition balances of the Credit Cards.

45.    In addition, prior to the Petition Date and in the ordinary course of their businesses, the Debtors managed their cash on a consolidated basis. For example, because the Debtors worked together as the "Aftershock Media" enterprise and Aftershock was a newer and developing company, RGTV funds would at times be used to support Aftershock's operations and to pay for necessary expenses. The ability to continue with the system of Intercompany Transfers, subject to the amounts in the Debtors' proposed cash collateral budgets, ensures the continued operations of Aftershock and the ASM enterprise, that will allow the Debtors to generate revenue to pay creditors, continue operations, and reorganize. As a result, the Debtors also propose that, post-petition, they be allowed to continue the system of Intercompany Transfers from RGTV to Aftershock in the ordinary course of its business, and in accordance with their proposed Budgets.

46.    Allowing the Debtors to maintain and utilize a portion of its existing cash management system (*i.e.*, the Collections Account, Holding Account, Credit Cards, and the system of Intercompany Transfers) along with the DIP Operating Account will (i) ensure the

1    uninterrupted receipts from Customers and other parties, including receipts from the credit card

2    and other payment processing companies, (ii) minimize the disruption which would result from

3    being forced to redirect Customer Fees and other payments, (iii) allow for the fluid continuance

4    of the Debtors' business transactions, including the payment of critical operating expenses, and

5    (iv) assist in the Debtors' smooth transition into and through Chapter 11 as a debtor in

6    possession.

7        I declare under penalty of perjury that the foregoing is true and correct.

8        Executed this 21st day of December, 2022 at Sherman Oaks, California.

9

10

11   JONATHAN KRAMER

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

18

# EXHIBIT "1"

DAVID L. NEALE (SBN 141225)
JEFFREY S. KWONG (SBN 288239)
LEVENE, NEALE, BENDER, YOO & Golubchik L.L.P.
2818 La Cienega Avenue
Los Angeles, California 90034
Telephone:  (310) 229-1234; Facsimile:  (310) 229-1244
Email: dln@lnbyg.com; jsk@lnbyg.com

Proposed Attorneys for Chapter 11 Debtors
and Debtors in Possession

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re:<br><br>AFTERSHOCK COMICS, LLC, a California limited liability company,<br><br>       Debtor and Debtor in Possession. | Lead Case No. 1:22-bk-11456-MB<br><br>Jointly administered with:<br>1:22-bk-11457-MB<br>(Rive Gauche Television). |
| In re:<br><br>RIVE GAUCHE TELEVISION, a California corporation,<br><br>       Debtor and Debtor in Possession. | Chapter 11 Cases<br><br>**INTERIM ORDER RE: DEBTORS' EMERGENCY MOTION FOR ENTRY OF AN INTERIM ORDER: (I) AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL ON AN INTERIM BASIS PENDING A FINAL HEARING; (II) GRANTING ADEQUATE PROTECTION REPLACEMENT LIENS; (III) SCHEDULING A FINAL HEARING; AND (IV) GRANTING RELATED RELIEF IN SUPPORT THEREOF** |
| ☒ Affects both Debtors<br>☐ Affects AfterShock Comics, LLC only<br>☐ Affects Rive Gauche Television only | |
| | <u>Hearing</u><br>DATE:<br>TIME:<br>PLACE: |

1

A hearing was held at the above-referenced date, time, and location for the Court to consider the emergency motion (the "Motion")[1] [Doc. No. __] of AfterShock Comics, LLC ("Aftershock") and Rive Gauche Television ("RGTV," and together with Aftershock, the "Debtors"), the Chapter 11 debtors and debtors in possession herein (the "Debtors"), pursuant to LBR 2081-1, 4001-2, and 9075-1, FRBP 2002, 4001, and 9014, and Bankruptcy Code Sections 105(a), 361, 362, and 363, for the entry of an interim order (the "Interim Order") and a final order (the "Final Order" and, with the Interim Order, the "Orders"), among other things:

(1) authorizing the Debtors to use Cash Collateral (as defined under Section 363), including the funds in the Holding Account (as defined in the Motion) in accordance with the terms of the Budgets attached to the Kramer Declaration [Doc. No. __] as **Exhibits "2" and "3"**, provided that the Debtors shall be entitled to a monthly variance of up to 10% on a line item basis and up to 15% on a collective basis, or such other variance as may be requested by the Debtors and approved by Access Road Capital, LLC (the "Lender" or "Access Road"), the Debtors' secured lender, with any negative variance carrying over to future months;

(2) in addition to an equity cushion and continued operations, providing Access Road with further adequate protection by granting Access Road replacement liens on, and security interests in, the assets of the Debtors' estates, with the same extent, validity, and priority as Access Road's pre-petition liens on pre-petition collateral and all post-petition proceeds obtained by the Debtors from such pre-petition collateral (the "Adequate Protection Liens"), to secure any diminution in Access Road's collateral after the petition date resulting from the Debtors' use of the Orders;

(3) vacating and modifying the automatic stay imposed by Section 362 solely to the extent necessary to implement and effectuate the terms and provisions of the Orders to provide Access Road with the Adequate Protection Liens;

(4) scheduling, pursuant to FRBP 4001 and LBR-4001-2(b), a Final Hearing before this Court to consider entry of the Final Order approving the Debtors' use of Cash Collateral on

---

[1] Any capitalized term used herein which is not defined herein but which is defined in the Motion shall be deemed to have the same meaning as ascribed to such term in the Motion.

2

1  a final basis;

2

3          (5)    waiving any applicable stay, including under FRBP 4001(b) and (c) and

4  providing for the immediate effectiveness of the Interim Financing Order; and

5          (6)    granting related relief.

6          Appearances at the hearing on the Motion were made as set forth on the record of the

7  Court.

8          The Court, having considered the Motion and all of the pleadings filed by the Debtors in

9  support of the Motion, all oppositions filed to the Motion (if any), the statements, arguments and

10 representations of the parties made at the hearing on the Motion, and good cause appearing,

11         **HEREBY FINDS AS FOLLOWS:**

12         A.    This Court has jurisdiction over the Debtors' cases, the Motion, and the parties and

13 property affected thereby pursuant to 28 U.S.C. §§ 157(b) and 1334.  Consideration of the Motion

14 constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2).  Venue is proper before this Court

15 pursuant to 28 U.S.C. §§ 1408 and 1409.

16         B.    Notice of the Motion, the relief requested therein and the interim hearing on the

17 Motion, was adequate and in compliance with applicable FRBP and LBR.

18         C.    The Debtors have an immediate need to use Cash Collateral to pay the expenses

19 set forth in the Budgets.  Payment of such expenses is necessary to enable the Debtors to avoid

20 immediate and irreparable harm to the Debtors and their estates.

21         D.    The Debtors have requested immediate entry of this Interim Order pursuant to

22 Bankruptcy Rule 4001(b)(2).   Absent granting the interim relief set forth in this Interim Order, the

23 Debtors' estates will be immediately and irreparably harmed.

24         E.    Authorizing the Debtors to use Cash Collateral to pay the expenses set forth in the

25 Budgets is in the best interests of the Debtors' estates.

26         F.     Good cause has been shown for the entry of this Interim Order.

27         Based upon the foregoing findings and conclusions, and upon the record made before this

28 Court at the interim hearing on the Motion, and good and sufficient cause appearing therefor, **THIS**

**COURT HEREBY ORDERS, DETERMINES, AND DECREES AS FOLLOWS:**

1.     The Motion is hereby granted in its entirety on the terms and conditions set forth in this Interim Order, with the foregoing findings incorporated herein by reference.  This Interim Order shall be valid and binding on all parties-in-interest and fully effective immediately upon its entry;

2.     The Debtors are hereby authorized to use Cash Collateral (as defined under Section 363) in accordance with the terms of the Budgets attached to the Kramer Declaration as **Exhibits "2" and "3"**, provided that the Debtors shall be entitled to a monthly variance of up to 10% on a line item basis and up to 15% on a collective basis, or such other variance as may be requested by the Debtors and approved by Access Road, with any negative variance carrying over to future months;

3.     Access Road is hereby granted replacement Adequate Protection Liens on, and security interests in, the assets of the Debtors' estates, with the same extent, validity, and priority as Access Road's pre-petition liens on pre-petition collateral and all post-petition proceeds obtained by the Debtors from such pre-petition collateral, to the extent of any diminution in Access Road's collateral after the petition date resulting from the Debtors' use of any Cash Collateral; such Adequate Protection Liens are effective immediately without the requirement for any additional action by Access Road, including the recordation of any new or amended UCC-1 Financing Statements; and

4.     A final hearing on the Motion shall be held on _____, 2023 at __:__ __.m. **(Pacific Time)** before this Court.  Any oppositions to the entry of a Final Order granting the Motion on a final basis must be filed with the Clerk of the Court and served on (a) proposed counsel to the Debtors, (b) counsel to Access Road, (c) the Office of the United States Trustee, and (d) the members of any Official Committee of Unsecured Creditors appointed in the case or its counsel (the "Notice Parties") by no later than _____, 2023.  Any reply to any such opposition  must be filed with the Clerk of the Court and served on the Notice Parties by no later than _____, 2023.  The Debtors shall provide notice of the continued hearing and the foregoing deadlines by NEF and regular U.S. Mail to all of the Notice Parties by no later than _____, 2023.

**IT IS SO ORDERED.**

### ###

# EXHIBIT "2"

## Aftershock Comics, LLC

| Week Ending | Wk 1 12/19 - 12/23 | Wk 2 12/26 - 12/30 | Wk 3 1/2 - 1/6 | Wk 4 1/9 - 1/13 | Wk 5 1/16 - 1/20 | Wk 6 1/23 - 1/27 | Wk 7 1/30 - 2/3 | Wk 8 2/6 - 2/10 | Wk 9 2/13 - 2/17 | Wk 10 2/20 - 2/24 | Wk 11 2/27 - 3/3 | Wk 12 3/6 - 3/10 | Wk 13 3/13 - 3/17 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Cash Beginning Balance | 16,925 | 61,675 | 15,822 | 51,822 | 70,759 | 70,709 | 70,709 | 46,338 | 33,338 | 20,275 | 26,275 | 73,837 | 73,837 |
| A/R Collections and Other Receivables | 45,000 | 13,000 | 40,000 | | 3,750 | | 33,000 | | 7,500 | 75,000 | 33,000 | | |
| **TOTAL CASH** | 61,925 | 74,675 | 55,822 | 51,822 | 74,509 | 70,709 | 103,709 | 46,338 | 40,838 | 95,275 | 59,275 | 73,837 | 73,837 |
| | | | | | | | | | | | | | |
| **Cost of Goods Sold** | | | | 20,000 | 10,000 | 20,000 | | 20,000 | 20,000 | 40,000 | 56,271 | 20,000 | 20,000 |
| | | | | | | | | | | | | | |
| **Employee Wages, Tax and Benefits (cash basis)** | | | | | | | | | | | | | |
| Wages - Gross | | 28,372 | | 28,122 | | | 28,122 | | 28,122 | | 28,122 | | 28,122 |
| Contract Labor ( 2 aboard) | | 37,042 | | 21,342 | | | 37,042 | | 21,342 | | 42,042 | | 21,342 |
| Proposed Insider Compensation | | 26,858 | | 5,625 | | | 26,858 | | 5,625 | | 26,858 | | 5,625 |
| Payroll Tax ER and payroll expenses | 250 | 3,221 | | 3,221 | | | 3,221 | | 3,221 | | 3,221 | | 3,221 |
| Health Insurance (ER) | | 3,131 | | 6,753 | | | - | | 6,753 | | - | | 6,753 |
| **Subtotal** | 250 | 98,624 | - | 65,063 | - | - | 95,243 | - | 65,063 | - | 100,243 | - | 65,063 |
| **Other OP Expenses** | | | | | | | | | | | | | |
| Bank fees | | 100 | | | | | 100 | | | | 100 | | |
| Legal | | | 4,000 | 4,000 | | | 4,000 | | | 4,000 | | | |
| Marketing | | | | | | 15,000 | | | | 15,000 | | | |
| Office rent | | 2,129 | | | | | 2,824 | | | | 2,824 | | 10,000 |
| Taxes - business (rose synder) | | | | | | 10,000 | | | 10,000 | | | |
| Tax and accounting | | | | | | | | | | | | | |
| Travel-Other | | | | 4,000 | | | | | 7,500 | | | | |
| Credit Cards | | | | | | | | | | | | | |
| US Trustee Fee | | | | | | | 404 | | | | | | |
| **Subtotal** | - | 2,229 | 4,000 | 8,000 | - | 25,000 | 7,328 | - | 7,500 | 29,000 | 2,924 | - | 10,000 |
| | | | | | | | | | | | | | |
| **Total Expenses** | 250 | 100,853 | 4,000 | 93,063 | 10,000 | 45,000 | 102,571 | 20,000 | 92,563 | 69,000 | 159,438 | 20,000 | 95,063 |
| | | | | | | | | | | | | | |
| **PROFESSIONAL LEGAL FEES** | | 5,000 | | | | 10,000 | | | | | 10,000 | | |
| ***Transfers In/Out** | | (47,000) | - | (112,000) | (6,200) | (55,000) | (45,200) | (7,000) | (72,000) | | (184,000) | (20,000) | (93,000) |
| **Ending Cash Balance** | 61,675 | 15,822 | 51,822 | 70,759 | 70,709 | 70,709 | 46,338 | 33,338 | 20,275 | 26,275 | 73,837 | 73,837 | 71,774 |

**\*Because the Debtors worked together as the "Aftershock Media" enterprise and Aftershock was a newer and developing company, prior to the Petition Date, RGTV funds would at times be used to support Aftershock's operations. Although the Debtors are providing separate Budgets for purposes of the Cash Collateral Motion, historically, the Debtors' cash has been managed on a consolidated basis.**

# EXHIBIT "3"

## Rive Gauche Television

| | Wk 1 | Wk 2 | Wk 3 | Wk 4 | Wk 5 | Wk 6 | Wk 7 | Wk 8 | Wk 9 | Wk 10 | Wk 11 | Wk 12 | Wk 13 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Week Ending | 12/19 - 12/23 | 12/26 - 12/30 | 1/2 - 1/6 | 1/9 - 1/13 | 1/16 - 1/20 | 1/23 - 1/27 | 1/30 - 2/3 | 2/6 - 2/10 | 2/13 - 2/17 | 2/20 - 2/24 | 2/27 - 3/3 | 3/6 - 3/10 | 3/13 - 3/17 |
| Cash Beginning Balance | 684,332 | 717,969 | 632,234 | 623,119 | 223,345 | 217,145 | 108,424 | 45,372 | 38,372 | 33,452 | 35,768 | 133,150 | 440,266 |
| A/R Collections and Other Receivables | 33,754 | 21,547 | 36,250 | | | | 72,000 | | 200,000 | 110,037 | 446,000 | 380,000 | |
| **TOTAL CASH** | 718,086 | 739,516 | 668,484 | 623,119 | 223,345 | 217,145 | 180,424 | 45,372 | 238,372 | 143,489 | 481,768 | 513,150 | 440,266 |
| | | | | | | | | | | | | | |
| **Cost of Goods Sold** | | | | 214,000 | | 7,500 | | | 104,000 | 82,500 | 64,000 | 50,000 | 50,000 |
| | | | | | | | | | | | | | |
| **Employee Wages, Tax and Benefits (cash basis)** | | | | | | | | | | | | | |
| Wages - Gross | | 13,871 | | 13,871 | | | 13,871 | | 13,871 | | 13,871 | | 13,871 |
| Contract Labor ( 2 overseas) | | 13,880 | | 6,200 | | | 8,200 | | 6,200 | | 8,200 | | 6,200 |
| Proposed Insider Compensation | | 12,500 | | | | | 12,500 | | | | 12,500 | | |
| Payroll Tax ER and payroll expenses | 117 | 1,339 | | 1,339 | | | 1,339 | | 1,339 | | 1,339 | | 1,339 |
| Health Insurance (ER) | | 962 | | 1,190 | | | 962 | | 1,190 | | 962 | | 1,190 |
| **Subtotal** | 117 | 42,552 | - | 22,600 | - | - | 36,872 | - | 22,600 | - | 36,872 | - | 22,600 |
| **Other OP Expenses** | | | | | | | | | | | | | |
| Bank fees | | 1,200 | | | | | 1,200 | | | | 1,200 | | |
| Insurance - other | | 826 | | | | | 826 | | | | 826 | | |
| Legal | | | | | | 2,500 | | | | | | | |
| Marketing | | | | 2,500 | | 12,721 | | | | 2,500 | 12,721 | | 40,442 |
| IT | | 2,884 | 1,365 | 8,684 | | 11,000 | 2,884 | | | | | 2,884 | |
| Tax and accounting | | | | | | 10,000 | | | | 10,000 | | | |
| Travel-Other | | 1,500 | | | | | 1,500 | | | | | | |
| Credit Card | | | 44,000 | 33,670 | - | 40,000 | | | | | 40,000 | | |
| Temp Accounting | | 6,320 | | 6,320 | | | 6,320 | | 6,320 | | 6,320 | | 6,320 |
| Subscription | | | | | | | | | | | 5,400 | | |
| US Trustees | | | | | | | 250 | | | | | | |
| **Subtotal** | - | 12,730 | 45,365 | 51,174 | - | 36,221 | 52,980 | - | 6,320 | 25,221 | 53,746 | 2,884 | 46,762 |
| | | | | | | | | | | | | | |
| **Total Expenses** | 117 | 55,282 | 45,365 | 287,774 | - | 43,721 | 89,852 | - | 132,920 | 107,721 | 154,618 | 52,884 | 119,362 |
| | | | | - | | | | | | | | | |
| **PROFESSIONAL LEGAL FEES** | | 5,000 | | | | 10,000 | | | | | 10,000 | | |
| **\*Transfers In/Out** | | 47,000 | - | 112,000 | 6,200 | 55,000 | 45,200 | 7,000 | 72,000 | | 184,000 | 20,000 | 93,000 |
| **Ending Cash Balance** | 717,969 | 632,234 | 623,119 | 223,345 | 217,145 | 108,424 | 45,372 | 38,372 | 33,452 | 35,768 | 133,150 | 440,266 | 227,904 |

Because the Debtors worked together as the "Aftershock Media" enterprise and Aftershock was a newer and developing company, prior to the Petition Date, RGTV funds would at times be used to support Aftershock's operations. Although the Debtors are providing separate Budgets for purposes of the Cash Collateral Motion, historically, the Debtors' cash has been managed on a consolidated basis

# EXHIBIT "4"



2020 Hurley Way, Suite 350  Sacramento, CA 95825
Local: (916) 564-7800  Fax: (916) 564-7900  Toll Free: (800) 952-5696

**Ask us about UCC eZFILE®**

## UCC Search Report

| | |
|---:|:---|
| **Type of Search** | UCCs, Federal Tax Liens, State Tax Liens, and Judgments |
| **Jurisdiction/Filing Office** | State of California, Secretary of State Uniform Commercial Code Division |
| **Estimated Currency Date** | Sep. 01, 2022 |
| **Last File Date** | Sep 4 2022 |
| **Subject Search Name** | AFTERSHOCK COMICS, LLC |
| **Search Key Entered** | AFTER* COMIC* |

## Results

Based on a search of the indices of the Uniform Commercial Code Division of the Secretary of State of California, there are no active liens of record other than those set out below. Liens reflected in this report were based on the searcher's individual search parameters, the search key entered, as well as the searcher's choice of the liens ultimately included or excluded herein. Certification can only be obtained through the office of the California Secretary of State.

### 1. UCC

| | | |
|---:|:---|:---|
| **Document No.** | 20197691843604 | Lapses 1/11/2024 |
| **Filed** | 1/11/2019 | |
| **Debtor** | AFTERSHOCK COMICS, LLC | |
| | 15300 VENTURA BLVD. SUITE 507 | |
| | SHERMAN OAKS CA 91403-5844 | |
| **Secured Party** | BONDIT LLC | |
| | 1639 11TH ST. #160 | |
| | SANTA MONICA CA 90404 | |
| **Amendment Type** | Termination | |
| **File No.** | 202077702105 | |
| **Filed** | 3/27/2020 2:57:27 PM | |

### 2. UCC

| | | |
|---:|:---|:---|
| **Document No.** | 20207760315738 | Lapses 1/31/2025 |
| **Filed** | 1/31/2020 | |
| **Debtor** | AFTERSHOCK COMICS, LLC | |
| | 15300 VENTURA BLVD. SUITE 507 | |
| | SHERMAN OAKS CA 91403 | |
| **Debtor** | RIVE GAUCHE TELEVISION | |
| | 15300 VENTURA BLVD. SUITE 507 | |
| | SHERMAN OAKS CA 91403 | |
| **Secured Party** | BONDIT LLC | |
| | 1639 11TH ST. #160 | |
| | SANTA MONICA CA 90404 | |
| **Amendment Type** | Termination | |
| **File No.** | 202077702131 | |
| **Filed** | 3/27/2020 3:16:43 PM | |

**Amendment Type** Termination
**File No.** 202077702132
**Filed** 3/27/2020 3:16:44 PM

**3. UCC**

**Document No.** 20207770214101                    Lapses 3/27/2025
**Filed** 3/27/2020

**Debtor** AFTERSHOCK COMICS, LLC
15300 VENTURA BOULEVARD, SUITE 507
SHERMAN OAKS CA 91403

**Secured Party** ACCESS ROAD CAPITAL LLC
238 CEDAR AVENUE
HEWLETT NY 11557

We assume no liability with respect to the identity of any party named or referred to in this report, nor with respect to the validity, legal effect or priority of any matter shown herein; nor, due to our inability to independently verify the accuracy of this data as provided by government and other sources, do we make any guaranty or representation as to its accuracy.

---------- **END OF REPORT** ----------

## Report Parameters

The UCC Revised Article 9 Model Administrative Rules (MARS) provide state filing offices with a set of guidelines for producing a legally compliant UCC lien search report. The search tool used to create this search report was designed to satisfy the requirements under MARS while providing the searcher with increased flexibility.

Flexible search logic generates a more inclusive search report and addresses the inconsistencies in searches performed within states that did not effectively adopt the MARS guidelines. Further, these specially designed broad-based searching features aid in the location of involuntary liens such as Federal and State Tax Liens and Judgment Liens and liens that may not be located in state databases limited to the MARS guidelines for the reporting of UCCs.

# UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
Corporation Service Company
800-858-5294

**B. E-MAIL CONTACT AT FILER (optional)**

**C. SEND ACKNOWLEDGMENT TO: (Name and Address)**
CORPORATION SERVICE COMPANY
801 ADLAI STEVENSON DRIVE
Springfield, IL 62703-4261
USA

**DOCUMENT NUMBER: 76018450002**
**FILING NUMBER: 19-7691843604**
**FILING DATE: 01/11/2019 17:20**

IMAGE GENERATED ELECTRONICALLY FOR XML FILING
THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY

**1. DEBTOR'S NAME:** Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| Aftershock Comics, LLC | | | |

| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 15300 Ventura Blvd. Suite 507 | Sherman Oaks | CA | 91403-5844 | USA |

**2. DEBTOR'S NAME:** Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|

| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

**3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY):** Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| BondIt LLC | | | |

| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 1639 11th St. #160 | Santa Monica | CA | 90404 | USA |

**4. COLLATERAL:** This financing statement covers the following collateral:
The Debtor hereby irrevocably and unconditionally pledges, assigns and grants to the Secured Party a first priority security interest, in all of the Debtor's right, title and interest in, to and under all property, tangible and intangible, wherever located or situated and whether now owned, currently existing or hereafter acquired or created, including, but not limited to accounts, deposit accounts, receivables, proceeds, invoices, equipment, general intangibles, goodwill, inventory, investment property, letter of credit rights, negotiable collateral, intellectual property, insurance policies, cash, supporting obligations, Debtor's rights to its full library, any securities and all other personal property of the Debtors (collectively, the "Collateral"), as collateral security to secure the payment and performance in full of all the Obligations as outlined in the Promissory Note and the Security and Guaranty Agreement dated January 9th, 2019 between Debtor and Secured Party.

**5.** Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and instructions)  ☐ being administered by a Decedent's Personal Representative

**6a.** Check only if applicable and check only one box:
☐ Public-Finance Transaction  ☐ Manufactured-Home Transaction  ☐ A Debtor is a Transmitting Utility

**6b.** Check only if applicable and check only one box:
☐ Agricultural Lien  ☐ Non-UCC Filing

**7. ALTERNATIVE DESIGNATION (if applicable):**  ☐ Lessee/Lessor  ☐ Consignee/Consignor  ☐ Seller/Buyer  ☐ Bailee/Bailor  ☐ Licensee/Licensor

**8. OPTIONAL FILER REFERENCE DATA:**
[157532848]

**FILING OFFICE COPY**

**UCC FINANCING STATEMENT AMENDMENT**

FOLLOW INSTRUCTIONS

| | |
|---|---|
| A. NAME & PHONE OF CONTACT AT FILER (optional)<br>Corporation Service Company<br>800-858-5294 | |
| B. E-MAIL CONTACT AT FILER (optional) | |
| C. SEND ACKNOWLEDGMENT TO: (Name and Address)<br>CORPORATION SERVICE COMPANY<br>801 ADLAI STEVENSON DRIVE<br>Springfield, IL 62703-4261<br>USA | **DOCUMENT NUMBER: 87487270002**<br>**FILING NUMBER: 20-77702105**<br>**FILING DATE: 03/27/2020 14:57**<br><br>IMAGE GENERATED ELECTRONICALLY FOR XML FILING<br>THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY |

1a. INITIAL FINANCING STATEMENT FILE NUMBER
19-7691843604

1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Filer: Attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13

2. ☑ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

3. ☐ ASSIGNMENT (full or partial): Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

4. ☐ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. ☐ PARTY INFORMATION CHANGE:
Check one of these two boxes:                    AND Check one of these three boxes to:
This Change affects ☐ Debtor or ☐ Secured Party of record.    ☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c    ☐ ADD name: Complete item 7a or 7b, and item 7c    ☐ DELETE name: Give record name to be deleted in item 6a or 6b

6. CURRENT RECORD INFORMATION: Complete for Party Information Change - provide only one name (6a or 6b)

| | 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

7. CHANGED OR ADDED INFORMATION: Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| | 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | 7b. INDIVIDUAL'S SURNAME | | | |
| | INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| | INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

8. ☐ COLLATERAL CHANGE: Also check one of these four boxes: ☐ ADD collateral  ☐ DELETE collateral  ☐ RESTATE covered collateral  ☐ ASSIGN collateral
Indicate collateral:

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT: Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| | a. ORGANIZATION'S NAME<br>Bondit LLC | | | |
|---|---|---|---|---|
| OR | b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

10. OPTIONAL FILER REFERENCE DATA:
Debtor:Aftershock Comics, LLC [179600817]

**FILING OFFICE COPY**

# UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT FILER (optional)**

Corporation Service Company

800-858-5294

**B. E-MAIL CONTACT AT FILER (optional)**

**C. SEND ACKNOWLEDGMENT TO: (Name and Address)**

CORPORATION SERVICE COMPANY
801 ADLAI STEVENSON DRIVE
Springfield, IL 62703-4261
USA

**DOCUMENT NUMBER: 85781740002**
**FILING NUMBER: 20-7760315738**
**FILING DATE: 01/31/2020 11:39**

IMAGE GENERATED ELECTRONICALLY FOR XML FILING
THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY

**1. DEBTOR'S NAME:** Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| Aftershock Comics, LLC | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 15300 Ventura Blvd. Suite 507 | Sherman Oaks | CA | 91403 | USA |

**2. DEBTOR'S NAME:** Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Individual Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| Rive Gauche Television | | | |
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 15300 Ventura Blvd. Suite 507 | Sherman Oaks | CA | 91403 | USA |

**3. SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| BondIt LLC | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 1639 11th St. #160 | Santa Monica | CA | 90404 | USA |

**4. COLLATERAL:** This financing statement covers the following collateral:

The Debtor hereby irrevocably and unconditionally pledge, assign and grant to the Lender a perfected first priority security interest, (with the exception of the Permitted Lien associated with Rive Gauche Television, in which Lender agrees to subordinate to second position behind East West Bank's first position lien), in all of the Debtor's right, title and interest in, to and under all property, tangible and intangible, wherever located or situated and whether now owned, currently existing or hereafter acquired or created, including, but not limited to accounts, deposit accounts, receivables, current and future proceeds, equipment, general intangibles, goodwill, inventory, investment property, letter of credit rights, negotiable collateral, intellectual property, insurance policies, cash, supporting obligations, Debtor's rights to its full library of titles, all pledged receivable and funds from EIS fundraising activities, any securities and all other personal property of the Debtors (collectively, the "Collateral"), as collateral security to secure the payment and performance in full of all the Obligations. This Collateral includes, but is not limited by, the following: 100%

**5. Check only if applicable and check only one box:** Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and instructions) ☐ being administered by a Decedent's Personal Representative

**6a. Check only if applicable and check only one box:**
☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

**6b. Check only if applicable and check only one box:**
☐ Agricultural Lien ☐ Non-UCC Filing

**7. ALTERNATIVE DESIGNATION (if applicable):** ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

**8. OPTIONAL FILER REFERENCE DATA:**
[176739933]

**FILING OFFICE COPY**

## UCC FINANCING STATEMENT ADDENDUM

FOLLOW INSTRUCTIONS

9. NAME OF FIRST DEBTOR: Same as line 1a or 1b on Financing Statement; if line 1b was left blank because individual
Debtor name did not fit, check here ☐

| OR | 9a. ORGANIZATION'S NAME |
|----|----|
| | Aftershock Comics, LLC |
| | 9b. INDIVIDUAL'S SURNAME |
| | FIRST PERSONAL NAME |
| | ADDITIONAL NAME(S)/INITIAL(S) |

SUFFIX

**DOCUMENT NUMBER: 85781740002**

**IMAGE GENERATED ELECTRONICALLY FOR XML FILING**
**THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY**

---

10. DEBTOR'S NAME: Provide (10a or 10b) only <u>one</u> additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

| OR | 10a. ORGANIZATION'S NAME |
|----|----|
| | 10b. INDIVIDUAL'S SURNAME |
| | INDIVIDUAL'S FIRST PERSONAL NAME |
| | INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) |

SUFFIX

| 10c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|----|----|----|----|----|
| | | | | |

---

11. ☐ ADDITIONAL SECURED PARTY'S NAME <u>or</u> ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only <u>one</u> name (11a or 11b)

| OR | 11a. ORGANIZATION'S NAME | | | |
|----|----|----|----|----|
| | 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

---

12. ADDITIONAL SPACE FOR ITEM 4 (collateral):

irrevocable assignment of all current and future receivables and proceeds, as collateral security to secure the payment and performance in full of all the obligations of the Debtor until the Lender is repaid the Loan and Interest amounts in full. Lender acknowledges and agrees that the security interest to be granted to Secured Party by Rive Gauche Television is subject to the consent of its primary lender and the execution of all documentation, including, without limitation, a subordination agreement and intercreditor agreement, required by such lender.

---

| 13. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS (if applicable) | 14. This FINANCING STATEMENT: ☐ covers timber to be cut ☐ covers as-extracted collateral ☐ is filed as a fixture filing. |
|----|----|
| 15. Name and address of RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest): | 16. Description of real estate: |

17. MISCELLANEOUS:

**FILING OFFICE COPY**

**UCC FINANCING STATEMENT AMENDMENT**

FOLLOW INSTRUCTIONS

| A. NAME & PHONE OF CONTACT AT FILER (optional) |
|---|
| Corporation Service Company |
| 800-858-5294 |

| B. E-MAIL CONTACT AT FILER (optional) |
|---|

| C. SEND ACKNOWLEDGMENT TO: (Name and Address) |
|---|
| CORPORATION SERVICE COMPANY |
| 801 ADLAI STEVENSON DRIVE |
| Springfield, IL 62703-4261 |
| USA |

**DOCUMENT NUMBER: 87487980002**
**FILING NUMBER: 20-77702131**
**FILING DATE: 03/27/2020 15:16**

IMAGE GENERATED ELECTRONICALLY FOR XML FILING
THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE NUMBER | 1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Filer: Attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13 |
|---|---|
| 20-7760315738 | |

2. ☑ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

3. ☐ **ASSIGNMENT** (full or partial): Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

4. ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. ☐ **PARTY INFORMATION CHANGE:**

Check one of these two boxes:           AND Check one of these three boxes to:

This Change affects ☐ Debtor or ☐ Secured Party of record.     ☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a and 7b and item 7c   ☐ ADD name: Complete item 7a or 7b, and item 7c   ☐ DELETE name: Give record name to be deleted in item 6a or 6b

| 6. CURRENT RECORD INFORMATION: Complete for Party Information Change - provide only one name (6a or 6b) | | | |
|---|---|---|---|
| **OR** 6a. ORGANIZATION'S NAME | | | |
| 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

| 7. CHANGED OR ADDED INFORMATION: Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) | | | |
|---|---|---|---|
| **OR** 7a. ORGANIZATION'S NAME | | | |
| 7b. INDIVIDUAL'S SURNAME | | | |
| INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

8. ☐ **COLLATERAL CHANGE:** Also check one of these four boxes: ☐ ADD collateral   ☐ DELETE collateral   ☐ RESTATE covered collateral   ☐ ASSIGN collateral
Indicate collateral:

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT: Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)

If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| **OR** a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| Bondit LLC | | | |
| b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

| 10. OPTIONAL FILER REFERENCE DATA: |
|---|
| Debtor:Rive Gauche Television [179600026] |

**FILING OFFICE COPY**

**UCC FINANCING STATEMENT AMENDMENT**

FOLLOW INSTRUCTIONS

| A. NAME & PHONE OF CONTACT AT FILER (optional) |
|---|
| Corporation Service Company |
| 800-858-5294 |

| B. E-MAIL CONTACT AT FILER (optional) |
|---|
| |

| C. SEND ACKNOWLEDGMENT TO: (Name and Address) |
|---|
| CORPORATION SERVICE COMPANY |
| 801 ADLAI STEVENSON DRIVE |
| Springfield, IL 62703-4261 |
| USA |

**DOCUMENT NUMBER:** 87487990002
**FILING NUMBER:** 20-77702132
**FILING DATE:** 03/27/2020 15:16

IMAGE GENERATED ELECTRONICALLY FOR XML FILING
THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE NUMBER | 1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Filer: <u>Attach</u> Amendment Addendum (Form UCC3Ad) <u>and</u> provide Debtor's name in item 13 |
|---|---|
| 20-7760315738 | |

2. ☑ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

3. ☐ **ASSIGNMENT** (full or partial): Provide name of Assignee in item 7a or 7b, <u>and</u> address of Assignee in item 7c <u>and</u> name of Assignor in item 9
For partial assignment, complete items 7 and 9 <u>and</u> also indicate affected collateral in item 8

4. ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. ☐ **PARTY INFORMATION CHANGE:**

Check <u>one</u> of these two boxes:     **AND** Check <u>one</u> of these three boxes to:

This Change affects ☐ Debtor <u>or</u> ☐ Secured Party of record.    ☐ CHANGE name and/or address: Complete item 6a or 6b; <u>and</u> item 7a or 7b <u>and</u> item 7c    ☐ ADD name: Complete item 7a or 7b, <u>and</u> item 7c    ☐ DELETE name: Give record name to be deleted in item 6a or 6b

6. CURRENT RECORD INFORMATION: Complete for Party Information Change - provide only <u>one</u> name (6a or 6b)

| | 6a. ORGANIZATION'S NAME |
|---|---|
| OR | |

| | 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|---|
| | | | | |

7. CHANGED OR ADDED INFORMATION: Complete for Assignment or Party Information Change - provide only <u>one</u> name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| | 7a. ORGANIZATION'S NAME |
|---|---|
| | |

| | 7b. INDIVIDUAL'S SURNAME |
|---|---|
| OR | |
| | INDIVIDUAL'S FIRST PERSONAL NAME |

| | INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
|---|---|---|---|
| | | | |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

8. ☐ **COLLATERAL CHANGE:** <u>Also</u> check <u>one</u> of these four boxes: ☐ ADD collateral ☐ DELETE collateral ☐ RESTATE covered collateral ☐ ASSIGN collateral
Indicate collateral:

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT: Provide only <u>one</u> name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| | a. ORGANIZATION'S NAME |
|---|---|
| OR | BondIt LLC |

| | b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|---|
| | | | | |

10. OPTIONAL FILER REFERENCE DATA:
Debtor:Aftershock Comics, LLC [179599767]

**FILING OFFICE COPY**

# UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
BABOK & ROBINSON, LLP
(310) 860-1280

**B. E-MAIL CONTACT AT FILER (optional)**

**C. SEND ACKNOWLEDGMENT TO: (Name and Address)**
COGENCY GLOBAL INC.
10 East 40th Street,
Tenth Floor
New York, NY 10016
USA

**DOCUMENT NUMBER: 87488080002**
**FILING NUMBER: 20-7770214101**
**FILING DATE: 03/27/2020 15:21**

IMAGE GENERATED ELECTRONICALLY FOR XML FILING
THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY

**1. DEBTOR'S NAME:** Provide only <u>one</u> Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| AfterShock Comics, LLC | | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 15300 Ventura Boulevard, Suite 507 | Sherman Oaks | CA | 91403 | USA |

**2. DEBTOR'S NAME:** Provide only <u>one</u> Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

**3. SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only <u>one</u> Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Access Road Capital LLC | | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 238 Cedar Avenue | Hewlett | NY | 11557 | USA |

**4. COLLATERAL:** This financing statement covers the following collateral:
All assets of Debtor, whether now owned or hereafter acquired and wheresoever located, including, without limitation, all accessions thereto and proceeds thereof.

**5.** Check <u>only</u> if applicable and check <u>only</u> one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and instructions) ☐ being administered by a Decedent's Personal Representative

| **6a.** Check <u>only</u> if applicable and check <u>only</u> one box: | **6b.** Check <u>only</u> if applicable and check <u>only</u> one box: |
|---|---|
| ☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility | ☐ Agricultural Lien ☐ Non-UCC Filing |

**7. ALTERNATIVE DESIGNATION** (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

**8. OPTIONAL FILER REFERENCE DATA:**
Filed with: CA - Secretary of State (252-1) A#1011990

**FILING OFFICE COPY**



2020 Hurley Way, Suite 350  Sacramento, CA 95825
Local: (916) 564-7800  Fax: (916) 564-7900  Toll Free: (800) 952-5696

**Ask us about UCC eZFILE®**

# UCC Search Report

| | |
|---|---|
| **Type of Search** | UCCs, Federal Tax Liens, State Tax Liens, and Judgments |
| **Jurisdiction/Filing Office** | State of California, Secretary of State Uniform Commercial Code Division |
| **Estimated Currency Date** | Sep. 01, 2022 |
| **Last File Date** | Sep 4 2022 |
| **Subject Search Name** | RIVE GAUCHE TELEVISION |
| **Search Key Entered** | RIV* GAUCH* |

# Results

Based on a search of the indices of the Uniform Commercial Code Division of the Secretary of State of California, there are no active liens of record other than those set out below. Liens reflected in this report were based on the searcher's individual search parameters, the search key entered, as well as the searcher's choice of the liens ultimately included or excluded herein. Certification can only be obtained through the office of the California Secretary of State.

## 1. UCC

| | |
|---|---|
| **Document No.** | 20087168879347 |
| **Filed** | 8/14/2008 |

Lapses 8/14/2023

| | |
|---|---|
| **Debtor** | RIVE GAUCHE TELEVISION<br>15442 VENTURA BOULEVARD, SUITE 101<br>SHERMAN OAKS CA 91403 |
| **Secured Party** | ACCESS ROAD CAPITAL LLC<br>238 CEDAR AVENUE<br>HEWLETT NY 11557 |
| **Secured Party** | BANK LEUMI USA<br>8383 WILSHIRE BOULEVARD, SUITE 400<br>BEVERLY HILLS CA 90211 |
| **Secured Party** | EAST WEST BANK<br>1900 AVENUE OF THE STARS<br>LOS ANGELES CA 90067 |
| **Amendment Type** | Amendment |
| **File No.** | 201273380476 |
| **Filed** | 11/26/2012 12:23:36 PM |
| **Amendment Type** | Continuation |
| **File No.** | 201373531729 |
| **Filed** | 3/25/2013 4:01:40 PM |
| **Amendment Type** | Continuation |
| **File No.** | 201876361587 |
| **Filed** | 3/5/2018 12:26:59 PM |
| **Amendment Type** | Assignment |
| **File No.** | 202077702125 |
| **Filed** | 3/27/2020 3:06:18 PM |

**2. UCC**

| | |
|---|---|
| **Document No.** | 20197691843725 |
| **Filed** | 1/11/2019 |

Lapses 1/11/2024

| | |
|---|---|
| **Debtor** | RIVE GAUCHE TELEVISON |
| | 15300 VENTURA BLVD. SUITE 507 |
| | SHERMAN OAKS CA 91403 |
| **Secured Party** | BONDIT LLC |
| | 1639 11TH ST. #160 |
| | SANTA MONICA CA 90404 |
| **Amendment Type** | Termination |
| **File No.** | 202077702106 |
| **Filed** | 3/27/2020 2:57:28 PM |

**3. UCC**

| | |
|---|---|
| **Document No.** | 20207760315738 |
| **Filed** | 1/31/2020 |

Lapses 1/31/2025

| | |
|---|---|
| **Debtor** | AFTERSHOCK COMICS, LLC |
| | 15300 VENTURA BLVD. SUITE 507 |
| | SHERMAN OAKS CA 91403 |
| **Debtor** | RIVE GAUCHE TELEVISION |
| | 15300 VENTURA BLVD. SUITE 507 |
| | SHERMAN OAKS CA 91403 |
| **Secured Party** | BONDIT LLC |
| | 1639 11TH ST. #160 |
| | SANTA MONICA CA 90404 |
| **Amendment Type** | Termination |
| **File No.** | 202077702131 |
| **Filed** | 3/27/2020 3:16:43 PM |
| **Amendment Type** | Termination |
| **File No.** | 202077702132 |
| **Filed** | 3/27/2020 3:16:44 PM |

**4. UCC**

| | |
|---|---|
| **Document No.** | 20207791405651 |
| **Filed** | 6/16/2020 |

Lapses 6/16/2025

| | |
|---|---|
| **Debtor** | RIVE GAUCHE TELEVISION |
| | 15300 VENTURA BLVD, STE 507 |
| | SHERMAN OAKS CA 91403 |
| **Secured Party** | CITIBANK, N.A., ITS BRANCHES, SUBSIDIARIES AND AFFILIATES |
| | 388 GREENWICH STREET, 10TH FLOOR |
| | NEW YORK NY 10013 |

We assume no liability with respect to the identity of any party named or referred to in this report, nor with respect to the validity, legal effect or priority of any matter shown herein; nor, due to our inability to independently verify the accuracy of this data as provided by government and other sources, do we make any guaranty or representation as to its accuracy.

**---------- END OF REPORT ----------**

## Report Parameters

The UCC Revised Article 9 Model Administrative Rules (MARS) provide state filing offices with a set of guidelines for producing a legally compliant UCC lien search report. The search tool used to create this search report was designed to satisfy the requirements under MARS while providing the searcher with increased flexibility.

Flexible search logic generates a more inclusive search report and addresses the inconsistencies in searches performed within states that did not effectively adopt the MARS guidelines. Further, these specially designed broad-based searching features aid in the location of involuntary liens such as Federal and State Tax Liens and Judgment Liens and liens that may not be located in state databases limited to the MARS guidelines for the reporting of UCCs.

**UCC FINANCING STATEMENT**
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**08-7168879347**

**08/14/2008 13:14**

**FILED**
CALIFORNIA
SECRETARY OF STATE

SOS

18062240002    UCC 1 FILING

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| A. NAME & PHONE OF CONTACT AT FILER [optional] |
|---|

| B. SEND ACKNOWLEDGEMENT TO:   (Name and Address) |
|---|
| Law Offices of Howard D. Behar<br>1108 Somera Road<br>Los Angeles, California 90077<br>Attention:  Howard D. Behar, Esq. |

PARASEC INCORPORATED
P.O. BOX 160568
SACRAMENTO, CA 95816-0568

45544S

**1. DEBTOR'S EXACT FULL LEGAL NAME** – insert only one debtor name (1a or 1b) – do not abbreviate or combine names

| | 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|---|
| OR | Rive Gauche Television | | | | |
| | 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | SUFFIX |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 15442 Ventura Boulevard, Suite 101 | Sherman Oaks | CA | 91403 | USA |

| ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID#, if any | |
|---|---|---|---|---|
| | Corporation | California | C1869288 | ☐ NONE |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** – insert only one debtor name (2a or 2b) – do not abbreviate or combine names

| | 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|---|
| OR | | | | | |
| | 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | SUFFIX |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID#, if any | |
|---|---|---|---|---|
| | | | | ☐ NONE |

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) – insert only one secured party name (3a or 3b)

| | 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|---|
| OR | Bank Leumi USA | | | | |
| | 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | SUFFIX |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 8383 Wilshire Boulevard, Suite 400 | Beverly Hills | CA | 90211 | USA |

4. This FINANCING STATEMENT covers the following collateral:

All of Debtor's right, title and interest in and to all personal property, tangible and intangible, absolute and contingent, wherever located or situated, now owned or hereafter acquired by Debtor, including, but not limited to, all goods, accounts, contract rights, general intangibles, equipment (including, without limitation, all vehicles, machinery, electrical and electronic components, motion picture production materials, furniture, furnishings, fixtures and supplies, of every nature, wherever located, all additions, accessories and improvements thereto and substitutions therefor and all accessories, parts and equipment which may be attached to or which are necessary for the operation and use of such equipment), cash and cash equivalents, negotiable instruments, documents of title, copyrights, insurance policies connected therewith (including, but not limited to, all proceeds and/or recoveries therefrom), products thereof and any proceeds thereon or income or rents therefrom, additions or accessions thereto, or other things of value pertaining thereto, and the collateral described on Schedule A annexed hereto and by this reference made a part hereof.

| 5. ALTERNATIVE DESIGNATION [if applicable]: | ☐ LESSEE/LESSOR | ☐ CONSIGNEE/CONSIGNOR | ☐ BAILEE/BAILOR | ☐ SELLER/BUYER | ☐ AG. LIEN | ☐ NON-UCC FILING |
|---|---|---|---|---|---|---|

| 6. | ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.   Attach Addendum   [if applicable] | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s)<br>[ADDITIONAL FEE]   [optional] | ☐ All Debtors | ☐ Debtor 1 | ☐ Debtor 2 |
|---|---|---|---|---|---|

8. OPTIONAL FILER REFERENCE DATA
File in California

FILING OFFICE COPY – NATIONAL UCC FINANCING STATEMENT (FORM UCC1) – CALIFORNIA (REV. 01/01/08)

Schedule A
to
UCC Financing Statement

Debtor:          RIVE GAUCHE TELEVISION

Secured Party:   BANK LEUMI USA

*Item 4 (continued).  This Financing Statement covers the following collateral:*

All of Debtor's right, title and interest in and to all personal property, tangible and intangible, absolute and contingent, wherever located or situated, now owned or hereafter acquired by Debtor, including, but not limited to, all goods, accounts, contract rights, general intangibles, equipment (including, without limitation, all vehicles, machinery, electrical and electronic components, motion picture production materials, furniture, furnishings, fixtures and supplies, of every nature, wherever located, all additions, accessories and improvements thereto and substitutions therefor and all accessories, parts and equipment which may be attached to or which are necessary for the operation and use of such equipment), cash and cash equivalents, negotiable instruments, documents of title, copyrights, insurance policies connected therewith (including, but not limited to, all proceeds and/or recoveries therefrom), products thereof and any proceeds thereon or income or rents therefrom, additions or accessions thereto, or other things of value pertaining thereto, including, but not limited to, all of Debtor's right, title and interest in and to the Receivables and the Pictures (as such terms are hereinafter defined).

The term "Pictures" includes, without limitation, all Pictures (as hereinafter defined) and all motion picture, television and ancillary rights in and related to the screenplays, scenarios, outlines, screen treatments and other screenplay material (collectively, "Screenplays") for each of the Pictures or underlying material on which any of the properties is based; all of the properties thereof, tangible and intangible, whether now in existence or hereafter to be made or produced, whether or not in possession of Debtor, all rights therein and thereto (including, without limitation, any and all productions based on such rights), of every kind and character, including, without limiting the foregoing language, each and all of the following particular rights and properties:

(i)      the Pictures, including all Screenplays at every stage thereof;

(ii)     all common law and statutory copyright and other rights in all literary and other properties (hereinafter referred to as "said literary properties") which form the basis of any of the Pictures or which are or will be incorporated into any of the Pictures, all component parts of any of the Pictures consisting of said literary and other properties, all treatments of the Screenplays and other literary material, together with all preliminary and final Screenplays used and to be used in connection with any of the Pictures and all other literary material upon which any of the Pictures is based or from which it is adapted;

(iii)    all rights of every kind and nature in and to all music and musical compositions forming the basis of, created for, used and to be used in connection with any of the Pictures,

including, but not limited to, all rights to record, rerecord, produce, reproduce or synchronize all of said music and musical compositions in and in connection with any of the Pictures;

(iv)    all physical properties of every kind or nature of or relating to the Pictures, any production and all versions thereof, including, without limitation, all exposed and developed negative film, soundtracks, positive prints, cutouts and trims connected with any of the Pictures, and scripts, tape recordings, sound tracks, computer or electronically generated images and/or sounds and any other aural and/or visual recordings whether or not in completed form or in some state of completion;

(v)    all collateral, allied, subsidiary and merchandising rights appurtenant or related to any of the Pictures now or hereafter owned or controlled by Debtor, including, without limitation, the following rights:  all rights to produce remakes, prequels or sequels to any of the Pictures based upon such Pictures, said literary properties or the theme of such Pictures and/or the text or any part of said literary properties; all rights throughout the world to broadcast, transmit and/or reproduce by means of home video, Internet and television (including commercially sponsored, sustaining and subscription or "pay" television) or by any process analogous thereto, now known or hereafter devised, based upon any of the Pictures or any remake, prequel or sequel to any of the Pictures; all rights to produce initially for television or similar use a motion picture or series of motion pictures, by use of film or any other mechanical recording device now known or hereafter devised, based upon any of the Pictures, said literary property or any part thereof, including, without limitation, based upon any Screenplay for any of the Pictures; all merchandising rights, including, without limitation, all rights to use, exploit and license others to use and exploit any and all commercial tieups of any kind arising out of or connected with said literary properties, any of the Pictures, the characters of such Pictures or said literary properties and/or the names or characteristics of said characters and including further, without limitation, any and all commercial exploitation in connection with or related to any of the Pictures, any remake or sequel thereof and/or said literary properties;

(vi)    all statutory copyrights, domestic and foreign, obtained or to be obtained in any of the Pictures, together with any and all copyrights obtained or to be obtained in connection with any of the Pictures or any underlying or component element of any of the Pictures, including, without limitation, all copyrights on the property described in subparagraphs (i) through (v), inclusive, of this Paragraph, together with the right to copyright and all rights to renew or extend such copyrights and the rights to sue in the name of Debtor or Secured Party for past, present and/or future infringements of copyright;

(vii)    all insurance policies connected with any of the Pictures and all proceeds which may be derived therefrom;

(viii)    all rights to distribute, sell, rent or license the exhibition of or otherwise to exploit and turn to account any of the Pictures, the negatives, soundtracks, prints and motion picture rights in and to the story or other literary material upon which any of the Pictures is based or from which it is adapted, and said music and musical compositions used or to be used in such Pictures;

18062240002

(ix)    any and all sums, proceeds, monies, products, profits or increases, including money profits or increases (as those terms are used in the Uniform Commercial Code (the "UCC") or otherwise) or other property obtained or to be obtained from the distribution, exhibition, sale or other uses, exchanges, exploitations or dispositions (whether voluntary or involuntary) of any of the Pictures or any part of any of the Pictures, including, without limitation, all proceeds, profits, products and increases, whether in money or otherwise, from the sale, rental or licensing of any of the Pictures, including from collateral, allied, subsidiary and merchandising rights and including, without limitation, any and all of the foregoing derived from any sales, leasebacks, tax shelter financing and other financial transactions in respect of any of the Pictures;

(x)    the dramatic, nondramatic, stage, television, radio and publishing rights, titles and interests in and to any of the Pictures, and the right to obtain copyrights and renewals and extensions of copyrights therein;

(xi)    the titles of the Pictures and all rights of Debtor to the use thereof, including, without limitation, rights protected pursuant to trademark, service mark, unfair competition and/or the rules and principles of law of any other applicable statutory, common law or other rule or principle of law;

(xii)    any and all contract rights and/or chattel paper which may arise in connection with any of the Pictures;

(xiii)    all accounts and/or other rights to payment which Debtor currently owns or which may arise in favor of Debtor in the future in connection with any of the Pictures, including, without limitation, all accounts and/or rights to payment due from exhibitors, distributors, subdistributors and other licensees in connection with the distribution of any of the Pictures, and from exploitation of any and all of the collateral, allied, subsidiary merchandising and other rights in connection with any of the Pictures;

(xiv)    any and all "general intangibles" (as that term is defined in the UCC) in connection with any of the Pictures not elsewhere included in this definition, including, without limitation, any and all general intangibles consisting of any right to payment which may arise in the distribution or exploitation of any of the rights set forth herein, and any and all general intangible rights in favor of Debtor for services or other performances by any third parties, including actors, writers, directors, individual producers and/or any and all other performing or nonperforming artists in any way connected with any of the Pictures, and any and all general intangible rights in favor of Debtor relating to licenses of sound or other equipment in connection with any of the Pictures; and licenses for photographic or other processes, and any and all general intangibles related to the distribution or exploitation of any of the Pictures, including general intangibles related to or which grow out of the exhibition of any of the Pictures and the exploitation of any and all other rights in any of the Pictures set out in this definition;

(xv)    any and all goods, including inventory (as that term is defined in the UCC), which may arise in connection with the creation, production or delivery of any of the Pictures and which goods pursuant to any production or distribution agreement or otherwise are owned by Debtor;

(xvi)    all and each of the rights, regardless of denomination, which arise in connection with the creation, production, completion of production, delivery, distribution or other exploitation of any of the Pictures, including, without limitation, any and all rights in favor of Debtor, the ownership or control of which are or may become necessary or desirable, in the opinion of Secured Party, in order to complete production of any of the Pictures in the event that Secured Party exercises any rights it may have to take over and complete production of any of the Pictures;

(xvii)    any and all documents, receipts, or books and records, including, without limitation, any of the foregoing issued by any pledgeholder, warehouseman or bailee with respect to any of the Pictures, the negatives, soundtracks or prints with respect thereto;

(xviii)    any and all rights of Debtor under contracts relating to the production and/or distribution of any of the Pictures; and

(xix)    all cash, cash equivalents, bank accounts, security agreements and debts secured thereby, notes, drafts, documents of title, collateral accounts and all other present and future rights of Debtor now existing or hereafter arising to the payment of money including, without limitation, all monies from time to time held in the Cash Collateral Accounts and all other accounts of Debtor with Secured Party.

---

Capitalized terms used in this Schedule shall, unless the context otherwise requires, shall have the meanings ascribed to them below:

1.    "Picture" (collectively "Pictures") means each motion picture, cinematographic film and photoplay of every kind and character whatsoever, including the sound records thereof, as well as trailers and clips thereof, produced by means of any photographic, digital, electronic, mechanical or other processes or devices now or hereafter known, invented, used or contemplated, by which photographs, pictures, drawings, images or other visual reproductions or representations are or may be printed, imprinted, recorded or otherwise preserved on film, tape or any other material of any description (whether translucent or not) for later projection, exhibition or transmission by any means or media now known or hereafter devised, in such manner that the same are or appear to be in motion or in sequence on a screen, mirror, tube or other medium or device, whether or not accompanied by sound record, in which Debtor has any right, title or interest.

2.    "Receivables" means all rights to the payment of money now owned or hereafter acquired by Debtor, whether due or to become due, and whether or not earned by performance, including, but not limited to, accounts, contract rights, chattel paper, instruments and general intangibles.

# UCC FINANCING STATEMENT AMENDMENT

**FOLLOW INSTRUCTIONS (front and back) CAREFULLY**

**A. NAME & PHONE OF CONTACT AT FILER [optional]**
Tia Broich
(310) 734-5200

**B. SEND ACKNOWLEDGMENT TO: (Name and Address)**
National Corporate Research, Ltd.
10 East 40th Street,
Tenth Floor
New York, NY 10016
USA

DOCUMENT NUMBER: 35491430002
FILING NUMBER: 12-73380476
FILING DATE: 11/26/2012 12:23
IMAGE GENERATED ELECTRONICALLY FOR XML FILING
THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY

**1a. INITIAL FINANCING STATEMENT FILE #**
08-7168879347

**1b.** ☐ **This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.**

**2.** ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination.

**3.** ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

**4.** ☐ **ASSIGNMENT (full or partial):** Give name of assignee in item 7a or 7b and address of assignee in item 7c; also give name of assignor in item 9.

**5. AMENDMENT (PARTY INFORMATION):** This Amendment affects ☐ Debtor or ☑ Secured Party of record. Check only one of these.
Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.

☑ CHANGE name and/or address: Please refer to the detailed instructions in regards to changing the name/address of a party. | ☐ DELETE name: Give record name to be deleted in item 6a or 6b. | ☐ ADD name: Complete item 7a or 7b, and also item 7c

**6. CURRENT RECORD INFORMATION:**

| 6a. ORGANIZATION'S NAME |||||
|---|---|---|---|---|
| Bank Leumi USA |||||

| OR | 6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|---|
| | | | | |

**7. CHANGED (NEW) OR ADDED INFORMATION:**

| 7a. ORGANIZATION'S NAME |||||
|---|---|---|---|---|
| East West Bank |||||

| OR | 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|---|
| | | | | |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 1900 Avenue of the Stars | Los Angeles | CA | 90067- | USA |

| 7d. SEE INSTRUCTIONS | ADD'L DEBTOR INFO | 7e. TYPE OF ORGANIZATION | 7f. JURISDICTION OF ORGANIZATION | 7g. ORGANIZATIONAL ID#, if any |
|---|---|---|---|---|
| | | | | ☐ NONE |

**8. AMENDMENT (COLLATERAL CHANGE):** check only one box.
Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

**9. NAME of SECURED PARTY of RECORD AUTHORIZING THIS AMENDMENT** (name of assignor, if this is an Assignment). If this is an Amendment authorized by Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this amendment.

| a. ORGANIZATION'S NAME |||||
|---|---|---|---|---|
| Bank Leumi USA |||||

| OR | b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|---|
| | | | | |

**10. OPTIONAL FILER REFERENCE DATA**
CA/SOS Debtor: RIVE GAUCHE TELEVISION

**FILING OFFICE COPY**

# UCC FINANCING STATEMENT AMENDMENT

**FOLLOW INSTRUCTIONS (front and back) CAREFULLY**

| | |
|---|---|
| **A. NAME & PHONE OF CONTACT AT FILER [optional]**<br>Gisella Melendez<br>800-331-3282 | |
| **B. SEND ACKNOWLEDGMENT TO: (Name and Address)**<br>CT LIEN SOLUTIONS<br>2727 ALLEN PARKWAY<br>HOUSTON, TX 77019<br>USA | **DOCUMENT NUMBER:** 37060480002<br>**FILING NUMBER:** 13-73531729<br>**FILING DATE:** 03/25/2013 16:01<br>**IMAGE GENERATED ELECTRONICALLY FOR XML FILING**<br>**THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY** |

| | |
|---|---|
| **1a. INITIAL FINANCING STATEMENT FILE #**<br>08-7168879347 | **1b.** ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. |

**2.** ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination.

**3.** ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

**4.** ☐ **ASSIGNMENT (full or partial):** Give name of assignee in item 7a or 7b and address of assignee in item 7c; and also give name of assignor in item 9.

**5. AMENDMENT (PARTY INFORMATION):** This Amendment affects ☐ Debtor or ☐ Secured Party of record. Check only one of these.
Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.

| ☐ CHANGE name and/or address: Please refer to the detailed instructions in regards to changing the name/address of a party. | ☐ DELETE name: Give record name to be deleted in item 6a or 6b. | ☐ ADD name: Complete item 7a or 7b, and also item 7c |
|---|---|---|

**6. CURRENT RECORD INFORMATION:**

| | | | | |
|---|---|---|---|---|
| OR | **6a. ORGANIZATION'S NAME** | | | |
| | **6b. INDIVIDUAL'S LAST NAME** | **FIRST NAME** | **MIDDLE NAME** | **SUFFIX** |

**7. CHANGED (NEW) OR ADDED INFORMATION:**

| | | | | |
|---|---|---|---|---|
| OR | **7a. ORGANIZATION'S NAME** | | | |
| | **7b. INDIVIDUAL'S LAST NAME** | **FIRST NAME** | **MIDDLE NAME** | **SUFFIX** |

| **7c. MAILING ADDRESS** | **CITY** | | **STATE** | **POSTAL CODE** | **COUNTRY** |
|---|---|---|---|---|---|

| **7d. SEE INSTRUCTIONS** | **ADD'L DEBTOR INFO** | **7e. TYPE OF ORGANIZATION** | **7f. JURISDICTION OF ORGANIZATION** | **7g. ORGANIZATIONAL ID#, if any**<br>☐ NONE |
|---|---|---|---|---|

**8. AMENDMENT (COLLATERAL CHANGE):** check only one box.
Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

**9. NAME of SECURED PARTY of RECORD AUTHORIZING THIS AMENDMENT** (name of assignor, if this is an Assignment). If this is an Amendment authorized by Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this amendment.

| | | | | |
|---|---|---|---|---|
| OR | **a. ORGANIZATION'S NAME**<br>BANK LEUMI USA | | | |
| | **b. INDIVIDUAL'S LAST NAME** | **FIRST NAME** | **MIDDLE NAME** | **SUFFIX** |

**10. OPTIONAL FILER REFERENCE DATA**
CA-0-37444230-47271430

**FILING OFFICE COPY**

# UCC FINANCING STATEMENT AMENDMENT ADDITIONAL PARTY

**FOLLOW INSTRUCTIONS (front and back) CAREFULLY**

| | |
|---|---|
| **11. INITIAL FINANCING STATEMENT FILE #** (same as item 1a on Amendment form) | |
| 08-7168879347 | |

**12. NAME OF PARTY AUTHORIZING THIS AMENDMENT**(same as item 9 on Amendment form)

| | | | |
|---|---|---|---|
| | **12a. ORGANIZATION'S NAME** | | |
| | BANK LEUMI USA | | |
| OR | **12b. INDIVIDUAL'S LAST NAME** | **FIRST NAME** | **MIDDLE NAME, SUFFIX** |

**13 MISCELLANEOUS**

DOCUMENT NUMBER: 37060480002
IMAGE GENERATED ELECTRONICALLY FOR XML FILING
THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY

| **14. AUTHORIZING PARTIES (continued):** | | | |
|---|---|---|---|
| **14a. ORGANIZATION'S NAME** | | | |
| OR EAST WEST BANK | | | |
| **14b. INDIVIDUAL'S LAST NAME** | **FIRST NAME** | **MIDDLE NAME** | **SUFFIX** |

FILING OFFICE COPY

**UCC FINANCING STATEMENT AMENDMENT**

FOLLOW INSTRUCTIONS

| A. NAME & PHONE OF CONTACT AT FILER (optional) |
|---|
| Lien Solutions |
| 800-331-3282 |

| B. E-MAIL CONTACT AT FILER (optional) |
|---|

| C. SEND ACKNOWLEDGMENT TO: (Name and Address) |
|---|
| Lien Solutions |
| P.O. Box 29071 |
| Glendale, CA 91209-9071 |
| USA |

**DOCUMENT NUMBER: 68285510002**
**FILING NUMBER: 18-76361587**
**FILING DATE: 03/05/2018 12:26**

IMAGE GENERATED ELECTRONICALLY FOR XML FILING
THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE NUMBER | 1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Filer: Attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13 |
|---|---|
| 08-7168879347 | |

2. ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

3. ☐ **ASSIGNMENT** (full or partial): Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

4. ☑ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. ☐ **PARTY INFORMATION CHANGE:**

Check one of these two boxes:    **AND** Check one of these three boxes to:

This Change affects ☐ Debtor or ☐ Secured Party of record.   ☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c   ☐ ADD name: Complete item 7a or 7b, and item 7c   ☐ DELETE name: Give record name to be deleted in item 6a or 6b

6. CURRENT RECORD INFORMATION: Complete for Party Information Change - provide only one name (6a or 6b)

| OR | 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| | 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

7. CHANGED OR ADDED INFORMATION: Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| OR | 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| | 7b. INDIVIDUAL'S SURNAME | | | |
| | INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| | INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

8. ☐ **COLLATERAL CHANGE:** Also check one of these four boxes: ☐ ADD collateral  ☐ DELETE collateral  ☐ RESTATE covered collateral  ☐ ASSIGN collateral
Indicate collateral:

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT: Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)

If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| OR | a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| | EAST WEST BANK | | | |
| | b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

10. OPTIONAL FILER REFERENCE DATA:
CA-0-62936944-54763660

**FILING OFFICE COPY**

# UCC FINANCING STATEMENT AMENDMENT ADDENDUM

FOLLOW INSTRUCTIONS

| | |
|---|---|
| **19. INITIAL FINANCING STATEMENT FILE NUMBER:** Same as item 1a on Amendment form<br>08-7168879347 | |

**20. NAME OF PARTY AUTHORIZING THIS AMENDMENT:** Same as item 9 on Amendment form

| | | |
|---|---|---|
| OR | 20a. ORGANIZATION'S NAME<br>EAST WEST BANK | |
| | 20b. INDIVIDUAL'S SURNAME | |
| | FIRST PERSONAL NAME | |
| | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

**DOCUMENT NUMBER: 68285510002**

**IMAGE GENERATED ELECTRONICALLY FOR XML FILING**
**THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY**

**13.** Name of DEBTOR on related financing statement (Name of a current Debtor of record required for indexing purposes only in some filing offices - see instruction item 13 Provide only <u>one</u> Debtor name (13a or 13b)(use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); see instructions if name does not fit

| | | | | |
|---|---|---|---|---|
| OR | 12a. ORGANIZATION'S NAME | | | |
| | 12b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

**14. ADDITIONAL SPACE FOR ITEM 8** (Collateral);

Authorizing Parties (continued):

BANK LEUMI USA

| | |
|---|---|
| **15.** This FINANCING STATEMENT AMENDMENT:<br>[ ] covers timber to be cut    [ ] covers as-extracted collateral    [ ] is filed as a fixture filing | **17.** Description of real estate: |
| **16.** Name and address of RECORD OWNER of real estate described in item 17 (if Debtor does not have a record interest): | |

**18. MISCELLANEOUS:**

**FILING OFFICE COPY**

# UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
BABOK & ROBINSON, LLP
(310) 860-1280

**B. E-MAIL CONTACT AT FILER (optional)**

**C. SEND ACKNOWLEDGMENT TO: (Name and Address)**
COGENCY GLOBAL INC.
10 East 40th Street,
Tenth Floor
New York, NY 10016
USA

**DOCUMENT NUMBER: 87487910002**
**FILING NUMBER: 20-77702125**
**FILING DATE: 03/27/2020 15:06**

IMAGE GENERATED ELECTRONICALLY FOR XML FILING
THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY

**1a. INITIAL FINANCING STATEMENT FILE NUMBER**
08-7168879347

**1b.** ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Filer: Attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13

**2.** ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

**3.** ☑ **ASSIGNMENT (full or partial):** Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

**4.** ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

**5.** ☐ **PARTY INFORMATION CHANGE:**
Check one of these two boxes:          AND Check one of these three boxes to:
This Change affects ☐ Debtor or ☐ Secured Party of record.    ☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a and 7b and item 7c    ☐ ADD name: Complete item 7a or 7b, and item 7c    ☐ DELETE name: Give record name to be deleted in item 6a or 6b

**6. CURRENT RECORD INFORMATION:** Complete for Party Information Change - provide only one name (6a or 6b)

| | 6a. ORGANIZATION'S NAME | | | |
|OR| | | | |
| | 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

**7. CHANGED OR ADDED INFORMATION:** Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| | 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| | Access Road Capital LLC | | | |
| | 7b. INDIVIDUAL'S SURNAME | | | |
|OR| | | | |
| | INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| | INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 238 Cedar Avenue | Hewlett | NY | 11557 | USA |

**8.** ☐ **COLLATERAL CHANGE:** Also check one of these four boxes: ☐ ADD collateral ☐ DELETE collateral ☐ RESTATE covered collateral ☐ ASSIGN collateral
Indicate collateral:

**9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:** Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| | a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| | East West Bank | | | |
|OR| b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

**10. OPTIONAL FILER REFERENCE DATA:**
CA SOS; Debtor: RIVE GAUCHE TELEVISION (252-1)

**FILING OFFICE COPY**

# UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
Corporation Service Company
800-858-5294

**B. E-MAIL CONTACT AT FILER (optional)**

**C. SEND ACKNOWLEDGMENT TO: (Name and Address)**
CORPORATION SERVICE COMPANY
801 ADLAI STEVENSON DRIVE
Springfield, IL 62703-4261
USA

**DOCUMENT NUMBER:** 76018460002
**FILING NUMBER:** 19-7691843725
**FILING DATE:** 01/11/2019 17:20

IMAGE GENERATED ELECTRONICALLY FOR XML FILING
THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY

**1. DEBTOR'S NAME:** Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| Rive Gauche Televison | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |
| 15300 Ventura Blvd. Suite 507 | Sherman Oaks | CA / 91403 | USA |

**2. DEBTOR'S NAME:** Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |

**3. SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| BondIt LLC | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |
| 1639 11th St. #160 | Santa Monica | CA / 90404 | USA |

**4. COLLATERAL:** This financing statement covers the following collateral:
The Debtor hereby irrevocably and unconditionally pledges, assigns and grants to the Secured Party a priority security interest, second only to the East West Bank and Banc of California liens, in all of the Debtor's right, title and interest in, to and under all property, tangible and intangible, wherever located or situated and whether now owned, currently existing or hereafter acquired or created, including, but not limited to accounts, deposit accounts, receivables, proceeds, invoices, equipment, general intangibles, goodwill, inventory, investment property, letter of credit rights, negotiable collateral, intellectual property, insurance policies, cash, supporting obligations, Debtor's rights to its full library, any securities and all other personal property of the Debtors (collectively, the "Collateral"), as collateral security to secure the payment and performance in full of all the Obligations as outlined in the Promissory Note and the Security and Guaranty Agreement dated January 9th, 2019 between Aftershock Comics, LLC and Secured Party.

**5.** Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and instructions) ☐ being administered by a Decedent's Personal Representative

**6a.** Check only if applicable and check only one box:
☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

**6b.** Check only if applicable and check only one box:
☐ Agricultural Lien ☐ Non-UCC Filing

**7. ALTERNATIVE DESIGNATION (if applicable):** ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

**8. OPTIONAL FILER REFERENCE DATA:**
[157532876]

**FILING OFFICE COPY**

**UCC FINANCING STATEMENT AMENDMENT**

FOLLOW INSTRUCTIONS

| | |
|---|---|
| A. NAME & PHONE OF CONTACT AT FILER (optional)<br>Corporation Service Company<br>800-858-5294 | |
| B. E-MAIL CONTACT AT FILER (optional) | |
| C. SEND ACKNOWLEDGMENT TO: (Name and Address)<br>CORPORATION SERVICE COMPANY<br>801 ADLAI STEVENSON DRIVE<br>Springfield, IL 62703-4261<br>USA | **DOCUMENT NUMBER:** 87487280002<br>**FILING NUMBER:** 20-77702106<br>**FILING DATE:** 03/27/2020 14:57<br><br>IMAGE GENERATED ELECTRONICALLY FOR XML FILING<br>THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY |

| | |
|---|---|
| 1a. INITIAL FINANCING STATEMENT FILE NUMBER<br>19-7691843725 | 1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Filer: Attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13 |

2. ☑ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

3. ☐ **ASSIGNMENT** (full or partial): Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

4. ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. ☐ **PARTY INFORMATION CHANGE:**

Check one of these two boxes:    **AND** Check one of these three boxes to:

This Change affects ☐ Debtor or ☐ Secured Party of record.    ☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a and 7b and item 7c    ☐ ADD name: Complete item 7a or 7b, and item 7c    ☐ DELETE name: Give record name to be deleted in item 6a or 6b

| 6. CURRENT RECORD INFORMATION: Complete for Party Information Change - provide only one name (6a or 6b) | | | |
|---|---|---|---|
| OR | 6a. ORGANIZATION'S NAME | | |
| | 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

| 7. CHANGED OR ADDED INFORMATION: Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) | | | |
|---|---|---|---|
| OR | 7a. ORGANIZATION'S NAME | | |
| | 7b. INDIVIDUAL'S SURNAME | | |
| | INDIVIDUAL'S FIRST PERSONAL NAME | | |
| | INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

8. ☐ **COLLATERAL CHANGE:** Also check one of these four boxes: ☐ ADD collateral ☐ DELETE collateral ☐ RESTATE covered collateral ☐ ASSIGN collateral
Indicate collateral:

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT: Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| | a. ORGANIZATION'S NAME<br>Bondit LLC | | | |
|---|---|---|---|---|
| OR | b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

10. OPTIONAL FILER REFERENCE DATA:
Debtor:Rive Gauche Televison [179600453]

**FILING OFFICE COPY**

# UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

| A. NAME & PHONE OF CONTACT AT FILER (optional) |
|---|
| Corporation Service Company |
| 800-858-5294 |

| B. E-MAIL CONTACT AT FILER (optional) |
|---|

| C. SEND ACKNOWLEDGMENT TO: (Name and Address) |
|---|
| CORPORATION SERVICE COMPANY |
| 801 ADLAI STEVENSON DRIVE |
| Springfield, IL 62703-4261 |
| USA |

**DOCUMENT NUMBER:** 85781740002
**FILING NUMBER:** 20-7760315738
**FILING DATE:** 01/31/2020 11:39

IMAGE GENERATED ELECTRONICALLY FOR XML FILING
THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY

**1. DEBTOR'S NAME:** Provide only <u>one</u> Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| | 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | Aftershock Comics, LLC | | | |
| | 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 15300 Ventura Blvd. Suite 507 | Sherman Oaks | CA | 91403 | USA |

**2. DEBTOR'S NAME:** Provide only <u>one</u> Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| | 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | Rive Gauche Television | | | |
| | 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 15300 Ventura Blvd. Suite 507 | Sherman Oaks | CA | 91403 | USA |

**3. SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only <u>one</u> Secured Party name (3a or 3b)

| | 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | BondIt LLC | | | |
| | 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 1639 11th St. #160 | Santa Monica | CA | 90404 | USA |

**4. COLLATERAL:** This financing statement covers the following collateral:

The Debtor hereby irrevocably and unconditionally pledge, assign and grant to the Lender a perfected first priority security interest, (with the exception of the Permitted Lien associated with Rive Gauche Television, in which Lender agrees to subordinate to second position behind East West Bank's first position lien), in all of the Debtor's right, title and interest in, to and under all property, tangible and intangible, wherever located or situated and whether now owned, currently existing or hereafter acquired or created, including, but not limited to accounts, deposit accounts, receivables, current and future proceeds, equipment, general intangibles, goodwill, inventory, investment property, letter of credit rights, negotiable collateral, intellectual property, insurance policies, cash, supporting obligations, Debtor's rights to its full library of titles, all pledged receivable and funds from EIS fundraising activities, any securities and all other personal property of the Debtors (collectively, the "Collateral"), as collateral security to secure the payment and performance in full of all the Obligations. This Collateral includes, but is not limited by, the following: 100%

**5.** Check <u>only</u> if applicable and check <u>only</u> one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and instructions) ☐ being administered by a Decedent's Personal Representative

| 6a. Check <u>only</u> if applicable and check <u>only</u> one box: | 6b. Check <u>only</u> if applicable and check <u>only</u> one box: |
|---|---|
| ☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility | ☐ Agricultural Lien ☐ Non-UCC Filing |

**7. ALTERNATIVE DESIGNATION** (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

**8. OPTIONAL FILER REFERENCE DATA:**
[176739933]

**FILING OFFICE COPY**

# UCC FINANCING STATEMENT ADDENDUM
FOLLOW INSTRUCTIONS

**9. NAME OF FIRST DEBTOR:** Same as line 1a or 1b on Financing Statement; if line 1b was left blank because individual Debtor name did not fit, check here ☐

**9a. ORGANIZATION'S NAME**
Aftershock Comics, LLC

OR

**9b. INDIVIDUAL'S SURNAME**

**FIRST PERSONAL NAME**

**ADDITIONAL NAME(S)/INITIAL(S)**     **SUFFIX**

**DOCUMENT NUMBER: 85781740002**

IMAGE GENERATED ELECTRONICALLY FOR XML FILING
THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY

**10. DEBTOR'S NAME:** Provide (10a or 10b) only <u>one</u> additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

**10a. ORGANIZATION'S NAME**

**10b. INDIVIDUAL'S SURNAME**

OR

**INDIVIDUAL'S FIRST PERSONAL NAME**

**INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S)**     **SUFFIX**

| 10c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

**11.** ☐ **ADDITIONAL SECURED PARTY'S NAME** <u>or</u> ☐ **ASSIGNOR SECURED PARTY'S NAME:** Provide only <u>one</u> name (11a or 11b)

**11a. ORGANIZATION'S NAME**

OR

| 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

**12. ADDITIONAL SPACE FOR ITEM 4 (collateral):**
irrevocable assignment of all current and future receivables and proceeds, as collateral security to secure the payment and performance in full of all the obligations of the Debtor until the Lender is repaid the Loan and Interest amounts in full. Lender acknowledges and agrees that the security interest to be granted to Secured Party by Rive Gauche Television is subject to the consent of its primary lender and the execution of all documentation, including, without limitation, a subordination agreement and intercreditor agreement, required by such lender.

**13.** ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS (if applicable)

**14.** This FINANCING STATEMENT:
☐ covers timber to be cut    ☐ covers as-extracted collateral    ☐ is filed as a fixture filing.

**15.** Name and address of RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest):

**16.** Description of real estate:

**17. MISCELLANEOUS:**

**FILING OFFICE COPY**

**UCC FINANCING STATEMENT AMENDMENT**

FOLLOW INSTRUCTIONS

| | |
|---|---|
| **A. NAME & PHONE OF CONTACT AT FILER (optional)**<br>Corporation Service Company<br>800-858-5294 | |
| **B. E-MAIL CONTACT AT FILER (optional)** | |
| **C. SEND ACKNOWLEDGMENT TO: (Name and Address)**<br>CORPORATION SERVICE COMPANY<br>801 ADLAI STEVENSON DRIVE<br>Springfield, IL 62703-4261<br>USA | **DOCUMENT NUMBER: 87487980002**<br>**FILING NUMBER: 20-77702131**<br>**FILING DATE: 03/27/2020 15:16**<br><br>IMAGE GENERATED ELECTRONICALLY FOR XML FILING<br>THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY |

**1a. INITIAL FINANCING STATEMENT FILE NUMBER**
20-7760315738

**1b.** ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Filer: <u>Attach</u> Amendment Addendum (Form UCC3Ad) <u>and</u> provide Debtor's name in item 13

**2.** ☑ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

**3.** ☐ **ASSIGNMENT (full or partial):** Provide name of Assignee in item 7a or 7b, <u>and</u> address of Assignee in item 7c <u>and</u> name of Assignor in item 9
For partial assignment, complete items 7 and 9 <u>and</u> also indicate affected collateral in item 8

**4.** ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

**5.** ☐ **PARTY INFORMATION CHANGE:**

Check <u>one</u> of these two boxes: **AND** Check <u>one</u> of these three boxes to:

This Change affects ☐ Debtor <u>or</u> ☐ Secured Party of record.
☐ CHANGE name and/or address: Complete item 6a or 6b; <u>and</u> item 7a and 7b <u>and</u> item 7c
☐ ADD name: Complete item 7a or 7b, <u>and</u> item 7c
☐ DELETE name: Give record name to be deleted in item 6a or 6b

**6. CURRENT RECORD INFORMATION:** Complete for Party Information Change - provide only <u>one</u> name (6a or 6b)

| OR | **6a. ORGANIZATION'S NAME** | | | |
|---|---|---|---|---|
| | **6b. INDIVIDUAL'S SURNAME** | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

**7. CHANGED OR ADDED INFORMATION:** Complete for Assignment or Party Information Change - provide only <u>one</u> name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| OR | **7a. ORGANIZATION'S NAME** | | | |
|---|---|---|---|---|
| | **7b. INDIVIDUAL'S SURNAME** | | | |
| | **INDIVIDUAL'S FIRST PERSONAL NAME** | | | |
| | **INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S)** | | | SUFFIX |

| **7c. MAILING ADDRESS** | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

**8.** ☐ **COLLATERAL CHANGE:** <u>Also</u> check <u>one</u> of these four boxes: ☐ ADD collateral ☐ DELETE collateral ☐ RESTATE covered collateral ☐ ASSIGN collateral
Indicate collateral:

**9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:** Provide only <u>one</u> name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| OR | **a. ORGANIZATION'S NAME**<br>Bondit LLC | | | |
|---|---|---|---|---|
| | **b. INDIVIDUAL'S SURNAME** | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

**10. OPTIONAL FILER REFERENCE DATA:**
Debtor:Rive Gauche Television [179600026]

**FILING OFFICE COPY**

# UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
Corporation Service Company
800-858-5294

**B. E-MAIL CONTACT AT FILER (optional)**

**C. SEND ACKNOWLEDGMENT TO: (Name and Address)**
CORPORATION SERVICE COMPANY
801 ADLAI STEVENSON DRIVE
Springfield, IL 62703-4261
USA

**DOCUMENT NUMBER: 87487990002**
**FILING NUMBER: 20-77702132**
**FILING DATE: 03/27/2020 15:16**

IMAGE GENERATED ELECTRONICALLY FOR XML FILING
THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY

**1a. INITIAL FINANCING STATEMENT FILE NUMBER**
20-7760315738

**1b.** ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Filer: Attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13

**2.** ☑ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

**3.** ☐ **ASSIGNMENT (full or partial):** Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

**4.** ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

**5.** ☐ **PARTY INFORMATION CHANGE:**

Check one of these two boxes:      **AND** Check one of these three boxes to:

This Change affects ☐ Debtor or ☐ Secured Party of record.      ☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a and 7b and item 7c      ☐ ADD name: Complete item 7a or 7b, and item 7c      ☐ DELETE name: Give record name to be deleted in item 6a or 6b

**6. CURRENT RECORD INFORMATION:** Complete for Party Information Change - provide only one name (6a or 6b)

| | 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

**7. CHANGED OR ADDED INFORMATION:** Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| | 7a. ORGANIZATION'S NAME | | |
|---|---|---|---|
| OR | 7b. INDIVIDUAL'S SURNAME | | |
| | INDIVIDUAL'S FIRST PERSONAL NAME | | |
| | INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

**8.** ☐ **COLLATERAL CHANGE:** Also check one of these four boxes: ☐ ADD collateral  ☐ DELETE collateral  ☐ RESTATE covered collateral  ☐ ASSIGN collateral
Indicate collateral:

**9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:** Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| | a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | BondIt LLC | | | |
| | b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

**10. OPTIONAL FILER REFERENCE DATA:**
Debtor:Aftershock Comics, LLC [179599767]

**FILING OFFICE COPY**

# UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)

Lien Solutions
800-331-3282

B. E-MAIL CONTACT AT FILER (optional)

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

Lien Solutions
P.O. Box 29071
Glendale, CA 91209-9071
USA

**DOCUMENT NUMBER: 90505590002**
**FILING NUMBER: 20-7791405651**
**FILING DATE: 06/16/2020 11:41**

IMAGE GENERATED ELECTRONICALLY FOR XML FILING
THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| RIVE GAUCHE TELEVISION | | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 15300 VENTURA BLVD, STE 507 | SHERMAN OAKS | CA | 91403 | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| | | | | |
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Citibank, N.A., its branches, subsidiaries and affiliates | | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 388 Greenwich Street, 10th Floor | New York | NY | 10013 | USA |

4. COLLATERAL: This financing statement covers the following collateral:

All right, title and interest of RIVE GAUCHE TELEVISION ("Debtor") in and to all accounts receivable and other forms of payment obligations and related rights owing to Debtor by DISCOVERY INC. and its subsidiaries and affiliates (and any successor entity thereto, whether by operation of law, name change, merger or otherwise), that are purchased from time to time by Secured Party under that certain "Supplier Agreement" (or other form of purchase agreement) between Debtor and Secured Party, as amended, supplemented or otherwise modified from time to time, whether in the form of accounts, chattel paper, general intangibles, payment intangibles, instruments or otherwise, and all collections thereon and proceeds thereof, and whether now existing or hereafter created.

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
CA-0-75503223-59280593

**FILING OFFICE COPY**

# EXHIBIT "5"

**Focus Advisory Services, LLC**

Telephone    323-785-3005                                    www.focusadvisoryservices.com

---

### Disclaimer

The valuation of companies, businesses, and assets is not a precise discipline and the
conclusions arrived at will of necessity be subjective and dependent on the exercise of
individual judgment. Therefore, there is no indisputable single value.

The actual market price achieved may be higher or lower than the Company's estimate of
value depending upon the circumstances of a given transaction (for example the
competitive bidding environment), the nature of the business assets (for example, the
purchaser's perception of potential synergies), the knowledge, negotiating ability and
motivation of the buyers and sellers and the applicability of a discount or premium for
control will also affect any  actual market price achieved. Accordingly, RGTV's
valuation will not necessarily be the price at which any agreement results. The final
transaction price is something on which parties themselves have to agree. We also
emphasize that our opinion is not unique and not the only factor impacting upon any
given transaction**.**

## 1.  Executive Summary

Rive Gauche Television ("RGTV" or the "Company") engaged Focus Advisory Services
LLC ("FAS") to evaluate the assumptions and methodologies it used in creating a
valuation of its library of TV episodes.  FAS reviewed key data, provided feedback to the
Company which it incorporated in a valuation (the "Valuation") of $56 million, an
appraisal amount to which FAS concurs.

## 2.  Overview

RGTV is a leading co-producer and distributor of television programming around the
world. The Company was founded in 1994 and has acquired a library of over 166 titles,
representing over 2,200 episodes and 1,700 hours of non-scripted television and
documentary programming (the "Library"). Well known series in the Library include
*Dog Whisperer with Cesar Milan (*which has aired for 9 seasons), *Homicide Hunter (8
seasons), My Strange Addiction* (6 seasons), *Ice Cold Killers* (5 seasons) and *Sins and
Secrets* (4 seasons). The television genres in the library include true crime, reality,
animal/wildlife and documentary.

RGTV generates revenue by selling distribution rights to the television series that the
Company has acquired to broadcast networks in territories around the world. When
RGTV sells distribution rights in a territory, it earns a sales fee in the range of 25-30%
and recoups any advances paid to the producers/licensors of the series, as well as
marketing costs it advanced. In other words, its net revenue (the revenue retained by the
Company) from its sales activity ranges from 25% to 100%.

---

**Focus Advisory Services, LLC**

Telephone    323-785-3005                              www.focusadvisoryservices.com

---

RGTV's Valuation estimates future territory sales (advances or MG's) by title for its top 23 titles (the "top titles") and a projection of MGs for the remaining "catalog" titles in the aggregate, in addition to AVOD (advertising video on demand) revenue. The top 23 titles have comprised 80% of RGTV's net revenue over the past four years. The Valuation also includes accounts receivables for sales that have already been contracted and where revenue is anticipated to be collected over the next two years. Eight of the titles have been released in the past two years and are still in their first cycle. The projections in the Valuation occur over the next eleven years (the "Projection Period").

Active titles in the Library have generated $102 million in revenue since inception, and $19.4 million in sales over the past five years. The $19.4 million in sales have resulted in net revenue for the Company of $12.1 million. Projected sales over the next ten years equal $305 million, resulting in net revenue to the Company of $91.8 million.  Future revenue is projected to consist of around 6% from the resale of territory rights and roughly 94% from AVOD.

### 3. Territory Sales – Top 23 Titles

RGTV's Valuation includes sales projections by title and by territory for the top titles. When distribution rights are sold, they are typically sold for a 3-year term or "cycle". As the rights for previously sold territories expire, the Company can resell those rights to the same or a different outlet. As previously stated, RGTV retains a sales fee of 25%-30% when rights are resold. It is typical in library valuations to project future sales as a percentage of prior sales to maintain consistency in the estimating process. Based on FAS experience, the resale of distribution rights typically ranges from 35% - 65% of prior sales.  In many instances, resales fall out of these ranges.

The Valuation includes projected sale amounts by title and by territory for each of the top titles for the next two to three cycles (over the Projection Period), taking into account the expiration of its current sale contracts. The Company's projections assume that the resale of rights for the majority of the titles range from 20% - 100% of the previous cycle.

FAS reviewed the Valuation Excel model and asked the Company's management numerous questions regarding its assumptions and methodologies for the resales of the top titles. FAS reviewed the Company's historical sales by title and territory for top titles and RGTV's projected future sales. Overall, FAS reviewed the Company's projections and found them to be reasonable. FAS found that the resale of rights by title fell within the typical range, on average. For titles with resales at the higher end of the range, RGTV management indicated that first cycle projections were conservative or first cycle actual sales were on the low end, then subsequent cycles were projected to remain at the first cycle level. Although certain sales were greater than the typical range, in the aggregate, the projection for the resale of territory rights is 60% of historical sales. In addition, sales were consistent from one season to the next for titles with multiple seasons.

---

**Focus Advisory Services, LLC**

Telephone    323-785-3005                                      www.focusadvisoryservices.com

To be conservative, FAS typically assumes that the revenue from the resale of rights is collected equally over three years from the date the current contract expires. This assumption across a library of titles means that it takes the Company three years to sell all of its available rights. The Valuation assumes that 100% of a resale is collected in the year in which the existing contract expires. The Company's management believes based on its past experience that it can achieve this threshold. Given that the resale of rights is a relatively low proportion of expected future revenue, changing the revenue earned from one year to three years will not have a material impact on the Valuation. In addition, FAS did not review a selection of territory distribution contracts to confirm the information in the Valuation regarding the expiration of these contracts in a given territory. The Valuation could change if the dates in the acquisition agreements differ from the dates in the Valuation model.

RGTV acquires the right to distribute a given TV series for a discrete period of time.  In the Valuation model, at the point in time when a contract with one of its licensors expires, then no further income is assumed to be earned for this title. FAS did not review the acquisition agreements to confirm when RGTV's rights in a series revert back to the licensor. The Valuation could change if the dates in the acquisition agreements differ from the dates in the Valuation model.

### 4.  Catalog Revenue

RGTV's Valuation includes a projection of revenue of the remaining catalog titles not included in the top 23 titles. The projections assume remaining titles generate annual net revenue of $42k per year over the next ten years.

In evaluating these estimates FAS looked at two parameters – the proportion of catalog vs top titles which was 20/80 historically and was in this range in the Valuation; and the proportion of projected revenue vs historical revenue which was a low 16% for these titles. Overall, FAS believes the estimates for this group of catalog titles are reasonable.

### 5.  AVOD Revenue

AVOD is an emerging distribution platform with the recent launch of several new streaming services such as Tubi, Roku, Amazon and Pluto TV, and the historical success of Hulu. With AVOD distribution, consumers watch content online that includes advertising (typically 4 – 5 commercials per hour of content) in contrast to SVOD where consumers pay a subscription fee for content without ads. Recent evidence of growth of the AVOD market includes total time spent on AVOD platforms increasing 200% from May 2020 to May 2021 according to industry analysts, and a survey of television consumers indicating that 58% of them used an AVOD platform over that time period compared to 34% the previous year. Worldwide AVOD spending is projected to reach $66 billion by 2026, an average annual increase of 15.8% from 2021.

**Focus Advisory Services, LLC**

Telephone    323-785-3005                                    www.focusadvisoryservices.com

---

Under AVOD distribution, the Company earns a share of the advertising revenue for each consumer which views one of their television series on one the aforementioned distribution platforms.

The Company has content featured on one of the largest platforms in the AVOD market, Pluto TV. The company will launch on Samsung's TV streaming service in May 2022. Pluto TV generated a monthly user growth of 80% globally and 34% in the US, reaching 54 million consumers worldwide. Samsung's TV streaming service, launched in 2015, offers users access to 140 channels and is installed on 200 million mobile devices worldwide.

The Company launched on Pluto TV's AVOD platform in the third quarter of 2021. As of January 2022, the company has four channels in the UK, three channels in Spain and three channels in Latin America. The Company is projected to launch an additional 15 channels, over four platforms (Pluto TV, Roku, Tubi, and Samsung), in 12 territories.

Views from the Company's launch on the various AVOD platforms grew from 8 million in September 2021 to 272 million in January 2022. Per Pluto TV's management, the Company earns $.00375 per view on the UK and Sweden versions of the platform and $.00125 per view on the Spain and Latin America versions of the platform. Based on the January views the Company estimates that episodes of its series earn between $35 - $893 per hour of programming, based on the number of January viewing minutes and the number of hours available for a given series. Hours of programming are projected to equal 7,081 across the 25 aforementioned channels in 2022 and reach 8,102 by 2026.

The per hour revenue projections for Pluto UK and the channels launched in 2021 are based on viewership data from January 2022. Subsequent genre channels (e.g., Pluto UK Crime) or territory channels (Pluto TV Canada) are projected to range from 16% to 75% of the projections estimated for Pluto UK. In some instances, certain series are projected to perform better or worse in a given territory (e.g., *Buying the Bayou* on Pluto Canada is projected to earn a revenue per hour rate 2x that of Pluto UK) based on the assumed level of interest in the subject matter in that territory and the Company's experience with the performance of its shows on traditional linear television in territories around the world.

FAS believes that these assumptions are reasonable as the number of programming hours assumed per year is assumed to be roughly 60% to 70% of RGTV's total hours of programming in any given year. In addition, after the increase in revenue in 2022 driven by the initial ramp up in the number of channels launched (an increase in revenue of 170%), revenue increases an average of 13% per year over the next six years, which is consistent with the projected growth of the overall AVOD market. Thereafter, revenue begins to decline coinciding with the expiration of the Company's distribution rights.

FAS was unable to confirm the revenue per hour of programming assumption that the Company was provided by Pluto TV. RGTV's management is confident that the volume and the high-quality of their crime catalog and evergreen brands (like the *Homicide*

---

**Focus Advisory Services, LLC**

Telephone    323-785-3005                                www.focusadvisoryservices.com

---

*Hunter* and the *Dog Whisperer*) will remain relevant and always be in demand. While these prices may be representative currently of what the Company could obtain from AVOD exploitation on other platforms, there is a risk that as the marketplace becomes more active and either the supply of product is greater than expected or demand for this type of exploitation by consumers is less, then prices could soften and decrease, rather than the annual increases included in the Valuation.

### 6.  Net Revenue

FAS did not review any underlying contracts or accounting statements between RGTV and the licensors of the television series, and assume that underlying assumptions relating to the Company's contractual terms with licensors for acquired titles were modeled correctly in the valuation. These terms include the fee RGTV earns, length of time the Company is allowed to exploit the titles, and recoupment status of the advance.

Each of the top titles has a different proportion of net revenue to gross sales depending on the contractual fee and the status of the recoupment of its advance.  In addition, an individual title may have a changing proportion from one year to the next if the advance is recouped and subsequently the Company is only earning a fee (e.g., net revenue goes from 100% of sales to 30%).  The net revenue in the projections is approximately 30% of sales in the aggregate meaning that it is assumed (conservatively) that the advances have been recouped and RGTV is retaining only its fee.

The Company's net revenue is projected to equal 28% of ad revenue generated for AVOD exploitation, which is at the higher end of the sales fee range compared to resale of foreign territories.

### 7.  Valuation Methodology

When valuing an asset, several approaches are considered, including (1) the Income Approach; (2) the Market Approach; (3) the Cost Approach. The Income Approach indicates the Fair Market Value (defined as the price at which property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of relevant facts) of an asset based on the value of the cash flows that the asset can be expected to generate in the future. The Market Approach indicates the Fair Market Value of an asset based on a comparison of the company or asset to comparable assets and transactions in its industry as well as actual transactions and on asking prices for assets currently available for sale. Due to the lack of available information on similar (usually private) transactions, the Market Approach would not be appropriate to value RGTV's Library.  The Cost Approach is a technique that uses the concept of replacement cost as an indicator of Fair Market Value of an asset.  Given the unique nature of the Company's revenue sources, the Cost Approach has limited relevance for valuing the Library.

RGTV calculated the value of the Library consistent with the Income Approach. Under the Income Approach, cash flows are discounted at a rate of return that considers the

**Focus Advisory Services, LLC**

Telephone    323-785-3005                                    www.focusadvisoryservices.com

---

relative risk of achieving the cash flows and the time value of money (the "discount rate"). FAS concurs with this valuation methodology.

### 8. Discount Rate

The Company discounted its projected cash flow at a rate of 10%.

Typically, to estimate the appropriate discount rate to apply to projected cash flows for an asset, the weighted average cost of capital ("WACC") is estimated. The WACC is an overall rate based upon the individual rates of return for invested capital (equity and interest-bearing debt) and is calculated by weighting the required returns on interest-bearing debt and common equity capital in proportion to their estimated percentages in an expected capital structure.

FAS calculated the WACC as of the date of this report to be 7.9% so the 10% used is actually a more conservative assumption.

### 9. Conclusion

AVOD revenue, a relatively new distribution channel for the Company accounts for 92% of the Valuation but is a natural evolution in the TV landscape and RGTV's library is an excellent fit for the type of product that works well in AVOD and maintains its value. If the growth rates or revenue projections are conservative, the valuation could increase. Conversely, there is a risk that current pricing for unscripted product is not sustainable going forward which would adversely affect the Valuation. In addition, it is assumed that between 60-90% of the Company's programming is exploited on AVOD. If this assumption falls short, the Valuation could decrease..

The valuation of companies, businesses, and assets is not a precise discipline and the conclusions arrived at will of necessity be subjective and dependent on the exercise of individual judgment. Therefore, there is no indisputable single value.

The actual market price achieved may be higher or lower than the Company's estimate of value depending upon the circumstances of a given transaction (for example the competitive bidding environment), the nature of the business assets (for example, the purchaser's perception of potential synergies), the knowledge, negotiating ability and motivation of the buyers and sellers and the applicability of a discount or premium for control will also affect any actual market price achieved. Accordingly, RGTV's valuation will not necessarily be the price at which any agreement results. The final transaction price is something on which parties themselves have to agree. We also emphasize that our opinion is not unique and not the only factor impacting upon any given transaction**.**

---

**Focus Advisory Services, LLC**
Telephone   323-785-3005

www.focusadvisoryservices.com

FAS considers the Company's valuation of the Library to be both reasonable and defensible based on the information available to us.

_____

Focus Advisory Services by its Managing Member, Philip Fier

2/4/22
_____

Date

EXHIBIT "6"

**Employees paid through ADP**

| Name | RGTV or ASC | Full or Part time | Hourly or Salary (H,S) | Rate per hour if hourly | Semi-monthly | Gross Pay per payroll period | Tax Withheld | Deductions (401K Cal Savers or medical) | Net Paid (before medical reimbursements) | Employer Liability (taxes) | Insurance Reimbursement paid through ADP per payroll period | Total expense per payroll period (Semi-Monthly) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Alexis Bradley | ASC | Full | Salary | | Semi-monthly | $ 1,750.00 | $ 329.67 | $ 87.50 | $ 1,332.83 | $ 133.88 | $ 200.00 | $ 2,083.88 |
| Ryan Carroll | ASC | Full | Salary | | Semi-monthly | $ 3,125.00 | $ 797.78 | $ 31.25 | $ 2,295.97 | $ 239.06 | $ 200.00 | $ 3,564.06 |
| Brian Cunningham | ASC | Full | Salary | | Semi-monthly | $ 4,166.67 | $ 1,050.96 | $ - | $ 3,115.71 | $ 385.42 | $ 400.00 | $ 4,952.09 |
| Kelly Diodati | ASC | Full | Salary | | Semi-monthly | $ 3,750.00 | $ 1,012.77 | $ - | $ 2,737.23 | $ 286.88 | $ - | $ 4,036.88 |
| Marc Hammond | ASC | Full | Salary | | Semi-monthly | $ 2,083.33 | $ 441.68 | $ - | $ 1,641.65 | $ 159.38 | $ 200.00 | $ 2,442.71 |
| Katherine Jamison | ASC | Full | Salary | | Semi-monthly | $ 2,083.33 | $ 504.01 | $ - | $ 1,579.32 | $ 159.38 | $ 103.76 | $ 2,346.47 |
| Teodoro Leo | ASC | Full | Salary | | Semi-monthly | $ 1,583.33 | $ 237.82 | $ - | $ 1,345.51 | $ 121.13 | $ - | $ 1,704.46 |
| Lisa Moody | ASC | Full | Hourly | 35/hr | Semi-monthly | $ 2,800.00 | $ 682.33 | $ - | $ 2,117.67 | $ 261.02 | $ 179.33 | $ 3,240.35 |
| Sarah Pruett | ASC | Part | Hourly | 15/hr | Semi-monthly | $ 1,200.00 | $ 211.37 | $ - | $ 988.63 | $ 91.80 | $ - | $ 1,291.80 |
| Madelyn Starr | ASC | Full | Salary | | Semi-monthly | $ 2,000.00 | $ 403.96 | $ - | $ 1,596.04 | $ 153.00 | $ 172.80 | $ 2,325.80 |
| Gillian Williams | ASC | Part | Hourly | 15/hr | Semi-monthly | $ 1,200.00 | $ 211.37 | $ - | $ 988.63 | $ 91.80 | $ - | $ 1,291.80 |
| Michael (Max) Zupanovic | ASC | Full | Salary | | Semi-monthly | $ 3,000.00 | $ 764.29 | $ 150.00 | $ 2,085.71 | $ 229.50 | $ 162.71 | $ 3,392.21 |
| Laurie Carreira | RGTV | Full | Salary | | Semi-monthly | $ 3,100.00 | $ 844.68 | $ 47.12 | $ 2,208.20 | $ 237.15 | $ - | $ 3,337.15 |
| Marine Ksadzhikyan | RGTV | Full | Salary | | Semi-monthly | $ 6,770.83 | $ 1,995.00 | $ - | $ 4,775.83 | $ 517.97 | $ 200.00 | $ 7,488.80 |
| Antonia Lianos | RGTV | Full | Hourly | 46/hr | Semi-monthly | $ 3,680.00 | $ 730.07 | $ - | $ 2,949.93 | $ 281.52 | $ - | $ 3,961.52 |
| | | | | | | $ 42,292.49 | $ 10,217.76 | $ 315.87 | $ 31,758.86 | $ 3,348.89 | $ 1,818.59 | $ 47,459.97 |

**Contracted Employees - Paid in US Dollars**

| Name | RGTV or ASC | Full or Part time | Monthly or Semi-monthly | Total Paid per payroll period | Taxes withheld | Insurance Reimbursement/pay period | Total Expense per MONTH | Total paid per payroll period |
|---|---|---|---|---|---|---|---|---|
| Anne Randulic | ASC | Full | Semi-monthly | $ 2,416.67 | $ - | $ - | 4,833.34 | $ 2,416.67 |
| Charles Pritchett - Production & Design Manager | ASC | Full | Semi-monthly | $ 2,000.00 | $ - | $ - | 4,000.00 | $ 2,000.00 |
| Steve Rotterdam | ASC | Full | Semi-monthly | $ 5,625.00 | $ - | $ 200.00 | 11,450.00 | $ 5,625.00 |
| Atom Freeman | ASC | Full | Monthly | $ 4,800.00 | $ - | $ - | 4,800.00 | $ 4,800.00 |
| David Sigurani | ASC | Part Time | Monthly | $ 6,500.00 | $ - | $ - | 6,500.00 | $ 6,500.00 |
| | | | | | | | $31,583.34 | $ 21,341.67 |

**Employees Paid in Foreign Currency:**

| Name | RGTV or ASC | Full or Part time | Hourly or Salary (H,S) | Rate per hour if hourly | Monthly or semi-monthly | Foreign currency rate | Estimated US $ amount/month | Last exchange rate | Total paid per payroll period |
|---|---|---|---|---|---|---|---|---|---|
| Jeff Ford | ASC | Part Time | Hourly | 125 GBP/hr | Monthly | Approx. GBP 2400/month | $3,000.00 | last exchange rate approx 1.17 | $ 3,000.00 |
| Dan Shires | ASC | Full | salary | n/a | Monthly | GBP 7583/month plus GBP 255 expenses/month | $10,000.00 | last exchange rate approx 1.17 | $ 10,000.00 |
| Justina Hemperek | RGTV | Full | salary | n/a | Semi-monthly | 4583.33 Euros/p | $12,400.00 | exchange rate approx 1.35 | $ 6,200.00 |
| | | | | | | | $25,400.00 | | $19,200.00 |

**Approximate Aggregate Amount Owed Per Payroll Period:**   $   88,001.64

# EXHIBIT "7"

**Aftershock - $50 per visit, $20 per call/Zoom or phone call + $50 Slack Bonus/$100 Event**

| Ambassadors | Average monthly cost |
|---|---|
| Adrian Pratt | 166.67 |
| Alex Pruett | 433.33 |
| Charles Burgio | 216.67 |
| Cody Joy | 341.67 |
| Dorothy LeAnn Sukman | 350 |
| Daniel Lopez | 260 |
| David Harris | 350 |
| Edward Catto | 516.67 |
| Eric O'Connor | 300 |
| Grant DeArmitt | 300 |
| Grant Woodard | 400 |
| Howard Steven Lowe | 250 |
| Jack Maraglia | 416.67 |
| Jacob Cannon | 335 |
| James Gonyea | 298.33 |
| Jeff Spry | 301.67 |
| Joe Crohn | 425 |
| Joshua Strausbaugh | 253.33 |
| Joshua Waldrop | 1000 |
| Juan Navarro | 133.33 |
| Justin Macugo | 450 |
| Justin Smith | 408.33 |
| Kevin Miller | 350 |
| Kevin Wayne Smith | 316.67 |
| Korey Bell | 466.67 |
| Manuel Mendiola | 283.33 |
| Matthew Alward | 450 |
| Matthew Sabatino | 458.33 |
| Michael J. Clarke | 375 |
| Michael Leonor | 466.67 |
| Michael Lightell | 200 |
| Mitchell S. Gurowitz | 916.67 |
| Nate Townsend | 600 |
| Peter Marsh | 275 |
| Rae Hancock | 408.33 |
| Rudy Vela | 191.67 |
| Russell Singer | 391.67 |
| Slade Germain | 233.33 |
| Tom Novak | 308.33 |
| Trinity Peck | 458.33 |
|  |  |
| Approx. Monthly Total: | $15,056.67 |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:  2818 La Cienega Avenue, Los Angeles, CA 90034

A true and correct copy of the foregoing document entitled (*specify*): DECLARATION OF JONATHAN KRAMER IN SUPPORT OF DEBTORS' EMERGENCY "FIRST DAY" MOTIONS will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On ***December 21, 2022*** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On ***December 21, 2022,*** I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on ***December 21, 2022,*** I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

| | |
|---|---|
| **Honorable Martin Barash**<br>United States Bankruptcy Court<br>Central District of California<br>21041 Burbank Boulevard, Suite 342 / Courtroom 303<br>Woodland Hills, CA 91367 | |

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| ***December 21, 2022*** | ***Jason Klassi*** | /s/ Jason Klassi |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                             **F 9013-3.1.PROOF.SERVICE**

**1:22-bk-11456-MB Notice will be electronically mailed to:**

Russell Clementson on behalf of U.S. Trustee United States Trustee (SV)
russell.clementson@usdoj.gov

Jeffrey S Kwong on behalf of Debtor AfterShock Comics, LLC
jsk@lnbyg.com, jsk@ecf.inforuptcy.com

David L. Neale on behalf of Debtor AfterShock Comics, LLC
dln@lnbyg.com

United States Trustee (SV)
ustpregion16.wh.ecf@usdoj.gov