DAVID L. NEALE (SBN 141225)
JEFFREY S. KWONG (SBN 288239)
LEVENE, NEALE, BENDER, YOO & Golubchik L.L.P.
2818 La Cienega Avenue
Los Angeles, California 90034
Telephone:  (310) 229-1234; Facsimile:  (310) 229-1244
Email: dln@lnbyg.com; jsk@lnbyg.com

Attorneys for Chapter 11 Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SAN FERNANDO VALLEY DIVISION**

| | |
|---|---|
| In re:<br><br>AFTERSHOCK COMICS, LLC, a California limited liability company,<br><br>   Debtor and Debtor in Possession.<br><br>In re:<br><br>RIVE GAUCHE TELEVISION, a California corporation,<br><br>   Debtor and Debtor in Possession.<br><br>☒ Affects both Debtors<br>☐ Affects AfterShock Comics, LLC only<br>☐ Affects Rive Gauche Television only | ) <br> ) <br> ) <br> ) Lead Case No.: 1:22-bk-11456-MB <br> ) <br> ) Jointly administered with: <br> ) 1:22-bk-11457-MB <br> ) (Rive Gauche Television). <br> ) Chapter 11 Cases <br> ) <br> ) **DEBTORS' EMERGENCY MOTION FOR ENTRY OF AN ORDER ENFORCING THE "ORDER GRANTING STIPULATION AMONG DEBTORS, OFFICIAL COMMITTEES OF UNSECURED CREDITORS AND ACCESS ROAD CAPITAL, LLC REGARDING SETTLEMENT WITH ACCESS ROAD AND DEBTORS' CONTINUED USE OF CASH COLLATERAL"** <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <u>Emergency Hearing</u> <br> ) DATE:  TBD <br> ) TIME:  TBD <br> ) PLACE:  ZoomGov <br> ) |

1

## SUMMARY AND MOTION

AfterShock Comics, LLC ("Aftershock") and Rive Gauche Television ("RGTV," and together with Aftershock, the "Debtors"), the Chapter 11 debtors and debtors in possession herein (the "Debtors"), hereby move (the "Motion"), pursuant to Local Bankruptcy Rules ("LBR") 2081-1, 4001-2, and 9075-1, Federal Rules of Bankruptcy Procedure ("FRBP") 2002, 4001, and 9014, and sections 105(a), 361, 362, and 363 of chapter 11 of title 11 of the United States Code §§ 101, *et seq.* (the "Bankruptcy Code"),[1] for the entry of an order: (1) enforcing the order [Doc. No. 241] (the "6/6 Stipulation Order") approving the "*Stipulation Among Debtors, Official Committees Of Unsecured Creditors And Access Road Capital, LLC Regarding Settlement With Access Road And Debtors' Continued Use Of Cash Collateral*" [Doc. No. 230] filed on June 6, 2023 (the "6/6 Stipulation"); and (2) authorizing the Debtors to use Cash Collateral to pay certain expenses set forth in the budget attached as **Exhibit "1"** hereto (the "Budget") to "reasonably fund an auction sale of the Debtors' assets" in accordance with the 6/6 Stipulation.

Specifically, the 6/6 Stipulation provides that, in the event that the Debtors' lender, Access Road Capital, LLC ("ARC") was not paid in accordance with its terms,

> "[T]he Debtors' use of Cash Collateral to fund operations shall cease immediately, except as may be necessary to comply with any applicable state or federal law with respect to such cessation of business operations;
> . . . [and]

> Cash Collateral shall only be used in such limited amount and for such limited time as then agreed upon by the parties or ordered by the Court for the sole purpose of reasonably funding an auction sale of the Debtors' assets[.]"

*See* (Mot. Ex. 2 & 3). Because the Debtors have not paid ARC pursuant to the 6/6 Stipulation, shortly after the March 7, 2024 hearing on the Debtors' emergency motion for authority to use cash collateral [Doc. No. 411], the Debtors and the Official Committees of Unsecured Creditors appointed in the Debtors' cases (the "Committees," and together with the Debtors and ARC, the

---

[1] Unless otherwise stated, all Section references herein are to the Bankruptcy Code.

"Parties") have attempted multiple times to have discussions with ARC about a process to sell the Debtors' assets (the "Sale Process") and the details related thereto (*e.g.*, the identity of the sales agent that will be running the Sale Process; the timing for the commencement of the Sale Process; the amount of time that is necessary to sell the Debtors' assets; ARC's ability to credit bid its claim; and the division and distribution of the sale proceeds).  However, ARC has not given any substantive input about the Sale Process contemplated by the 6/6 Stipulation and has, instead, stated on multiple occasions that it would not consent to the use of any Cash Collateral to fund the Sale Process (and to pay the Debtors' employees, so that the Debtors can comply with the relevant state and federal laws pending a sale).  Although the Parties recently participated in two separate all-day mediation sessions with Judge Bluebond, the Parties were unable to reach any agreement with respect to a Sale Process, its associated costs, timetable or division of proceeds.

As a result, once again, the Debtors are forced to bring this Motion, on an emergency basis,[2] for a Court order to enforce the 6/6 Stipulation Order, and authorize the Debtors to use Cash Collateral pursuant to the Budget for the purposes of allowing them to comply with "applicable state and/or federal law," and fund a sale of their assets.

**WHEREFORE**, the Debtors respectfully request that the Court enter an order:

(1)      granting the relief requested in the Motion;

(2)      compelling ARC to comply with the terms of the 6/6 Stipulation;

(3)      authorizing the Debtors to use Cash Collateral to pay the expenses set forth in the Budget in accordance with the 6/6 Stipulation, and subject to the same terms set forth in the

---

[2] In connection with the Parties' mediation with Judge Bluebond, ARC consented to the Debtors' continued use of cash collateral pursuant to an agreed budget through May 17, 2024. At the conclusion of the last mediation session with Judge Bluebond on May 16, 2024, ARC would not consent to a further extension of the use of cash collateral for any purpose.  The Debtors have sought to obtain ARC's consent to use cash collateral in accordance with the terms of the 6/6 Stipulation, and hope to obtain such consent prior to any hearing on this Motion.  Since the Debtors must pay certain critical expenses, including, without limitation, the salaries for those employees who have remained with the Debtors and who will be necessary to assist with any sale process, the Debtors have filed this Motion on an emergency basis.

1  "*Agreed Order Authorizing Debtors To Use Cash Collateral Through The Week Of April 30,*

2  *2024*"; and

3        (4)    granting such further relief as the Court deems just and proper.

4  Dated: May 21, 2024            AFTERSHOCK COMICS, LLC &
                             
5                            RIVE  GAUCHE TELEVISION

6                            */s/ Jeffrey S. Kwong*

7                                David L. Neale
                              Jeffrey S. Kwong

8                              LEVENE, NEALE, BENDER, YOO
                              & GOLUBCHIK L.L.P.

9                          Counsel for Debtors and Debtors in Possession

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES[3]

### I.

### STATEMENT OF FACTS

**A.    Background.**

1.      Each of the Debtors filed a voluntary petition under Chapter 11 of 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") on December 19, 2022 (the "Petition Date").  The Debtors continue to operate their businesses, manage their financial affairs and operate their bankruptcy estates as debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

2.      Together, the Debtors comprise (and work together as) the "Aftershock Media" enterprise ("ASM") – which unites a rapidly growing comic creation and publishing business (Aftershock) with a proven film/television production and distribution platform (RGTV) for a global audience.   The Debtors' senior secured lender is Access Road Capital, LLC (the "Lender").

**B.    Debtors' Cash Collateral Issues, The Court Approved 6/6 Stipulation, And The Emergency Cash Collateral Motions.**

3.      At the outset of the Debtors' cases (the "Cases"), ARC's aggressive litigation tactics and refusal to consent to any Cash Collateral usage by the Debtors forced the Debtors to participate in several multi-day Evidentiary Hearings, the result of which authorized the Debtors to use Cash Collateral through May 31, 2023.

4.      On June 6, 2023, the Debtors, the Official Committees of Unsecured Creditors appointed in these Cases (the "Committees"), and ARC (collectively, the "Parties") entered into a stipulation [Doc. No. 230] (the "6/6 Stipulation") to, among other things, allow the Debtors to use Cash Collateral until the week of July 28, 2023.  The settlement (the "Settlement") set forth in the 6/6 Stipulation and the related Release Agreement, represented a "global resolution"

---

[3] Capitalized terms not otherwise defined herein have the same meanings as in the preceding Notice of Motion and Motion.

between the Parties if: (1) a transaction was consummated, and (2) the proceeds of the transaction were used to timely pay off ARC's claim in the amount of $14 million by the September 15, 2023 payoff deadline (the "9/15 Payoff Deadline").  (6/6 Stipulation, Doc. No. 230 ¶ 3) (emphasis added).  Further, the 6/6 Stipulation provided that, in the event that ARC was not timely paid off:

> "[T]he Debtors' use of Cash Collateral to fund operations shall cease immediately, except as may be necessary to comply with any applicable state or federal law with respect to such cessation of business operations;
> . . . [and]
>
> Cash Collateral shall only be used in such limited amount and for such limited time as then agreed upon by the parties or ordered by the Court for the sole purpose of reasonably funding an auction sale of the Debtors' assets[.]"

(6/6 Stipulation, ¶ 3) (emphasis added).  Moreover, if ARC was not timely paid off, the 6/6 Stipulation also contemplated that there would be a continued Cash Collateral hearing for the purpose of determining "the amount of Cash Collateral reasonably necessary to be utilized to fund an auction sale of the Debtors' assets, the deadline for such auction sale . . . and the allocation and disposition of any proceeds from the sale of the Debtors' assets.  (6/6 Stipulation, ¶ 4).  The Court's order approving the 6/6 Stipulation [Doc. No. 241] (the "6/6 Stipulation Order") was entered on June 12, 2023.  True and correct copies of the 6/6 Stipulation and the 6/6 Stipulation Order are attached respectively as **Exhibits "2" and "3"** hereto.

5.    Because the Debtors were not able to close on a transaction that would allow them to timely pay off ARC's claim pursuant to the 6/6 Stipulation, their authority to use Cash Collateral under that Stipulation ceased shortly after September 15, 2023.[4]  In fact, due to ARC's repeated refusal to allow for the Debtors to use Cash Collateral for virtually anything, the Debtors were forced to file three (3) emergency motions for authorization to use cash collateral (the "Emergency Cash Collateral Motions"), which include the:

---

[4] The extension of the payoff and cash collateral deadline from June 30, 2024 to September 15, 2024 was previously agreed upon by the parties, the terms of which were read into the record at the August 1, 2024 hearing.

- "*Debtors' Emergency Motion For Entry Of An Order Authorizing The Debtors To Use Cash Collateral On An Interim Basis*" [Doc. No. 342] filed on September 23, 2023, which stated that the Debtors were "forced to bring th[e] Motion" because of the "Lender's refusal to consent to the Debtors' continued Cash Collateral usage during the [one week] Period" from October 1, 2023 to October 6, 2023.  (Doc. No. 342, p. 11).

- (2) "*Debtors' Emergency Motion For Entry Of An Order Authorizing The Debtors To Use Cash Collateral To Pay Owed Wages And Commissions*" [Doc. 359] filed on November 6, 2023, where the Debtors requested, given ARC's refusal to authorize the payment of wages, that the Court authorize the Debtors to, among other things, ***pay their employees and contractors post-petition compensation due to them on or around October 31, 2023 for services already performed***.  This was so even though: (1) the Debtors (with the help of their employees) negotiated and entered into a non-disclosure agreement with ARC, and worked diligently to provide ARC prompt answers and documents responsive to ARC's various requests and questions; and (2) ARC was repeatedly informed that nonpayment "would cause the Employees and Contractors not to be paid on a timely basis, and could result in certain of these individuals quitting (which, in turn, could potentially cause an operational shutdown and an erosion of value in the value of the Debtors)."  (Doc. No. 359, p. 9).  In the motion, the Debtors also argued that the payment of employee owed wages was necessary for them to comply with applicable state and federal law as contemplated by the 6/6 Stipulation.  (Doc. No. 359, p. 17-18).  Importantly, the Debtors had the funds available to pay payroll, but could not ARC's consent to use such funds for that purpose.

- (3) "*Debtors' Emergency Motion For Entry Of An Order Authorizing The Debtors To Use Cash Collateral For The Period Ending April 30, 2024*" [Doc. No. 403] (the "March CC Motion") filed on March 6, 2024, where the Debtors sought use of cash collateral for the period from the week ending March 1, 2024 to the week ending April 30, 2024.  ***Again, in this motion and at the hearing thereon that took place on March 7, 2024, the Debtors repeatedly stressed the necessity of having their employees paid***.

Each of the Emergency Cash Collateral Motions were resolved by agreement, but it is very clear that the only reason the Debtors were unable to pay their employees on a timely basis was ARC's refusal to allow the Debtors to use the cash that they otherwise had available for that purpose.

6.      After the March 7, 2024 hearing on the March CC Motion – given the Court's comments at that hearing that the Debtors were bound by the terms of the 6/6 Stipulation – the Debtors and the Committees attempted multiple times to have meaningful discussions with ARC about a process to sell the Debtors' assets (the "Sale Process") and the details related thereto (*e.g.*, the identity of the sales agent that will be running the Sale Process; the timing for the commencement of the Sale Process; the amount of time that is necessary to sell the Debtors' assets; ARC's ability to credit bid its claim; and the division and distribution of the sale proceeds).  In fact, at the time, the Debtors were talking to SSG Capital Advisors, LLC ("SSG") to help run the Sale Process, and invited the Committees and ARC to participate in a meeting with SSG regarding SGG's retention proposal[5] which took place on March 14, 2024.  Although the Committees and Debtors were open to the idea of moving forward with a Sale Process, ARC would not allow for the use of Cash Collateral to fund that process or pay SSG.

7.      At the hearing on March 15, 2024, counsel for the Committees requested that either the parties agree to participate in mediation, or that, in the absence of such agreement, the Court require mediation.  The Court heard argument from counsel, and ultimately ordered that it was in the best interests of the estates and creditors for the parties to participate in a mediation to, among other things, agree upon the exit strategy for the Debtors' bankruptcy cases.

**C.      The Mediation.**

8.      On April 24, 2024, the Parties participated in a Court ordered mediation before the Hon. Sheri Bluebond.  Because the Parties believed that progress was made at the mediation, the Parties agreed to participate in a further mediation session on May 16, 2024.  Subject to

---

[5] The "Other Expense – Sales Process" Budget line item in the amount of $50,000 is based, in part, on SSG's requested initial fee.

certain conditions, the Parties agreed that the Debtors would be allowed to use Cash Collateral through the week ending May 17, 2024 to allow the Debtors to continue operating pending the further mediation session.

9.    Prior to the May 16, 2024 mediation (the "Continued Mediation"), the Committees suggested potentially retaining Hilco Global ("Hilco) to assist with running the Sale Process and, as a result, the Debtors have provided Hilco access to their virtual data room.

10.    At the Continued Mediation, among other proposals and exit strategies considered, the Debtors discussed the commencement of a Sale Process to sell the Debtors as a whole and/or their assets.  Although the Debtors and Committees were ready to discuss and formulate terms for the sale and for the Sale Process to begin, ARC was unwilling to participate in such discussions.  ARC advised the Debtors and the Committees that it would not consent to use of cash collateral beyond the May 17, 2024 date.

11.    After the Continued Mediation, the Debtors sent multiple emails to ARC to see if a resolution can be reached with ARC to allow for Cash Collateral to be used to preserve the value of the Debtors' assets and to fund the Sale Process contemplated by the 6/6 Stipulation.  In those emails, the Debtors confirmed that the request for Cash Collateral usage pursuant to the Budget would be subject to the same terms set forth in the "*Agreed Order Authorizing Debtors To Use Cash Collateral Through The Week Of April 30, 2024*" (including that the principals of the Debtor would receive only 70% of their regular salaries).  After not hearing from ARC for several days, on May 21, 2024, ARC notified the Debtors that it would not consent to the Debtors' use of Cash Collateral unless the principals of the Debtors, Jonathan and Lee Kramer (the "Principals"), agreed to forgo all of their salaries.  The Principals – who have not been paid for several months starting in November 2023 and agreed to receive only 70% of their regular salaries – have unique domain expertise that will contribute to a successful Sale Process, and are the individuals at the Debtors that are the most familiar with their operations and assets (and the value thereof), especially given the number of employees that have left the Debtors post-petition.

12.     As a result, the Debtors are once again forced to bring an emergency motion before the Court.  This time, the Debtors are seeking a Court order to enforce the 6/6 Stipulation Order, and to allow them to use Cash Collateral to pay for the expenses to "keep the lights on" set forth in the budget (the "Budget") for the period commencing on the week ending May 24, 2024 through the week ending June 7, 2024 (the "Period") attached as **Exhibit "1"** hereto, that would allow them to comply with "applicable state and/or federal law," and proceed with the selection and retention of a sale agent to move forward with a sale process.  To be clear, other than basic operating expenses (including the payroll of the critical remaining employees whose services will be needed in conjunction with the sale process) the Debtors are limiting their request to use Cash Collateral solely and exclusively in compliance with the terms of the 6/6 Stipulation.

**D.     Compliance with Rule 4001 of the Federal Rules of Bankruptcy Procedure and Local Bankruptcy Rule 4001-2.**

13.     Pursuant to Rule 4001(c)(1)(B) of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") and Local Bankruptcy Rule 4001-2(b) and (d), the Debtors submit that the relief requested herein pertaining to the use of Cash Collateral does not contain any of the following provisions:

| **Provision** | |
|---|---|
| Cross-collateralization clauses | No |
| Provisions or findings of fact that bind the estate or all parties in interest with respect to the validity, perfection or amount of the secured party's pre-petition lien or debt or the waiver of claims against the secured creditor. | No |
| Provisions or findings of fact that bind the estate or all parties in interest with respect to the relative priorities of the secured party's pre-petition lien. | No |
| Provisions that operate, as a practical matter, to divest the Debtor of any discretion in the formulation of a plan or administration of the estate or to limit access to the court to seek any relief under other applicable provision of law. | No |
| Waivers of 11 U.S.C. § 506(c), unless the waiver is effective only during the period in which the Debtor is authorized to use cash collateral or borrow funds. | No |

10

| **Provision** | |
|---|---|
| | |
| Releases of liability for the creditor's alleged prepetition torts or breaches of Contract. | No |
| Waivers of avoidance actions arising under the Bankruptcy Code. | No |
| Provisions that deem prepetition secured debt to be postpetition debt or that use postpetition loans from a prepetition secured creditor to pay part or all of that secured creditor's prepetition debt | No |
| Provisions that prime any secured lien | No |
| Automatic relief from the automatic stay upon default, conversion to chapter 7, or appointment of a trustee. | No |
| Waivers of procedural requirements, including those for foreclosure mandated under applicable non-bankruptcy law, and for perfection of replacement liens. | No |
| Adequate protection provisions which create liens on claims for relief arising under 11 U.S.C. §§ 506(c), 544, 545, 547, 548 and 549. | No |
| Waivers, effective on default or expiration, of the Debtor's right to move for a court order pursuant to 11 U.S.C. § 363(c)(2)(B) authorizing the use of cash collateral in the absence of the secured party's consent | No |
| Provisions that grant a lien in an amount in excess of the dollar amount of cash collateral authorized under the applicable cash collateral order. | No |
| Provisions providing for the paying down of prepetition principal owed to a creditor. | No |
| Findings of fact on matters extraneous to the approval process. | No |

14.     Pursuant to Bankruptcy Rule 4001(b)(1)(C), the Debtors are required to serve a copy of the Motion on any entity with an interest in the Debtors' cash collateral, the Committees, and any other entity that the Court directs.  The Debtors have complied with the foregoing by serving a copy of the Motion on all known secured creditor(s), the Committees, the United States Trustee, and parties requesting special notice.

///

///

///

## II.

## ARGUMENT

### A.  THE COURT SHOULD ENTER AN ORDER COMPELLING ENFORCEMENT OF THE 6/6 STIPULATION ORDER

Section 105(a) provides as follows:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.  No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, *sua sponte*, ***taking any action or making any determination necessary or appropriate to enforce or implement court orders*** or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a) (emphasis added).  Bankruptcy courts "retain[] jurisdiction to interpret . . . Settlement Order[s] and to determine whether [they] should be enforced." *In re Seifert*, No. ADV. LA 10-02359-RN, 2012 WL 1108992, at *6 (B.A.P. 9th Cir. Apr. 3, 2012).  There is a presumption that a party subject to a court order shall "take 'all the reasonable steps within [his] power to insure compliance with the [court's] order.'" *Shuffler v. Heritage Bank*, 720 F.2d 1141, 1146 (9th Cir. 1983) quoting *Sekaquaptewa v. MacDonald*, 544 F.2d 396, 406 (9th Cir. 1976).

Here, the 6/6 Stipulation and 6/6 Stipulation Order provided that, if the Debtors were not able to timely pay off ARC, Cash Collateral would only be used for the Debtors to "comply with any applicable state or federal law with respect to . . . cessation of business operations" and to "reasonably fund[] an auction sale of the Debtors' assets."  ARC has on several occasions (and most recently at the May 16, 2024 mediation) unambiguously stated that it would not consent to the use of any Cash Collateral to fund the Sale Process.  ARC's actions are in clear violation of the 6/6 Stipulation Order, and this Court should compel compliance with that order.

Specifically, because paragraph 4 of the 6/6 Stipulation provided that the Court would consider at a continued Cash Collateral hearing "***the amount of Cash Collateral reasonably necessary to be utilized to fund an auction sale of the Debtors' assets***, the deadline for such auction sale . . . and the allocation and disposition of any proceeds from the sale of the Debtors' assets," the Court has authority to determine the amount of Cash Collateral that is necessary to

fund the Sale Process – whether conducted by SSG, Hilco, or some other sales agent – and should authorize the Debtors to use Cash Collateral to pay the expenses in the "bare bones" Budget during the Period to "keep the lights on" during the Period pending the sale.

**B.      THE COURT SHOULD AUTHORIZE THE DEBTORS TO USE CASH COLLATERAL TO PAY THE EXPENSES SET FORTH IN THE BUDGET.**

The Debtors' use of property of the estate is governed by Section 363.  11 U.S.C. § 363(c).  Section 363(c)(1) provides in pertinent part:

> "If the business of the debtor is authorized to be operated under section. … 1108 … of this title and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing."

11 U.S.C. § 363(c)(1).  A debtor in possession has all of the rights and powers of a trustee with respect to property of the estate, including the right to use property of the estate in compliance with Section 363.  11 U.S.C. § 1107(a).

"Cash collateral" is defined as "cash, negotiable instruments, documents of title, securities, deposit accounts or other cash equivalents in which the estate and an entity other than the estate have an interest [.]"  11 U.S.C. § 363(a).  Section 363(c)(2) establishes a special requirement with respect to "cash collateral," providing that the trustee or debtor in possession may use "cash collateral" under subsection (c)(1) if:

> (A)      each entity that has an interest in such cash collateral consents; or
> (B)      the court, after notice and a hearing, authorizes such use, sale or lease in accordance with the provisions of this section.

11 U. S.C. §363(c)(2)(A) and (B).

Pursuant to Section 363(c)(2), the Court may authorize a debtor in possession to use a secured creditor's cash collateral only if the secured creditor consents to the use of cash collateral or is adequately protected.  *In re Mellor*, 734 F.2d 1396, 1400 (9th Cir. 1984); s*ee also In re O'Connor*, 808 F.2d 1393, 1398 (10th Cir. 1987); *In re McCombs Properties VI, Ltd.*, 88 B.R. 261, 265 (Bankr. C.D. Cal. 1988).

Here, the 6/6 Stipulation already contemplates the use of Cash Collateral to "fund an auction sale of the Debtors' assets" and, as a result, the Court should find that ARC previously consented to the use of Cash Collateral to pay for the expenses in the Budget.  The expenses set forth in the Budget are the "bare bones minimum" that needs to be paid to preserve the value of the Debtors' assets or the Debtors' businesses pending a sale.  For example, these expenses include, among other things:

- Minimal "Bank [Account] Fees";

- Employee payroll, health insurance, and associated costs;[6]

- Software and website costs (*e.g.,* Microsoft 360, Dropbox, Slack, Zoom, Adobe, etc.);

- Office rent for storage units to store the Debtors' physical assets; and

- Telephone and Internet Service (*i.e.,* Ring Central/T-Mobile, and Synoptek respectively).

ARC should be estopped from making any argument that it has not consented to the use of Cash Collateral to fund the Sale Process.  The Debtors continue to believe that a sale of the Debtors as entities that have "going concern" operations would yield substantially more than a "fire sale" of their assets.  In fact, potential investors have told the Debtors multiple times that they would only be interested in entering into a transaction with the Debtors if they had continuing operations.  On a parallel track to the Sale Process, the Debtors will continue to work on identifying and closing a transaction with a financier or investor that would allow them to pay off ARC and be in the best interests of all creditors.

Moreover, the 6/6 Stipulation also provides that Cash Collateral may be used as is

---

[6] The Budget does not include employee "back pay" or catch up payments (*i.e.,* amounts owed to employees from previous pay periods), and only covers the payrolls that are due during the Period.  The Debtors believe that all back pay should be paid to present and former employees, and intend to continue to negotiate with ARC for authority to use Cash Collateral for that purpose.  It has always been the Debtors' position that there was sufficient cash available to pay payroll when it was due, and that the only reason employees were not paid was because ARC would not consent to the use of Cash Collateral for that purpose.  The Debtors have advised the Court of this situation on numerous occasions, and have worked hard to protect the interests of their employees.

"necessary to comply with any applicable state or federal law with respect to such cessation of business operations," which includes the payment of employee wages for the payrolls due during the Period (the "Payroll Expenses").  It cannot be reasonably disputed that the Debtors must timely pay the Payroll Expenses to their employees to comply with applicable California and other labor laws.[7]

For example, California Labor Code § 201 "secures an employee's right to the full and prompt payment of final wages '*upon discharge'*," while California Labor Code § 204 requires that "[a]ll wages, other than those mentioned in Section 201, 201.3, 202, 204.1, or 204.2, earned by any person in *any employment* are due and payable twice during each calendar month, on days designated in advance by the employer as the regular paydays."  *See Rios v. Linn Star Transfer, Inc.*, No. 19-CV-07009-JSC, 2020 WL 1677338, at *3 (N.D. Cal. Apr. 6, 2020); *See's Candy Shops, Inc. v. Superior Court*, 210 Cal. App. 4th 889, 904-05 (2012) ("sole purpose of [section 204] is to require an employer of labor who comes within its terms to maintain two regular pay days each month, within the dates required in that section.") (internal quotation marks and citation omitted); Cal. Labor Code §§ 201 & 204; *see also* Cal. Labor Code § 203 (penalty for the "willful" failure to comply with an obligation to make timely payments).  In addition to employer liability, under California Labor Code Section 558, an employer's failure to timely pay wages and make other payments to employees may subject not only the employer, but also any "other person acting on behalf of an employer," to civil liability and penalty for any applicable violations related underpaying an employee.  Cal. Labor Code § 558.

As a result, subject to Court approval, the Debtors' limited request to use Cash Collateral pursuant to the Budget is not only consistent with, but contemplated by, the terms of the 6/6 Stipulation.  These are expenses that are "reasonably" necessary to fund "an auction sale of the Debtors' assets," and allow the Debtors to comply with applicable labor laws.

---

[7] This is in addition to the fact that the Principals – who have not been paid for several months starting in November 2023 and agreed to receive only 70% of their regular salaries – have unique domain expertise that will contribute to a successful Sale Process, and are the individuals at the Debtors that are the most familiar with their operations and assets (and the value thereof), especially given the number of employees that have left the Debtors post-petition.

Further, even putting aside the fact that ARC previously committed to allow the use of Cash Collateral to reasonably fund a Sale Process, ARC will be adequately protected, which provides a basis for the immediate and ongoing authorization for the Debtors to use Cash Collateral for the purposes of paying the limited sale related expenses set forth in the Budget.

**First,** ARC will be adequately protected by the Debtors' use of Cash Collateral to preserve the value of ARC's collateral pending a sale. *See In re 499 W. Warren Street Assocs., Ltd. P'ship,* 142 B.R. 53, 58 (Bankr.N.D.N.Y.1992) (allowing the use of cash collateral to maintain property); *McCombs Prop. VI, Ltd. v. First Texas Sav. Ass'n (In re McCombs Prop. VI, Ltd.),* 88 B.R. 261, 267 (Bankr. C.D. Cal. 1988) (holding that rents could be spent to make repairs or renovations that would increase rent flow even without equity cushion); *Matter of Pursuit Athletic Footwear, Inc.,* 193 B.R. 713 (Bankr. D. Del. 1996).

**Second,** as additional adequate protection, the Debtors propose that the Court authorize the Debtors to grant and provide ARC with replacement Adequate Protection Liens on, and security interests in, the assets of the Debtors' estate to secure any diminution in ARC's collateral during the Period resulting from the Debtors' use of any Cash Collateral in which ARC has a valid interest. This form of adequate protection is contemplated and allowed pursuant to Section 361(2) of the Bankruptcy Code.

### III.

### THE WAIVER OF ANY APPLICABLE STAY IS APPROPRIATE

For the reasons noted herein, the Debtors will suffer immediate and irreparable harm if the Debtors are not able to pay the expenses set forth on the Budget, to preserve the value of the Debtors' assets pending a sale. Based on the foregoing, the Debtors request that any applicable stay, including any stay provided under FRBP 4001(b) be waived to allow the Order to become immediately effective.

/ / /

/ / /

/ / /

# IV.

## CONCLUSION

**WHEREFORE**, the Debtors respectfully requests that the Court enter an order:

(1)      granting the relief requested in the Motion;

(2)      compelling ARC to comply with the terms of the 6/6 Stipulation;

(3)      authorizing the Debtors to use Cash Collateral to pay the expenses set forth in the Budget in accordance with the 6/6 Stipulation, and subject to the same terms set forth in the "*Agreed Order Authorizing Debtors To Use Cash Collateral Through The Week Of April 30, 2024*"; and

(4)      granting such further relief as the Court deems just and proper.


Dated: May 21, 2024                    AFTERSHOCK COMICS, LLC &
                                        RIVE GAUCHE TELEVISION

                                        */s/   Jeffrey S. Kwong*
                                        David L. Neale
                                        Jeffrey S. Kwong
                                        LEVENE, NEALE, BENDER, YOO
                                        & GOLUBCHIK L.L.P.
                                        Counsel for Debtors and Debtors in Possession

## **DECLARATION OF JONATHAN KRAMER**

I, Jonathan Kramer, hereby declare as follows:

1.      I am over 18 years of age.  I am the Chief Executive Officer and President of AfterShock Comics, LLC ("Aftershock") and Rive Gauche Television ("RGTV," and together with Aftershock, the "Debtors"), respectively, the debtors and debtors in possession in the above-captioned Chapter 11 bankruptcy cases, and am therefore familiar with the business operations and have access to and knowledge regarding the financial books and records of the Debtors.  I have personal knowledge of the facts set forth below and, if called to testify as a witness, I could and would competently testify thereto.

2.      I am familiar with the history, organization, operations and financial condition of the Debtors.  The records and documents referred to in this Declaration constitute writings taken, made, or maintained in the regular or ordinary course of the Debtors' business at or near the time of act, condition or event to which they relate by persons employed by the Debtors who had a business duty to the Debtors to accurately and completely take, make, and maintain such records and documents.  The statements set forth in this declaration are based upon my own personal knowledge and my review of the Debtors' books and records.

3.      I make this declaration in support of the "*Debtors' Emergency Motion For Entry Of An Order Enforcing The 'Order Granting Stipulation Among Debtors, Official Committees Of Unsecured Creditors And Access Road Capital, LLC Regarding Settlement Wit Access Road And Debtors' Continued Use Of Cash Collateral*'" (the "Motion").

4.      Among other things, the Motion requests the entry of an order enforcing the order [Doc. No. 241] (the "6/6 Stipulation Order") approving the "*Stipulation Among Debtors, Official Committees Of Unsecured Creditors And Access Road Capital, LLC Regarding Settlement With Access Road And Debtors' Continued Use Of Cash Collateral*" [Doc. No. 230] filed on June 6, 2023 (the "6/6 Stipulation"), and authorizing the Debtors to use Cash Collateral to pay certain expenses set forth in the budget attached as **Exhibit "1"** hereto (the "Budget") to "reasonably

1  fund an auction sale of the Debtors' assets" in accordance with the 6/6 Stipulation.  The Budget

2  was prepared by employees of the Debtors under my direction and supervision, and has been

3  approved by me.

4  **Background**

5          5.          Each of the Debtors filed a voluntary petition under Chapter 11 of 11 U.S.C. §§

6  101 *et seq.* (the "Bankruptcy Code") on December 19, 2022 (the "Petition Date").  The Debtors

7  continue to operate their businesses, manage their financial affairs and operate their bankruptcy

8  estates as debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

9          6.          Together, the Debtors comprise (and work together as) the "Aftershock Media"

10 enterprise ("ASM") – which unites a rapidly growing comic creation and publishing business

11 (Aftershock) with a proven film/television production and distribution platform (RGTV) for a

12 global audience.

13         **Debtors' Cash Collateral Issues, The Court Approved 6/6 Stipulation, And The**

14 **Emergency Cash Collateral Motions**.

15         7.          At the outset of the Debtors' cases (the "Cases"), ARC's aggressive litigation

16 tactics and refusal to consent to any Cash Collateral usage by the Debtors forced the Debtors to

17 participate in several multi-day Evidentiary Hearings, the result of which authorized the Debtors

18 to use Cash Collateral through May 31, 2023.

19         8.          On June 6, 2023, the Debtors, the Official Committees of Unsecured Creditors

20 appointed in these Cases (the "Committees"), and ARC (collectively, the "Parties") entered into

21 a stipulation [Doc. No. 230] (the "6/6 Stipulation") to, among other things, allow the Debtors to

22 use Cash Collateral until the week of July 28, 2023.  The settlement (the "Settlement") set forth

23 in the 6/6 Stipulation and the related Release Agreement, represented a "global resolution"

24 between the Parties if: (1) a transaction was consummated, and (2) the proceeds of the

25 transaction were used to timely pay off ARC's claim in the amount of $14 million by the

26 September 15, 2023 payoff deadline (the "9/15 Payoff Deadline").  (6/6 Stipulation, Doc. No.

27

28

230 ¶ 3) (emphasis added).  Further, the 6/6 Stipulation provided that, in the event that ARC was

not timely paid off:

> "[T]he Debtors' use of Cash Collateral to fund operations shall cease immediately, except as may be necessary to comply with any applicable state or federal law with respect to such cessation of business operations;
> . . . [and]
>
> Cash Collateral shall only be used in such limited amount and for such limited time as then agreed upon by the parties or ordered by the Court for the sole purpose of reasonably funding an auction sale of the Debtors' assets[.]"

(6/6 Stipulation, ¶ 3) (emphasis added).  Moreover, if ARC was not timely paid off, the 6/6

Stipulation also contemplated that there would be a continued Cash Collateral hearing for the

purpose of determining "the amount of Cash Collateral reasonably necessary to be utilized to

fund an auction sale of the Debtors' assets, the deadline for such auction sale . . . and the

allocation and disposition of any proceeds from the sale of the Debtors' assets.  (6/6 Stipulation,

¶ 4).  The Court's order approving the 6/6 Stipulation [Doc. No. 241] (the "6/6 Stipulation

Order") was entered on June 12, 2023.  True and correct copies of the 6/6 Stipulation and the 6/6

Stipulation Order are attached respectively as **Exhibits "2" and "3"** hereto.

    9.    Because the Debtors were not able to close on a transaction that would allow them

to timely pay off ARC's claim pursuant to the 6/6 Stipulation, their authority to use Cash

Collateral under that Stipulation ceased shortly after September 15, 2023.[8]  In fact, due to ARC's

repeated refusal to allow for the Debtors to use Cash Collateral for virtually anything, the

Debtors were forced to file three (3) emergency motions for authorization to use cash collateral

(the "Emergency Cash Collateral Motions"), which include the:

•    "*Debtors' Emergency Motion For Entry Of An Order Authorizing The Debtors To

*Use Cash Collateral On An Interim Basis*" [Doc. No. 342] filed on September 23, 2023, which

stated that the Debtors were "forced to bring th[e] Motion" because of the "Lender's refusal to

---

[8] The extension of the payoff and cash collateral deadline from June 30, 2024 to September 15, 2024 was previously agreed upon by the parties, the terms of which were read into the record at the August 1, 2024 hearing.

consent to the Debtors' continued Cash Collateral usage during the [one week] Period" from October 1, 2023 to October 6, 2023.  (Doc. No. 342, p. 11).

- (2) "*Debtors' Emergency Motion For Entry Of An Order Authorizing The Debtors To Use Cash Collateral To Pay Owed Wages And Commissions*" [Doc. 359] filed on November 6, 2023, where the Debtors requested, given ARC's refusal to authorize the payment of wages, that the Court authorize the Debtors to, among other things, pay their employees and contractors post-petition compensation due to them on or around October 31, 2023 for services already performed.  This was so even though: (1) the Debtors (with the help of their employees) negotiated and entered into a non-disclosure agreement with ARC, and worked diligently to provide ARC prompt answers and documents responsive to ARC's various requests and questions; and (2) ARC was repeatedly informed that nonpayment "would cause the Employees and Contractors not to be paid on a timely basis, and could result in certain of these individuals quitting (which, in turn, could potentially cause an operational shutdown and an erosion of value in the value of the Debtors)."  (Doc. No. 359, p. 9).  In the motion, the Debtors also argued that the payment of employee owed wages was necessary for them to comply with applicable state and federal law as contemplated by the 6/6 Stipulation.  (Doc. No. 359, p. 17-18).  Importantly, the Debtors had the funds available to pay payroll, but could not ARC's consent to use such funds for that purpose.

- (3) "*Debtors' Emergency Motion For Entry Of An Order Authorizing The Debtors To Use Cash Collateral For The Period Ending April 30, 2024*" [Doc. No. 403] (the "March CC Motion") filed on March 6, 2024, where the Debtors sought use of cash collateral for the period from the week ending March 1, 2024 to the week ending April 30, 2024.  Again, in this motion and at the hearing thereon that took place on March 7, 2024, the Debtors repeatedly stressed the necessity of having their employees paid.

Each of the Emergency Motions were resolved by agreement, but it is very clear that the only reason the Debtors were unable to pay their employees on a timely basis was ARC's refusal to allow the Debtors to use the cash that they otherwise had available for that purpose.

10.     After the March 7, 2024 hearing on the March CC Motion – given the Court's comments at that hearing that the Debtors were bound by the terms of the 6/6 Stipulation – the Debtors and the Committees attempted multiple times to have meaningful discussions with ARC about a process to sell the Debtors' assets (the "Sale Process") and the details related thereto (*e.g.*, the identity of the sales agent that will be running the Sale Process; the timing for the commencement of the Sale Process; the amount of time that is necessary to sell the Debtors' assets; ARC's ability to credit bid its claim; and the division and distribution of the sale proceeds).  In fact, at the time, the Debtors were talking to SSG Capital Advisors, LLC ("SSG") to help run the Sale Process, and invited the Committees and ARC to participate in a meeting with SSG regarding SGG's retention proposal[9] which took place on March 14, 2024.  Although the Committees and Debtors were open to the idea of moving forward with a Sale Process, ARC would not allow for the use of Cash Collateral to fund that process or pay SSG.

11.     At the hearing on March 15, 2024, counsel for the Committees requested that either the parties agree to participate in mediation, or that, in the absence of such agreement, the Court require mediation. The Court heard argument from counsel, and ultimately ordered that it was in the best interests of the estates and creditors for the parties to participate in a mediation to, among other things, agree upon the exit strategy for the Debtors' bankruptcy cases.

**The Mediation.**

12.     On April 24, 2024, the Parties participated in a Court ordered mediation before the Hon. Sheri Bluebond.  Because the Parties believed that progress was made at the mediation, the Parties agreed to participate in a further mediation session on May 16, 2024.  Subject to certain conditions, the Parties agreed that the Debtors would be allowed to use Cash Collateral through the week ending May 16, 2024 to allow the Debtors to continue operating pending the further mediation session.

---

[9] SSG's pricing proposal consisted of: (1) a $50,000 initial fee; (2) a $25,000 per month monthly fee; and (3) a "sale fee" which was based on the sale price for the Debtors.

13.    Prior to the May 17, 2024 mediation (the "Continued Mediation"), the Committees suggested potentially retaining Hilco Global ("Hilco) to assist with running the Sale Process and, as a result, the Debtors have provided Hilco access to their virtual data room.

14.    At the Continued Mediation, among other proposals and exit strategies considered, the Debtors discussed the commencement of a Sale Process to sell the Debtors as a whole and/or their assets.  Although the Debtors and Committees were ready to discuss and formulate terms for the sale and for the Sale Process to begin, ARC was unwilling to participate in such discussions.  ARC advised the Debtors and the Committees that it would not consent to use of cash collateral beyond the May 17, 2024 date.

15.    After the Continued Mediation, the Debtors sent multiple emails to ARC to see if a resolution can be reached with ARC to allow for Cash Collateral to be used to preserve the value of the Debtors' assets and to fund the Sale Process contemplated by the 6/6 Stipulation.  In those emails, the Debtors confirmed that the request for Cash Collateral usage pursuant to the Budget would be subject to the same terms set forth in the "*Agreed Order Authorizing Debtors To Use Cash Collateral Through The Week Of April 30, 2024*" (including that the principals of the Debtor would receive only 70% of their regular salaries).  After not hearing from ARC for several days, on May 21, 2024, ARC notified the Debtors that it would not consent to the Debtors' use of Cash Collateral unless the principals of the Debtors, Lee Kramer and me (the "Principals"), agreed to forgo all of their salaries.  The Principals – who have not been paid for several months starting in November 2023 and agreed to receive only 70% of their regular salaries – have unique domain expertise that will contribute to a successful Sale Process, and are the individuals at the Debtors that are the most familiar with their operations and assets (and the value thereof), especially given the number of employees that have left the Debtors post-petition.

16.    As a result, the Debtors are once again forced to bring an emergency motion before the Court.  This time, the Debtors are seeking a Court order to enforce the 6/6 Stipulation Order, and to allow them to use Cash Collateral to pay for the expenses to "keep the lights on"

set forth in the Budget for the period commencing on the week ending May 24, 2024 through the week ending June 7, 2024 (the "Period"), that would allow them to comply with "applicable state and/or federal law," proceed with the selection and retention of a sale agent to move forward with a sale process.  To be clear, other than basic operating expenses (including the payroll of the critical remaining employees whose services will be needed in conjunction with the sale process) the Debtors are limiting their request to use Cash Collateral solely and exclusively in compliance with the terms of the 6/6 Stipulation.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this ___ day of May, 2024 at Sherman Oaks, California.


_____
JONATHAN KRAMER

set forth in the Budget for the period commencing on the week ending May 24, 2024 through the week ending June 7, 2024 (the "Period"), that would allow them to comply with "applicable state and/or federal law," proceed with the selection and retention of a sale agent to move forward with a sale process. To be clear, other than basic operating expenses (including the payroll of the critical remaining employees whose services will be needed in conjunction with the sale process) the Debtors are limiting their request to use Cash Collateral solely and exclusively in compliance with the terms of the 6/6 Stipulation.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 21st day of May, 2024 at Sherman Oaks, California.

JONATHAN KRAMER

**EXHIBIT "1"**

**AfterShock Media Payroll**

| | 5/24/2024 | 5/31/2024 | 6/7/2024 | Totals |
|---|---|---|---|---|
| Beginning Balance | 489,859 | 112,817 | 593,368 money we... | |
| **Cash Inflows** | | | | |
| Rive Gauche Receivables | 163,166 | 50,016 | 1,876 | 215,057 |
| Rive Gauche Estimated Receivables | | | | - |
| Rive Gauche AVOD | | 300,000 | | 300,000 |
| Other Reimbursements (other inflows) | | | | - |
| | | | | - |
| New Comic Sales (Diamond) | | | | - |
| Comic Sales (Comixology/Amazon) | | | 500 | 500 |
| Aftershock - Comic Sales - Foreign | | | | - |
| Other Comic Revenues (Variant Covers, etc) | - | - | - | - |
| Conventions | | | | - |
| Option Fees Film/TV | 22,500 | 50,500 | - | 73,000 |
| Revolver Loan - no loan | | | - | |
| Purchase Price - With Rights | - | - | - | |
| Purchase Price | - | - | - | |
| LG/BG issuer Fee | | | | |
| Work Fee Sandton | | | | |
| Guarantee Finders Fee | | | | |
| Forest Road | | | | |
| **Total Income** | **185,666** | **400,516** | **2,376** | **515,557** |
| | | | | |

|  | Beginning Balance | | | |
|---|---|---|---|---|
|  | 428,559 | 320,371 | 593,669 | May-Jun 24 Totals |
|  | 3/21/2024 | 3/31/2024 | 6/7/2024 | |
| **Cash Outflows** | | | | |
| Comic Creation Costs | | | | |
| Comic Printing Costs (rolled up in creation) | | | | |
| Working Capital (SG&A, Prepaid and Recoupable Costs, etc) | 131,885 | 112,017 | 31,984 | 275,887 |
| **AfterShock Comics** | 9,821 | 17,475 | 12,254 | 39,550 |
| Bank fees | 80 | 80 | 80 | 240 |
| Convention expense | | | | - |
| Business Meetings/Meals | | | | - |
| Copyright Expense | 1,950 | | 1,950 | 3,900 |
| Entertainment | | | | - |
| Insurance | | | | |
| Health | | 2,253 | | 2,253 |
| Liability | | | | - |
| Legal - Sacker | | | | - |
| Legal (Neale) | | | | - |
| UK Legal | | | | - |
| Marketing | | | | - |
| Computer software utilities | | | 600 | 600 |
| Microsoft 360 | | | 580 | 580 |
| Dropbox | | | 380 | 380 |
| Slack | | | 335 | 335 |
| Zoom | | | 114 | 114 |
| Baseline (studio system) | | | | - |
| Adobe | | | 15 | 15 |
| Docusign (paid annually in 2022) | | | | - |
| Web site hosting | | | 750 | 750 |
| Website maintenance | | | | - |
| Stuart Rekant DIP Loan Advisor | | | | - |
| **US Trustees** | | | | - |
| Office rent | | 200 | 1,419 | 1,619 |
| Office supplies | | | | - |
| Public relations | | | 5,000 | 5,000 |
| Research materials / Decks | | | 20 | 20 |
| Shipping, postage | | 10,000 | 75 | 10,075 |
| Social Media | | | | - |
| Subscriptions | | | 520 | 520 |
| Telephone (Ring Central) | | | 125 | 125 |
| Taxes - business (rose synder) & various | 3,500 | 3,392 | | 6,892 |
| Tax and accounting | 291 | 1,550 | 291 | 2,132 |
| Travel | | | | - |
| Airfare | | | | - |
| Lodging | | | | - |
| Local transportation | | | | - |
| Travel-Other | 4,000 | | | 4,000 |
| Amex - Unclassified aftershock | | | | - |
| Web site design/hosting OLD Catergory dont use | | | | - |
| Other expense | | | | - |
| Variant Cover Expense OLD Catergory dont use | | | | - |

| Beginning Balance | 423,559 5/17/2024 | 320,371 5/24/2024 | 593,669 6/7/2024 | May 2024 - June 2024 returns |
|---|---|---|---|---|
| **Rive Gauche** | **122,064** | **18,248** | **19,730** | **160,043** |
| US PO Box | | | | - |
| Bank fees | 100 | 100 | 150 | 350 |
| UnitedHealthCare/ Health Insurance | | | | - |
| Liability Insurance | | | | - |
| Bob Chapman (Sauer & Wagner) | | | | - |
| City of Of Los Angeles / Franchise Tax Board | 2,800 | | | 2,800 |
| Copyrights | | | | - |
| Dinter Inc. (fso Tomas Silva) | | | | - |
| Direct TV | | | | - |
| Fotokem | | | | - |
| Phil Fiers from Focus Advisory Jawad | | | | - |
| **US Trustees** | | | | - |
| Jon Kramer - Medical | | 762 | | 762 |
| Reimburse Jon Kramer | | | | - |
| AMEX reimb Delta #1 | | | | - |
| AMEX reimb Platinum #2 | | | | - |
| AMEX reimb Delta #2 | | | | - |
| Chase 5026 | | | | - |
| Chase 5135 | | | | - |
| Chase 8313 | | | | - |
| Julie Cawood Development | | | | - |
| Marketing | | | | - |
| Computer software utilities: | | | | |
| Microsoft 360 | | | 550 | 550 |
| Dropbox | | | | - |
| Slack | | | | - |
| Zoom | | | 162 | 162 |
| Comet, Saturn Software | | | | - |
| Adobe | | | 20 | 20 |
| Docusign (paid annually) | | | | - |
| Web site hosting | | | 100 | 100 |
| Website maintenance | | | | - |
| Markets/Conventions | 11,100 | | | 11,100 |
| T-Mobile (due the 9th) | | | 506 | 506 |
| Michael Bales & other Legal | | | | - |
| Legal (Neale) | | | | - |
| Office Supplies | | | | - |
| Rent - storage unit | | | | - |
| Ottera | 30,177 | | | 30,177 |
| Parking | | | | - |
| Professional Subscription (C21) annual | | | | - |
| Prudential - key man insurance | | | | - |
| **Robert Half/Temp Accounting** | 3,215 | 3,215 | 3,215 | 9,645 |
| Rose, Snyder and Jacobs | | | 10,000 | 10,000 |
| Santa Monica Video ()cogs | 10,511 | 5,134 | 4,866 | 20,511 |
| Synoptek | | 1,700 | | 1,700 |
| MIP (booth construction) & Other | | 7,176 | | 7,176 |
| Reed Midem - MIP (booth registration) | | | | - |
| Payroll Costs (Taxes and Workers Comp) | 161 | 161 | 161 | 483 |
| MIP travel/hotel costs | | | | - |
| MIP meals | | | | - |
| Real Screen Travel & Expense | | | | - |
| TBI - Mipcom advertising | | | | - |
| T&E reimbursements | | | - | - |
| World Screen | | | | - |
| **Other Expense - Sales Process** | 50,000 | | | 50,000 |
| AVOD Costs - Creation and Delivery Costs | 14,000 | | | 14,000 |
| AVOD Costs - Access Costs | | | | - |
| AVOD Costs - Dinter Dubbing | | | | - |
| **AfterShock Media Combined Salaries** | **-** | **76,294** | **-** | **76,294** |

| Beginning Balance | 428,559 | 320,371 | 593,669 | May and June will |  |
| | 5/17/2024 | 5/31/2024 | 6/7/2024 | | Total |
| | | | | | - |
| | - | - | | | - |
| | | | | | - |
| Other Investor Interest and Loan Payments | - | - | - | | - |
| | | | | | - |
| **Growth, Development and Consolidation** | | | | | - |
| Capex Investments (New office FF&E and LHI, IT Hardware) | | | | | - |
| Rive Gauche Royalties and MG Payables | 156,960 | 15,000 | - | | 171,960 |

| | | | | May-24 - June-24 Retard |
|---|---|---|---|---|
| **Beginning Balance** | 423,559 | 320,371 | 593,869 | |
| Estimated Quarterly Royalties (Escrow holding acct) | - | - | - | - |
| **Total Expense** | 288,845 | 127,017 | 31,984 | 447,847 |
| | | | | |
| **Monthly Cash Movement** | (103,180) | 273,498 | (29,608) | 67,711 |
| | | | | - |
| **Total Cash Balance** | 320,371 | 593,869 | 564,261 | |

# EXHIBIT "2"

**SKLAR KIRSH, LLP**
Robbin L. Itkin (SBN 117105)
*ritkin@sklarkirsh.com*
Kelly Frazier (SBN 212527)
*kfrazier@sklarkirsh.com*
Timothy K. McMahon (SBN 342843)
*tmcmahon@sklarkirsh.com*
1880 Century Park East, Suite 300
Los Angeles, California 90067
Telephone: (310) 845-6416
Facsimile: (310) 929-4469

Attorneys for Official Committees of Unsecured
Creditors for Rive Gauche Television and
AfterShock Comics, LLC

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re<br><br>AFTERSHOCK COMICS, LLC, a California limited liability company,,<br><br>    Debtor and Debtor in Possession. | Case No. 1:22-bk-11456-MB<br><br>Jointly administered with:<br>1:22-bk-11457-MB<br>(Rive Gauche Television)<br><br>Chapter 11 |
| In re<br><br>RIVE GAUCHE TELEVISION, a California corporation,<br><br>    Debtor and Debtor in Possession. | **STIPULATION AMONG DEBTORS, OFFICIAL COMMITTEES OF UNSECURED CREDITORS AND ACCESS ROAD CAPITAL, LLC REGARDING SETTLEMENT WITH ACCESS ROAD AND DEBTORS' CONTINUED USE OF CASH COLLATERAL** |
| ☒  Affects both Debtors<br>☐  Affects Aftershock Comics, LLC only<br>☐  Affects Rive Gauche Television only | Hearing Date: June 7, 2023<br>Time:         10:00 a.m.<br>Place:        Via ZoomGov<br>              Courtroom 303<br>              21041 Burbank Boulevard<br>              Woodland Hills, CA  91367 |

AfterShock Comics, LLC ("AfterShock") and Rive Gauche Television ("RGTV," and together with AfterShock, the "Debtors"), the Chapter 11 debtors and debtors in possession herein, the Official Committees of Unsecured Creditors for RGTV and AfterShock (the "Committees"), and Access Road Capital, LLC ("ARC"), each hereby stipulate (the "Stipulation") as follows:

## I.  RECITALS

A.    The Debtors commenced the above captioned bankruptcy cases by the filing of voluntary petitions for relief under chapter 11 of the Bankruptcy Code on December 19, 2022 (the "Petition Date"), in the United States Bankruptcy Court for the Central District of California, San Fernando Valley Division (the "Court").

B.    Since the Petition Date, the Debtors have operated their businesses and managed their affairs as a debtors-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in the Debtors' bankruptcy cases.

C.    On or about January 17, 2023, the United States Trustee appointed the Committees.

D.    Aftershock is in the comic creation and publishing business, and RGTV is a film/television production and distribution platform.

E.    ARC is the Debtors' senior secured lender. The Debtors originally borrowed money from the Lender in March 2020 in the principal amount of $11,090,000 (the "Loan") pursuant to the "*Second Amended And Restated Credit And Security Agreement*" (the "Loan Agreement," and collectively with the other loan documents, the "Loan Documents"). ARC and the Debtors entered into a subsequent agreement that provided the Debtors with a line of credit in the amount of $2,392,000.  Pursuant to the Loan Documents, the Debtors are jointly and severally liable to repay the Loan, and Lender asserts that the Loan is secured by all, or substantially all, of the Debtors' assets.  ARC filed duplicate proofs of claims in each of the Debtors' bankruptcy cases in the amount of $15,651,159.02 as secured claims.  (Case No. 22-11457-MB, Claim 9-1; Case No. 22-bk-11456-MB, Claim 24-1).

F.    On December 21, 2022, the Debtors filed the "*Emergency Motion For Entry Of An Interim Order: (I) Authorizing The Debtors To Use Cash Collateral On An Interim Basis Pending A Final Hearing; (II) Granting Adequate Protection Replacement Liens; (III) Scheduling A Final*

*Hearing; And (IV) Granting Related Relief*" [Doc. No. 12] (the "Cash Collateral Motion").

G.      The Court previously held an initial hearing, and an evidentiary hearing (the "Evidentiary Hearing") on the Debtors' Cash Collateral Motion seeking interim use of the Senior Secured Lender's "cash collateral" as that term is defined in § 363(a) of the Bankruptcy Code (the "Cash Collateral"). At the conclusion of the Evidentiary Hearing, on January 24, 2023, the Court entered the *Interim Order Re: Debtors' Emergency Motion For Entry Of An Interim Order: (I) Authorizing The Debtors To Use Cash Collateral On An Interim Basis Pending A Final Hearing; (II) Granting Adequate Protection Replacement Liens; (III) Scheduling A Final Hearing; And (IV) Granting Related Relief* [Doc. No. 94] permitting the Debtors to use Cash Collateral on an interim basis.

H.      On April 5 and 6, 2023, the Court conducted another hearing on the Debtors' continued use of Cash Collateral (the "Continued Hearing").  After the Continued Hearing, the Court entered the *Second Interim Order Re: Debtors' Emergency Motion For Entry Of An Interim Order: (I) Authorizing The Debtors To Use Cash Collateral On An Interim Basis Pending A Final Hearing; (II) Granting Adequate Protection Replacement; (III) Scheduling A Final Hearing; And (IV) Granting Related Relief In Support Thereof* [Dkt. No. 174] allowing the Debtors to continue using Cash Collateral until May 31, 2023.

I.       On May 19, 2023, the Debtors filed their *Submission in Support of "Debtors' Emergency Motion for Entry of an Interim Order: (I) Authorizing Debtor[s] to Use Cash Collateral on an Interim Basis Pending a Final Hearing; (II) Granting Adequate Protection Replacement Liens; (III) Scheduling a Final Hearing; and (IV) Granting Related Relief"* [Dkt. No. 213] (the "Submission In Support").

J.      Another hearing on the Debtors' Cash Collateral Motion based on the Submission in Support is calendared for June 7, 2023, at 10:00 a.m.

K.      This Stipulation has been negotiated at arms-length and is consented to by all parties in good faith, and good cause exists for the entry of an order approving this Stipulation.

## II.    **STIPULATION**

Based on the foregoing, the parties stipulate that:

1.    Subject to the terms below, the Debtors are authorized to continue using Cash Collateral through the week of July 28, 2023, in accordance with the proposed budget attached to the Submission In Support.  For purposes of settlement under the terms hereof only, and in full satisfaction and settlement of the claims of ARC against the Debtors and Jon Kramer pursuant to Jon Kramer's personal guaranties, the Debtors shall pay ARC on account of its asserted secured claim, the amount of $14,000,000.00 (the "Settlement Payment") by June 30, 2023 ("Settlement Payment Deadline").  Prior thereto and as a condition hereof, the Debtors and Committees shall file a motion pursuant to Bankruptcy Rule 9019 and obtain an order approving the terms of paragraphs 1 and 2 of this Stipulation.

2.    Upon the Debtors' payment of the Settlement Payment by the Settlement Payment Deadline, ARC shall forever release any and all claims, actions, rights, remedies and defenses that it may have against the Debtors, the Debtors' estates, the Committees and Jon Kramer arising from the Loan Documents and its asserted liens and payment due from the Debtors and/or Jon Kramer; and the Debtors, the Committees and Jon Kramer shall forever release any and all claims, actions, rights, remedies and defenses that they may have against ARC arising from the Loan Documents and ARC's asserted liens and payment due from Debtors and Jon Kramer. As a condition hereof, the Debtors, Committees, ARC and Kramer shall execute a release agreement in form and content acceptable to the parties and following receipt of the Settlement Payment, ARC shall forthwith dismiss the lawsuit currently pending in Los Angeles Superior Court, captioned *Access Road Capital, LLC v. Rive Gauche Television, Aftershock Comics, LLC, Jonathan M. Kramer, et al*., Case No. 22STCV33196, with each party to bear its own legal fees and costs.

3.    If the Debtors do not timely pay the Settlement Payment by the Settlement Payment Deadline, which deadline can be extended at ARC's election for up to 15 days provided a per diem payment of $2800 is added to the Settlement Payment, then:

a.    there shall be no settlement and no releases and all parties to this Stipulation shall reserve their claims, actions, rights, remedies and defenses as if no settlement were

negotiated;

  b. the Debtors' use of Cash Collateral to fund operations shall cease immediately, except as may be necessary to comply with any applicable state or federal law with respect to such cessation of business operations;

  c. Cash Collateral shall only be used in such limited amount and for such limited time as then agreed upon by the parties or ordered by the Court for the sole purpose of reasonably funding an auction sale of the Debtors' assets; and

  d. the deadline for the Committees to challenge ARC's secured claims is extended to August 30, 2023.

4. The Cash Collateral hearing scheduled for June 7, 2023 shall be continued to June 22, 2023, or such date as soon thereafter that the Court is available, for the purpose of determining (i) the status of the Debtors' ability to pay the Settlement Payment by the Settlement Payment Deadline, and (ii) absent an agreement among the parties with respect thereto, the amount of Cash Collateral reasonably necessary to be utilized to fund an auction sale of the Debtors' assets, the deadline for such auction sale should the Settlement Payment not be made by the Settlement Payment Deadline, and the allocation and disposition of any proceeds from the sale of the Debtors' assets.

5. In light of the Settlement Payment Deadline, the Debtors' motion to approve the investment or funding transaction that will provide the Debtors with sufficient funds for, among other things, the ability to pay the Settlement Payment by the Settlement Payment Deadline, and a motion to approve the compromise referenced herein, may be heard on an emergency or expedited basis subject to the Court's availability.

6. All parties reserve their rights with respect to any motion filed by the Debtors for approval of an investment or funding transaction that serves as the basis for the Settlement Payment, provided, however, that ARC may not object to any such motion to the extent it provides for a payment in accordance with the terms hereof.

1 | DATED:  June 6, 2023                    SKLAR KIRSH, LLP

2

3                                           By:  _____/s/ Robbin L. Itkin_____

4                                               ROBBIN L. ITKIN
                                                TIMOTHY MCMAHON
5                                               Attorneys for Official Committees of Unsecured
                                                Creditors for Rive Gauche Television and
6                                               AfterShock Comics, LLC

7 | DATED:  June ___, 2023                  LEVENE, NEALE, BENDER, YOO
8                                           & GOLUBCHIK L.L.P.

9

10                                          By:  _____

11                                              DAVID L. NEALE
                                                JEFFREY S. KWONG
12                                              Attorneys for Debtors and Debtors in Possession

13

14 | DATED:  June ___, 2023                 GREENBERG TRAURIG LLP

15

16

17                                          By:  _____

18                                              HOWARD STEINBERG
                                                Attorneys for Access Road Capital, LLC

19

20

21

22

23

24

25

26

27

28

1  DATED: June ___, 2023                  SKLAR KIRSH, LLP

2

3                                          By: _____

4                                              ROBBIN L. ITKIN
                                               TIMOTHY MCMAHON
5                                              Attorneys for Official Committees of Unsecured
                                               Creditors for Rive Gauche Television and
6                                              AfterShock Comics, LLC

7  DATED: June _6__, 2023                  LEVENE, NEALE, BENDER, YOO
                                           & GOLUBCHIK L.L.P.
8

9

10                                         By: _____

11                                             DAVID L. NEALE
                                               JEFFREY S. KWONG
12                                             Attorneys for Debtors and Debtors in Possession

13

14  DATED: June ___, 2023                  GREENBERG TRAURIG LLP

15

16

17                                         By: _____

                                               HOWARD STEINBERG
18                                             Attorneys for Access Road Capital, LLC

19

20

21

22

23

24

25

26

27

28

DATED: June ___, 2023                    SKLAR KIRSH, LLP


                                         By: _____
                                             ROBBIN L. ITKIN
                                             TIMOTHY MCMAHON
                                             Attorneys for Official Committees of Unsecured
                                             Creditors for Rive Gauche Television and
                                             AfterShock Comics, LLC

DATED: June ___, 2023                    LEVENE, NEALE, BENDER, YOO
                                         & GOLUBCHIK L.L.P.


                                         By: _____
                                             DAVID L. NEALE
                                             JEFFREY S. KWONG
                                             Attorneys for Debtors and Debtors in Possession


DATED: June **6**, 2023                  GREENBERG TRAURIG LLP


                                         By: _____
                                             HOWARD STEINBERG
                                             Attorneys for Access Road Capital, LLC

4886-8235-5048.2
*ACTIVE 687984196v2*

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

1880 Century Park East, Suite 300, Los Angeles, California 90067

A true and correct copy of the foregoing document entitled (*specify*) **STIPULATION AMONG DEBTORS, OFFICIAL COMMITTEES OF UNSECURED CREDITORS AND ACCESS ROAD CAPITAL, LLC REGARDING SETTLEMENT WITH ACCESS ROAD AND DEBTORS' CONTINUED USE OF CASH COLLATERAL** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **June 6, 2023,** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY (state method for each person or entity served)**:  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **June 7, 2023, ,  ,** I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

(VIA MESSENGER DELIVERY ON 6/7/23)
Honorable Martin Barash
United States Bankruptcy Court
Central District of California
21041 Burbank Boulevard, Suite 342 / Courtroom 303
Woodland Hills, CA 91367

☒ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| June 6, 2023    MAYRA DURAN | /s/ Mayra Duran |
|---|---|
| *Date*            *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

Keith Patrick Banner on behalf of Interested Party Courtesy NEF
kbanner@greenbergglusker.com, vafanasieva@greenbergglusker.com;calendar@greenbergglusker.com

Sara Chenetz on behalf of Interested Party Courtesy NEF
schenetz@perkinscoie.com, docketLA@perkinscoie.com;cmallahi@perkinscoie.com;chenetz-sara-perkins-coie-8670@ecf.pacerpro.com

Russell Clementson on behalf of U.S. Trustee United States Trustee (SV)
russell.clementson@usdoj.gov

Tracy Green on behalf of Creditor Arancia Studio
tgreen@fennemorelaw.com, ecfbankruptcy@fennemorelaw.com

Robbin L. Itkin on behalf of Creditor Committee Official Committees of Unsecured Creditors for Rive Gauche Television and AfterShock Comics, LLC
ritkin@sklarkirsh.com, mduran@sklarkirsh.com;KFRAZIER@SKLARKIRSH.COM

Michael S Kogan on behalf of Creditor Dog Whisper Productions, LLC
mkogan@koganlawfirm.com

Michael S Kogan on behalf of Creditor Michael Kogan Law Firm, APC
mkogan@koganlawfirm.com

Michael S Kogan on behalf of Interested Party Courtesy NEF
mkogan@koganlawfirm.com

Jeffrey S Kwong on behalf of Debtor AfterShock Comics, LLC
jsk@lnbyg.com, jsk@ecf.inforuptcy.com

Jeffrey S Kwong on behalf of Debtor Rive Gauche Television
jsk@lnbyg.com, jsk@ecf.inforuptcy.com

Timothy McMahon, Jr on behalf of Creditor Committee Official Committees of Unsecured Creditors for Rive Gauche Television and AfterShock Comics, LLC
tmcmahon@sklarkirsh.com, mduran@sklarkirsh.com

Timothy McMahon, Jr on behalf of Interested Party Courtesy NEF
tmcmahon@sklarkirsh.com, mduran@sklarkirsh.com

David L. Neale on behalf of Debtor AfterShock Comics, LLC
dln@lnbyg.com

David L. Neale on behalf of Debtor Rive Gauche Television
dln@lnbyg.com

Howard Steinberg on behalf of Creditor Access Road Capital, LLC
steinbergh@gtlaw.com, pearsallt@gtlaw.com;howard-steinberg-6096@ecf.pacerpro.com

United States Trustee (SV)
ustpregion16.wh.ecf@usdoj.gov

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                    F 9013-3.1.PROOF.SERVICE

**3. SERVED BY EMAIL (Served Via Email 6/6/23)**

| Committee Members | |
|---|---|
| Martin Katz<br>Lower Canada Productions Inc.<br>Email: martin.katz@prosperopictures.com | Committee Chair<br>Rive Gauche Committee |
| David Frank<br>Indigo Films Entertainment Group<br>Email:  dfrank@indigofilms.com | Committee Member<br>Rive Gauche Committee |
| Brendan Pollitz<br>OTTERA, INC.<br>Email: brendan@ottera.tv | Committee Member<br>Rive Gauche Committee |
| Beverly Rice<br>Jupiter Entertainment<br>Email: beverly@jupiterent.com | Committee Member<br>Rive Gauche Committee |
| Simon Fawcett<br>AS COMICS LTD.<br>Email: Simon@atlanticscreengroup.com | Committee Member<br>AfterShock Committee |
| Jean-Pierre Rose<br>IMPRIMERIE L'EMPREINTE INC.<br>Email:  jprose@empreinte.qc.ca | Committee Member<br>AfterShock Committee |
| Thomas Cho<br>TRI VISION INTERNATIONAL<br>Email : thomascho.trivision@gmail.com | Committee Member<br>AfterShock Committee |
| Jonny Gordon<br>CBS AMC NETWORKS UK CHANNELS<br>PARTNERSHIP<br>Email :  jonny.gordon@amcnetworks.com | Committee Member<br>Rive Gauche Committee |

| Dundon Advisers, LLC | |
|---|---|
| Peter Hurwitz<br>Email: ph@dundon.com<br><br>Michael Whalen<br>Email: mw@dundon.com<br><br>Lee Rooney<br>Email: lr@dundon.com | Proposed Financial Advisors for the Official<br>Committees of Unsecured Creditors for Rive<br>Gauche Television and AfterShock Comics, LLC |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                 **F 9013-3.1.PROOF.SERVICE**

# EXHIBIT "3"

1  | **SKLAR KIRSH, LLP**
   | Robbin L. Itkin (SBN 117105)
2  | *ritkin@sklarkirsh.com*
   | Kelly Frazier (SBN 212527)
3  | *kfrazier@sklarkirsh.com*
   | Timothy K. McMahon (SBN 342843)
4  | *tmcmahon@sklarkirsh.com*
   | 1880 Century Park East, Suite 300
5  | Los Angeles, California 90067
   | Telephone: (310) 845-6416
6  | Facsimile: (310) 929-4469

FILED & ENTERED

JUN 12 2023

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY Pgarcia    DEPUTY CLERK

7  | Attorneys for Official Committees of Unsecured
   | Creditors for Rive Gauche Television and
8  | AfterShock Comics, LLC

9  | **UNITED STATES BANKRUPTCY COURT**

10 | **CENTRAL DISTRICT OF CALIFORNIA**

11 | **SAN FERNANDO VALLEY DIVISION**

12 | In re

13 | AFTERSHOCK COMICS, LLC, a California
   | limited liability company,
14 |
   |        Debtor and Debtor in Possession.
15 |

16 | In re

17 | RIVE GAUCHE TELEVISION, a California
   | corporation,
18 |
   |        Debtor and Debtor in Possession.
19 |

20 |

21 | ☒  Affects both Debtors
   | ☐  Affects Aftershock Comics, LLC only
22 | ☐  Affects Rive Gauche Television only

23 |

24 |

Case No. 1:22-bk-11456-MB

Jointly administered with:
1:22-bk-11457-MB
(Rive Gauche Television)

Chapter 11

**ORDER GRANTING STIPULATION
AMONG DEBTORS, OFFICIAL
COMMITTEES OF UNSECURED
CREDITORS AND ACCESS ROAD
CAPITAL, LLC REGARDING
SETTLEMENT WITH ACCESS ROAD
AND DEBTORS' CONTINUED USE OF
CASH COLLATERAL**

Date:     June 7, 2023
Time:     10:00 am
Crtrm.:   303
          21041 Burbank Blvd.
          Woodland Hills, CA 91367

25 |        The Court having reviewed and considered the "*Stipulation Among Debtors, Official*

26 | *Committees Of Unsecured Creditors And Access Road Capital, LLC Regarding Settlement With*

27 | *Access Road And Debtors' Continued Use Of Cash Collateral*" ("Stipulation") between AfterShock

28 | Comics, LLC and Rive Gauche Television, the Official Committees of Unsecured Creditors and

1    Access Road Capital, LLC filed on June 6, 2023 [Docket No. 230], and the record in these bankruptcy

2    cases, and good cause appearing therefor,

3         **IT IS HEREBY ORDERED:**

4         1)    The Stipulation is approved in its entirety.

5         2)    The hearing for the *Debtors' Emergency Motion for Entry of Interim Order: (I)*

6    *Authorizing Debtor[s] to Use Cash Collateral on an Interim Basis Pending a Final Hearing; (II)*

7    *Granting Adequate Protection Replacement Liens; (III) Scheduling a Final Hearing; and  (IV)*

8    *Granting Related Relief* (the "Cash Collateral Motion") [Dkt. No. 12] is continued to June 21, 2023,

9    at 9:00 a.m. PST.

10        3)    The log in information for the continued hearing on the Cash Collateral Motion can

11   be found below:

12            Video/audio web address: https://cacb.zoomgov.com/j/1611488543

13            ZoomGov meeting number: 161 148 8543

14            Password: 037066

15            Telephone conference lines: 1 (669) 254 5252 or 1 (646) 828 7666

16                                                    ###

17

18

19

20

21

22

23   Date: June 12, 2023

24                                        Martin R Barash
                                          United States Bankruptcy Judge

25

26

27

28

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:  2818 La Cienega Avenue, Los Angeles, CA 90034.

A true and correct copy of the foregoing documents entitled **DEBTORS' EMERGENCY MOTION FOR ENTRY OF AN ORDER ENFORCING THE "ORDER GRANTING STIPULATION AMONG DEBTORS, OFFICIAL COMMITTEES OF UNSECURED CREDITORS AND ACCESS ROAD CAPITAL, LLC REGARDING SETTLEMENT WITH ACCESS ROAD AND DEBTORS' CONTINUED USE OF CASH COLLATERAL"** will be served or were served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  <u>TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)</u>**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **May 21, 2024** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Jessica L Bagdanov    jbagdanov@bg.law, ecf@bg.law**
- **Keith Patrick Banner    kbanner@greenbergglusker.com, calendar@greenbergglusker.com;cmillerwatkins@greenbergglusker.com**
- **Sara Chenetz    schenetz@perkinscoie.com, docketLA@perkinscoie.com;cmallahi@perkinscoie.com;jkulow@perkinscoie.com;chenetz-sara-perkins-coie-8670@ecf.pacerpro.com;rleibowitz@perkinscoie.com**
- **Russell Clementson    russell.clementson@usdoj.gov**
- **Alan W Forsley    alan.forsley@flpllp.com, awf@fkllawfirm.com,awf@fl-lawyers.net,addy@flpllp.com**
- **Evelina Gentry    evelina.gentry@akerman.com, rob.diwa@akerman.com**
- **Tracy Green    tgreen@fennemorelaw.com, ecfbankruptcy@fennemorelaw.com**
- **Robbin L. Itkin    ritkin@sklarkirsh.com, mduran@sklarkirsh.com;KFRAZIER@SKLARKIRSH.COM**
- **Michael S Kogan    mkogan@koganlawfirm.com**
- **Jeffrey S Kwong    jsk@lnbyg.com, jsk@ecf.inforuptcy.com**
- **Timothy McMahon    tmcmahon@sklarkirsh.com, mduran@sklarkirsh.com**
- **David L. Neale    dln@lnbyg.com**
- **Howard Steinberg    steinbergh@gtlaw.com, pearsallt@gtlaw.com;NEF-BK@gtlaw.com;howard-steinberg-6096@ecf.pacerpro.com**
- **United States Trustee (SV)    ustpregion16.wh.ecf@usdoj.gov**

**2.  <u>SERVED BY UNITED STATES MAIL</u>**:
On **May 21, 2024,** I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  <u>SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL</u>** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **May 21, 2024** I will serve the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

1

I declare under penalty of perjury under the laws of the United States that the foregoing is true and
2   correct.

3
| May 21, 2024 | Lisa Masse | /s/ Lisa Masse |
|---|---|---|
| Date | Printed Name | Signature |

4
This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

5   *June 2012*                                                                      **F 9013-3.1.PROOF.SERVICE**

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2