Michael S. Kogan, Esq. (SBN 128500)
**KOGAN LAW FIRM, APC**
11500 W. Olympic Blvd., Suite 400
Los Angeles, California 90064
Telephone (310) 954-1690
mkogan@koganlawfirm.com

Attorneys for Dog Whisperer Productions, LLC

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re AFTERSHOCK COMICS, LLC,<br><br>　　　　Debtor.<br><br>*Jointly Administered with*<br><br>In re RIVE GAUCHE TELEVISION,<br><br>　　　　Debtor.<br><br>☒ *Affects both Debtors*<br>☐ *Applied only to AfterShock Comics, LLC*<br>☐ *Applies only to Rive Gauche Television* | Case No. 1:22-bk-11456-MB<br><br>Chapter 11<br><br>(Jointly Administered with 1:22-bk-11457-MB)<br><br>**OBJECTION TO DEBTOR'S PROPOSED DISCLOSURE STATEMENT**<br><br>Date:　April 8, 2025<br>Time:　1:30 p.m.<br>Place:　Courtroom 303 |

OBJECTION TO DEBTOR'S PROPOSED DISCLOSURE STATEMENT

Main Document    Page 2 of 12

# I.
# INTRODUCTION

Dog Whisperer Productions, LLC ("**DWP**" or "**Dog Whisperer**"), a creditor herein, hereby submits its objection to the Proposed Disclosure Statement filed by Rive Gauche Television ("**Rive Gauche**") and AfterShock Comics, LLC ("**AfterShock**") (collectively, the "**Debtors**") in support of the Debtor's Joint Combined Disclosure Statement and Chapter 11 Plan of Reorganization Dated March 14, 2025 (the "**Disclosure Statement**"). As analyzed in detail below, the Disclosure Statement should not be approved because:

1. The Disclosure Statement fails to provide adequate information as required by 11 U.S.C. § 1125(b);

2. The adequacy of disclosure and transparency are of heightened importance in this case, because the Debtors are using the construct of a joint plan in a barely-disguised ploy to exploit AfterShock's lack of creditors and income streams to "cram down" an unfair plan over the interests of creditors of Rive Gauche who has and will be responsible for a majority of the income generated in the Reorganized Debtor.[1] The issue is whether the Debtors have provided adequate information to the Court and to the entire creditor body, especially as the Debtors are in fact seeking to manipulate those less-active creditors into voting for a plan that only seeks to benefit the Debtors' insiders, professionals and ARC;

3. All creditors – not just those actively participating in these cases – are entitled to adequate information so they can make informed decisions on how to vote. This includes meaningful projections, a clear understanding of how the Plan of Reorganization ("**Plan**") is to be implemented, and a fair explanation of the alternatives that are available under the Code. The Debtors continue to fail to provide this necessary information. Accordingly, the Disclosure Statement should not be approved;

4. The Disclosure Statement and Plan are vague and do not provide creditors like Dog

---

[1] Defined terms are as defined in the Disclosure Statement unless other wise defined.

**OBJECTION TO DEBTOR'S PROPOSED DISCLOSURE STATEMENT**

Whisperer adequate time to determine if their agreements are being assumed or rejected or what the Reorganized Debtor plans to do with them and pay amounts due under the agreements;

5. Exhibit 8/9 of the Disclosure Statement has Dog Whisperers term ending at April 14, 2025 and makes no reference on how the Reorganized Debtor can assume or reject the agreement or what is to happen to a terminated agreement. It is logically inconsistent with the Bankruptcy Code to assume a terminated agreement, however the Disclosure Statement makes reference to the assumption of the terminated agreement of Dog Whisperer;

6. The Claim amount of Dog Whisperer is listed incorrectly as it was amended in both of the Debtors cases to $608,936 on December 2, 2024, not the $249,212 listed on Exhibits 2 & 3. This difference is significant, and can effect financial projections contained in the Disclosure Statement, and the Debtors should amend and determine the correct amount of claims. Further, the Debtors should indicate if any claims are disputed in the Disclosure Statement;

7. The provisions starting at page 66 in the Disclosure Statement concerning assumption or rejection are confusing. Moreover, the timelines set forth therein do not give creditors a real opportunity to determine their rights and how the Plan will affect them. In addition, the Debtor should be required to determine if their license agreements with creditors similar to Dog Whisperer are executory or not so that creditors can make informed decisions about the Plan and how to vote;

8. The definitions under section 1.30 – Content Creator Claims, or 1.65 – Post Petition Royalty Claims is unclear and the Debtors should be required to file schedules with the Disclosure Statement of those particular creditors, so that the creditors can determine if they fit in those groups. These groups receive different treatment under the Plan. In addition, the Debtors should be required to provide estimated amounts for each of those creditors so they can make informed decisions on whether to vote in favor or against the Plan.

OBJECTION TO DEBTOR'S PROPOSED DISCLOSURE STATEMENT                    -3-

9. The financial projections set forth in the Disclosure Statement (Slater Declaration – Exhibit 4) are stale as they were prepared in 2023. The Debtors should provide more resent financial information. For example, financial performance since the filing of the bankruptcy cases.

## I.

## THE DISCLOSURE STATEMENT DOES NOT CONTAIN ADEQUATE INFORMATION

Before soliciting acceptances of a plan of reorganization, the debtor must distribute a disclosure statement approved by the Court as containing adequate information. 11 U.S.C. § 1125(b). Adequate information is defined as information of a kind, and in sufficient detail, that would enable a hypothetical reasonable investor to make an informed judgment about the plan. 11 U.S.C. § 1125(a)(1); see In re Northwest Recreational Activities. Inc., 8 B.R. 10, 11 (Bankr. N.D. Ga. 1980).

What constitutes adequate information is specific to the facts of a case and varies from proceeding to proceeding. S. Rep. No. 989, 95th Cong., 2nd Sess. 121, reprinted in 1978 U.S. Code Cong. & Ad. News 5787, 5907; In re Egan, 33 B.R. 672, 675 (Bankr. N.D. Ill. (1983)). Nevertheless, most courts agree that relevant information material to an informed judgment includes, inter alia: (1) the events which led to the filing of the bankruptcy petition; (2) a description of the available assets and their value; (3) the present condition of the debtor; (4) the anticipated future performance of the debtor; (5) the debtor's post-confirmation operations and proposed management strategies; (6) the accounting method utilized to produce financial information and the name of the accountants responsible for such information; (7) all financial information, data, valuation or projections relevant to a creditor's decision to reject or accept the plan; (8) the risks inherent in the plan; (9) available alternatives to the plan and (10) the source of all information provided. In re Metrocraft Publishing Services, Inc., 39 B.R. 567, 568 (Bankr. N.D. Ga. 1984); In re A.C. Williams Co., 25 B.R. 173, 176 (Bankr. N.D. Ohio 1982); In re William F. Gable Co., 10 B.R. 248, 249-250 (Bankr. N.D. W.Va. 1981); In re Adena Mortgage Bankers. Inc., 14 B.R. 29, 30-31 (Bankr. N.D. Ga. 1981); In re Inforex, 2 C.B.C. 2d 612, 613-614

(Bankr. D. Mass. 1980).

The purpose of providing such information is to allow all parties voting on the plan an opportunity to evaluate its merits. In re Unichem Corp., 72 B.R. 95, 97 (Bankr. N.D. Ill. 1987); In re Ligon, 50 B.R. 127, 130 (Bankr. M.D. Tenn. 1985). For this reason, the information provided must be factual. In re Egan Corp., 33 B.R. 672, 676 (Bankr. N.D. Ill. 1983). Opinions in the form of appraisals and projections may be a necessary element of adequate disclosure. In re Reilly, 71 B.R. 132, 134 (Bankr. D. Montana 1987). But opinion is only appropriate if "in the form of a logical conclusion derived from clearly stated facts." In re Egan Corp., 33 B.R. 672, 676 (Bankr. N.D.Ill. 1983); In re East Redley Corp., 16 B.R. 429, 430 (Bankr. E.D. Pa. 1983). Disclosure statements filled with mere speculation and conclusory allegations should not be approved. In re Unichem Corp., 72 B.R. 95, 97-98 (Bankr. N.D. Ill. 1987); In re Lignon, 50 B.R. 127, 131 (Bankr. M.D. Tenn. 1985); In re Civitella, 14 B.R. 151, 152-153 (Bankr. E.D. Pa. 1981).

A disclosure statement should not be approved where the accompanying plan is so fatally flawed as to be unconfirmable. *See* In re Market Square Inn, Inc., 163 B.R. 64, 67 (Bankr. W.D. Pa. 1994); In re 266 Washington Associates, 141 B.R. 275 (Bankr. E.D.N.Y. 1992); In re Bjolmes Realty Trust, 134 B.R. 1000 (Bankr. D. Mass. 1991); In re Eastern Maine Elec. Cooperative, Inc., 125 B.R. 329 (Bankr. D. Me. 1991). The court in Eastern Maine Electrical Cooperative held:

> If the disclosure statement describes a plan that is so "fatally flawed" that confirmation is "impossible," the court should exercise its discretion to refuse to consider the adequacy of disclosures. Such an exercise of discretion is appropriate because undertaking the burden and expense of plan distribution and vote solicitation is unwise and inappropriate if the proposed plan could never legally be confirmed.

Eastern Main Elec., 125 B.R. at 333 (citations omitted). In its current form, the Plan cannot be confirmed.

The Plan and Disclosure Statement contain several inconsistencies and ambiguities. For instance, it is unclear how and when the Debtor is paying its creditors. The Disclosure Statement and Plan are confusing and ambiguous, and not clear on the payment scheme, and classification of various creditor classes. Due to the issues described above concerning the Disclosure Statement, it is a document that is hard to decipher. It does not enable the

OBJECTION TO DEBTOR'S PROPOSED DISCLOSURE STATEMENT                -5-

"hypothetical reasonable investor" to make an informed judgment about the Plan.

### A. The DWP Claim and Agreement.

The "Term" of the Agreement has expired and, **the ability of the Debtors to enter into new license agreements or to renew the Agreement has expired as well.**

As set forth in paragraph 4 of the Agreement, the "**Term**" of the Agreement was:

> The Term shall commence on the date of this Agreement (September 28, 2015) and continue for seven (7) years from complete Delivery and acceptance of all episodes of the Programs. Distributor (Rive Gauche) has the right to enter into agreements with that (sic.) have license terms that extend no more than three (3) years beyond the expiration of the seven (7) year period ("Licensing Period"). The Term shall include both the seven (7) year period and the three (3) year Licensing Period.

**Thus, the Initial Term of the Agreement (i.e., 7 years) expired by its own terms on September 27, 2022, save and except for the Licensing Period, which extends only to those territories in which Rive Gauche entered into license agreements during the seven-year term. Except for those licenses included within the Licensing Period, the term of the Distribution Period has expired. Moreover as set forth in the documents filed with the Disclosure Statement the agreement with Dog Whisperer is over on April 14, 2025, why are they included as an asset of the Debtors..**

Counsel for Rive Gauche has confirmed that Rive Gauche did not enter into license agreements during the Licensing Period. As set forth above, the Licensing Period is, therefore, not relevant to this matter.

Moreover, per paragraph 10 of the Agreement, Rive Gauche is required to obtain DWP's approval to close any new agreement such as the right to extend the Distribution Agreement. Per paragraph 13 of the Agreement, the "**Renewal Option**" had to be exercised six (6) months before the expiration of the 7 year term or September 28, 2022. **Such Renewal Option was never exercised by Rive Gauche, therefore the Agreement cannot be renewed**. It reads as follows:

> Distributor has the option to renew the Rights to the Programs and to the Previous Seasons under similar terms and conditions subject to good faith negotiations. Distributor's option must be exercised and written notification to Licensor must be received no later than six (6) months prior to the **expiration of this Agreement**. (emphasis added)

OBJECTION TO DEBTOR'S PROPOSED DISCLOSURE STATEMENT                -6-

1
2     Rive Gauche failed to exercise its option to renew its Rights to the Agreement by
3 providing written notification to, and received by, Licensor (DWP) no later than six (6) months
4 prior to the expiration of the DWP Agreement.
5     Rive Gauche's Schedule of Assets and Liabilities (the "**Schedules**") and Plan lists the
6 Agreement with DWP[2] in its Schedule G: Executory Contracts and Unexpired Leases attachment,
7 and confirms the "Distribution End Date" of the DWP Agreement as of April 14, 2022, and "Sales
8 License Play Off Period (License Terms with broadcasters are allowed to extend through this
9 date)" of April 14, 2025, only for licenses made by Rive Gauche during the Term. The Schedules
10 indicate that Rive Gauche is "[i]n process of renewing. Rights have been verbally extended by
11 producers while negotiating an extension", which confirms the option was not properly exercised
12 by Rive Gauche as required by Section 13 of the Agreement.

### Inadequate Financial Information

14     The importance of accurate and complete financial information regarding the Debtors and
15 their ability to perform under the Plan cannot be overstated. The Debtors seek to restructure
16 millions of dollars of secured and unsecured debt based solely on the hope that (a) financial
17 performance improves so quickly, and so significantly, that it will be able to generate
18 100% of the projected Payments under the Plan, and (b) AfterShock, which had *never*
19 realized a profit, under the Plan, suddenly starts to generate the millions of dollars it needs to
20 meet its financial obligations under the Plan. The Disclosure Statement has not remedied the
21 problems as it continues to fail to provide any explanation or justification by which the average
22 creditor could gauge the likelihood of the Debtors hitting either of these benchmarks, for creditors
23 to make an informed decision on the Plan, the Disclosure Statement must include much more
24 robust financial information so that creditors can determine the likelihood that the Debtors
25 will be able to generate sufficient cash to fund the Plan and, based on that determination, vote to
26 accept.

---

[2]

B.   **The Disclosure Statement Fails to Provide Adequate Information.**

A court may not approve a disclosure statement submitted in connection with a proposed plan of reorganization unless it contains "adequate information." 11 U.S.C. § 1125(b). Information contained in a Disclosure Statement is "adequate" only when it is "of a kind, and in sufficient detail ...that would enable hypothetical reasonable investor ...to make an informed judgment about the Plan..." 11 U.S.C. § 1125(a)(1). Official Committee of Unsecured Creditors v. H.B. Michelson (In re H.B. Michelson), 141 B.R. 715, 718 (Bankr. E.D. Cal. 1992). The purpose of requiring an approved disclosure statement for a proposed Chapter 11 plan is to ensure that all claim holders are provided with adequate information to enable them to make an informed judgment regarding whether to vote for or against a reorganization plan. 11 U.S.C. §1125(b); In re Clamp-All Com., 233 B.R. 198 (Bankr. D. Mass. 1999); See also In re Duratech Industries, Inc., 241 B.R. 291 (Bankr. E.D.N.Y. 1999).

The Disclosure Statement fails to include a detailed estimate or description of administrative and post-confirmation expenses, including attorneys' and accountants' fees. This information is critical to an evaluation of the Plan, particularly given the enormous amount of potential professional fees in this case. *See, e.g.* Cardinal Congregate, 121 B.R. at 767 ("[T]he Disclosure Statement should provide a more detailed estimation of allowable administrative expenses. This should include, without limitation, all estimated fees for attorneys and accountants."); In re Olive Street Inv., 117 B.R. 488, 491 (Bankr. E.D. Mo. 1990) (Court denied approval of disclosure statement where it "failed to provide sufficient information concerning the amount of administrative expenses.").

The Disclosure Statement lacks information regarding the value of the Debtors' assets. Accordingly, creditors are unable to determine whether the Plan is an attractive alternative for recovery on their claims.

## II.

## CONCLUSION

The Debtor's submission of the Plan is simply a last-ditch effort to nullify the effect of the Debtor's unsuccessful strategy to effectuate a sale of the business, and ARC's reluctance to

foreclose.

Aside from the Disclosure Statement's being impossible to approve due to the Plan's fatal, yet obvious, substantive defects, the actual disclosures contained in the Disclosure Statement are so sparse and uninformative that no reasonable lay person could make an informed judgment on the Plan. As such the Disclosure Statement must not be approved.

DATED: April 1, 2025

Kogan Law Firm, APC
Michael S. Kogan

By: /s/Michael S. Kogan
Michael S. Kogan
Attorneys for Dog Whisperer, LLC

| In re: AFTERSHOCK COMICS, LLC<br>And jointly administered with RIVE GAUCHE TELEVISION<br>Debtor(s). | CHAPTER: 11<br>CASE NUMBER: 1:22-bk-11456-MB WITH1:22-bk-11457-MB |
|---|---|

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 11500 W. Olympic Blvd., Suite 400, Los Angeles, California 90064

A true and correct copy of the foregoing document described as **OBJECTION TO DEBTOR'S PROPOSED DISCLOSURE STATEMENT**
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **April 1, 2025**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒ Service information continued on attached page

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served):
On **April 1, 2025,** I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on_____ I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| April 1, 2025 | Pamela Lynn | /s/Pamela Lynn |
|---|---|---|
| Date | Type Name | Signature |

| In re: AFTERSHOCK COMICS, LLC<br>And jointly administrated with RIVE GAUCHE TELEVISION<br><br>Debtor(s). | CHAPTER: 11<br>CASE NUMBER: : 1:22-bk-11456-MB WITH 1:22-bk-11457-MB |
|---|---|

ADDITIONAL SERVICE INFORMATION (if needed):

I. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")**

Keith Patrick Banner on behalf of Interested Party Courtesy NEF
kbanner@greenbergglusker.com,
vafanasieva@greenbergglusker.com;calendar@greenbergglusker.com

Sara Chenetz on behalf of Interested Party Courtesy NEF
schenetz@perkinscoie.com, docketLA@perkinscoie.com;cmallahi@perkinscoie.com;chenetz-sara-perkins-coie-8670@ecf.pacerpro.com

Russell Clementson on behalf of U.S. Trustee United States Trustee (SV)
russell.clementson@usdoj.gov

Tracy Green on behalf of Creditor Arancia Studio
tgreen@fennemorelaw.com, ecfbankruptcy@fennemorelaw.com

Evelina Gentry on behalf of Creditor Sandton Credit Solutions Master Fund V, LP
evelina.gentry@akerman.com, rob.diwa@akerman.com

Robbin L. Itkin on behalf of Creditor Committee Official Committees of Unsecured Creditors for Rive Gauche Television and AfterShock Comics, LLC
ritkin@sklarkirsh.com, mduran@sklarkirsh.com

Michael S Kogan on behalf of Creditor Michael Kogan Law Firm, APC
mkogan@koganlawfirm.com

Michael S Kogan on behalf of Interested Party Courtesy NEF
mkogan@koganlawfirm.com

Jeffrey S Kwong on behalf of Debtor AfterShock Comics, LLC
jsk@lnbyg.com, jsk@ecf.inforuptcy.com

Jeffrey S Kwong on behalf of Debtor Rive Gauche Television
jsk@lnbyg.com, jsk@ecf.inforuptcy.com

Timothy McMahon, Jr on behalf of Interested Party Courtesy NEF
tmcmahon@sklarkirsh.com, mduran@sklarkirsh.com

David L. Neale on behalf of Debtor AfterShock Comics, LLC
dln@lnbyg.com

David L. Neale on behalf of Debtor Rive Gauche Television
dln@lnbyg.com

Howard Steinberg on behalf of Creditor Access Road Capital, LLC
steinbergh@gtlaw.com, pearsallt@gtlaw.com;howard-steinberg-6096@ecf.pacerpro.com

United States Trustee (SV)
ustpregion16.wh.ecf@usdoj.gov

II. **SERVED BY U.S. MAIL OR OVERNIGHT MAIL** - VIA U.S. MAIL

Hon. Martin Barash
U.S. Bankruptcy Court
21041 Burbank Blvd.. #342
Woodland Hills, CA 91367