1

**PETER C. ANDERSON**
**UNITED STATES TRUSTEE**
Eryk R. Escobar, Bar No. 281904

2

Assistant United States Trustee
Russell Clementson, Bar No. 143284

3

Trial Attorney
**OFFICE OF THE UNITED STATES TRUSTEE**

4

915 Wilshire Blvd., Suite 1850
Los Angeles, California 90017

5

Telephone: (213) 894-6811
E-mail: eryk.r.escobar@usdoj.gov

6

7

8

**UNITED STATES BANKRUPTCY COURT**

9

**CENTRAL DISTRICT OF CALIFORNIA**

10

**SAN FERNANDO VALLEY DIVISION**

11

12    In re                                                    Lead Case No. 1:22-bk-11456-MB

13    **AFTERSHOCK COMICS, LLC, a**                            Jointly Administered with 1:22-bk-11457-MB

14    **California limited liability company,**                Chapter 11 Cases

15              Debtor and Debtor in Possession.               **UNITED STATES TRUSTEE'S**

16                                                             **OBJECTION TO PLAN PROPONENTS'**
                                                               **JOINT COMBINED DISCLOSURE**

17    _____                   **STATEMENT AND CHAPTER 11 PLAN**
                                                               **OF REORGANIZATION DATED MARCH**

18    **RIVE GAUCHE TELEVISION, a**                            **14, 2025**

19    **California corporation,**                              Date:    April 8, 2025

20              Debtor and Debtor in Possession.               Time:    1:30 p.m.
                                                               Ctrm:    303

21                                                                      21041 Burbank Blvd.
                                                                        Woodland Hills, CA 91367

22    _____

23    ■ Affects both Debtors

24    □ Affects AfterShock Comics, LLC only

25    □ Affects Rive Gauche Television only

26

27

28

**TABLE OF CONTENTS**

A.  THE DS AND PLAN . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

B.  ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

    1.  The Release Clause is Impermissible Because it Incorporates an Opt Out Procedure and Treats Silence as Acceptance of the . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

        a.  State Contract Law Applies, Not Federal Law . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

        b.  Under State Law, Silence is Not Acceptance . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

        c.  Voting for a Plan Without Opting Out Cannot Establish Consent . . . . . . . . . . .  13

        d.  Opt-out procedures cannot be imposed based on procedural default theory . . . .  17

    2.  The Exculpation Clause is Impermissible under Ninth Circuit Precedent . . . . . . . . . . .  18

        a.  The Exculpation Clause is overbroad because it includes entities not entitled to exculpation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

        b.  The Exculpation Clause is overbroad because it is not limited to the period between the Petition Date and the Effective Date . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  21

    3.  Legal Malpractice Should be Excepted from the Exculpation Clause and Paragraph B Should be Stricken . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22

C.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  23

**TABLE OF AUTHORITIES**

1

2      **Cases**

3
*Blixseth v. Credit Suisse*,
    961 F.3d 1074 (9th Cir. 2020) ........................................................ 14, 18-19, 21-22

4

5
*Butner v. United States*,
    440 U.S. 48 (1979) ........................................................................................ 9

6
*C9 Ventures v. SVC-W., L.P.*,
    202 Cal. App. 4th 1483 (2012) ................................................................. 11-12

7

8
*De La Fuente v. Wells Fargo Bank, N.A. (In re* De La Fuente*)*,
    409 B.R. 842 (Bankr. S.D. Tex. 2009) ........................................................ 9

9
*Elfar v. Wilmington Trust, N.A.*,
    No. 20-0273, 2020 WL 7074609 (E.D. Cal. Dec. 3, 2020) ................................ 12

10

11
*Harrington v. Purdue Pharma L.P.*,
    603 U.S. 204 (2024) ........................................................... 8, 9, 10, 17

12
*Houston v. Holder (In re Omni Video*, Inc.*)*,
    60 F.3d 230 (5th Cir. 1995) ........................................................ 9

13

14
*In re Arrowmill Dev. Corp.*,
    211 B.R. 497 (Bankr. D.N.J. 1997) ........................................ 9, 10-11, 15

15

16
*In re Chassix Holdings*,
    Inc., 533 B.R. 64 (Bankr. S.D.N.Y. 2015) ...................................... 10

17
*In re Congoleum Corp.*,
    362 B.R. 167 (Bankr. D.N.J. 2007) ............................................ 15

18

19
*In re Dairy Mart Convenience Stores, Inc.*,
    351 F.3d 86 (2d Cir. 2003) ...................................................... 10

20
*In re Digital Impact, Inc.*,
    223 B.R. 1 (Bankr. N.D. Okla. 1998) ......................................... 15

21

22
*In re Fraser's Boiler Serv.*,
    593 B.R. 636 (Bankr. W.D. Wash. 2018) ................................... 20, 22

23
*In re Highland Capital Mgmt., L.P.*,
    48 F.4th 419 (5th Cir. 2022) ................................................ 19

24

25
*In re Health Diagnostic Lab. Inc.*,
    551 B.R. 218, 232 (Bankr. E.D. Va. 2016) .............................. 19

26
*In re Lavie Care Ctrs, LLC*,
    No. 24-55507-PMB, 2024 WL 4988600 (Bankr. N.D. Ga. 2024) .......... 11

27

28     *In re Mallinckrodt PLC*,

639 B.R. 837 (Bankr. D. Del. 2022) ............................................................... 20, 21

*In re PTL Holdings LLC*,
2011 WL 5509031 (Bankr. D. Del. Nov. 10, 2011) ................................... 19

*In re PWS Holding Corp.*,
228 F.3d 224 (3d Cir. 2000) ......................................................................... 18

*In re Smallhold, Inc.*,
No. 24-10267, 2024 WL 4296938 (Bankr. D. Del. Sept. 25, 2024) ..................... 10-12, 17-18

*In re SunEdison, Inc.*,
576 B.R. 453 (Bankr. S.D.N.Y. 2017) ................................................... 10, 17

*In re Tonawanda Coke Corp.*,
662 B.R. 220 (Bankr. W.D.N.Y. 2024) .............................................. 9, 11, 13, 16

*In re Washington Mutual, Inc.*,
442 B.R. 314 (Bankr. D. Del. 2011) ......................................................... 19, 20

*In re Yellowstone Mountain Club, LLC*,
460 B.R. 254 (Bankr. D. Mont. 2011) ....................................................... 19, 21

*Jacques v. Solomon & Solomon P.C.*,
886 F. Supp. 2d 429 (D. Del. 2012) ......................................................... 12, 13

*McGurn v. Bell Microproducts*, Inc.,
284 F.3d 86 (1st Cir. 2002) ............................................................................. 12

*Norcia v. Samsung Telecomms. America, LLC*,
845 F.3d 1279 (9th Cir. 2017) .............................................................. 13-15, 17

*Patterson v. Mahwah Bergen Retail Grp., Inc.*,
636 B.R. 641 (E.D. Va. 2022) .................................................... 10, 12-13, 19

*Railroad Mgmt. Co., L.L.C. v. CFS La. Midstream Co.*,
428 F.3d 214 (5th Cir. 2005) ........................................................................ 16

*Reichert v. Rapid Investments, Inc.*,
56 F.4th 1220 (9th Cir. 2022) ........................................................................ 12

*Shady Grove Orthopedic Assocs. v. Allstate Ins. Co.*,
559 U.S. 393 (2010) ................................................................................... 9-10

*Surtain v. Hamlin Terrace Found.*,
789 F.3d 1239 (11th Cir. 2015) ..................................................................... 18

*Thomson v. Wooster*,
114 U.S. 104 (1885) ............................................................................... 17-18

*Travelers Cas. & Sur. Co. of America v. Pac. Gas & Elec. Co.*,
549 U.S. 443 (2007) ........................................................................................ 9

3

**Statutes**

11 U.S.C. § 101 ............................................................................................................ 10

11 U.S.C. § 524 ............................................................................................................ 19

11 U.S.C. § 1103 .......................................................................................................... 18

11 U.S.C. § 1125 ....................................................................................................... 5, 18

11 U.S.C. § 1126 ...................................................................................................... 16-17

11 U.S.C. § 1141 ............................................................................................................ 9

11 U.S.C. §§ 101-1532 ....................................................................................... 5, 19, 20

§ 3.19 (2018) ................................................................................................................ 12

§ 6 ................................................................................................................................ 12

**Other**

Black's Law Dictionary (8th ed. Abr. 2005) ............................................................... 11

California Rules of Professional Conduct 1.8.8 .......................................................... 22

Corbin on Contracts § 3.19 (2018) ............................................................................. 12

Restatement (Second) of Contracts § 17(1) (1981) .................................................... 12

Restatement (Second) of Contracts § 69 (1981) .................................................. 12-13, 15-16

Federal Rules of Bankruptcy Procedure 1001-9037 ..................................................... 5

Williston on Contracts § 6:67 (4th ed.) ...................................................................... 12

**TO THE HONORABLE MARTIN R. BARASH, UNITED STATES BANKRUPTCY JUDGE FOR THE CENTRAL DISTRICT OF CALIFORNIA, THE DEBTORS, AND OTHER INTERESTED PARTIES:**

Peter C. Anderson, the United States Trustee for Region 16 (the "U.S. Trustee") hereby files this objection (the "Objection") to the *Plan Proponents' Joint Combined Disclosure Statement and Chapter 11 Plan of Reorganization Dated March 14, 2025* [Dkt. No. 552] (the "DS and Plan"), filed jointly by debtors AfterShock Comics, LLC and Rive Gauche Television (the "Debtors"), the Official Committees of Unsecured Creditors, and secured creditor Access Road Capital, LLC ("ARC").  The U.S. Trustee objects to approval of the DS and Plan for the following reasons.  First, the Plan provides for nonconsensual third-party releases (the "Release Clause") in violation of the Bankruptcy Code[1] and in contravention of the Supreme Court's decision in *Purdue*.  Second, to the extent that applicable law authorizes exculpations beyond § 1125(e), the DS and Plan is unconfirmable because the exculpation clause (the "Exculpation Clause") is impermissibly broad in contravention of Ninth Circuit precedent both as to the extent of the exculpated parties and the extent of the conduct exculpated, which is not currently limited to conduct between the Petition Date and the Effective Date.  Third, legal malpractice should be excluded from the Exculpation Clause and Paragraph B should be stricken.[2]

**A.    THE DS AND PLAN**

The Release Clause provides that:

> As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, to the maximum extent permitted by law, each holder of any Claim that votes to accept the Plan (each a "Releasing Party") shall be

---

[1] Unless otherwise indicated, all chapter, section, and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532 and the Federal Rules of Bankruptcy Procedure ("Rule"), Rules 1001-9037.

[2] The U.S. Trustee also objects to the DS and Plan to the extent that it does not require the Debtors or Reorganized Debtors to file a notice of the Effective Date.  The U.S. Trustee has communicated with the Debtors prior to the filing of this Objection and asked whether the Debtors were amenable to adding a requirement that the Debtors or Reorganized Debtors file a notice of the Effective Date within 5 days of the Effective Date.  The U.S. Trustee is informed and believes that the Debtors are amenable to adding this requirement to the DS and Plan.  As such, this Objection does not address this issue beyond this footnote.

deemed to forever release, waive, and discharge all Claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action, and liabilities whatsoever, against the Debtors arising from or related to the Debtors' pre- and/or post-petition actions, omissions or liabilities, except for those claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action, and liabilities set forth in this Plan.

Further, as of the Effective Date, for good and valuable consideration (including but not limited to the agreement by ARC to the Modifications to its Secured Claim contemplated by this Plan and its consent to the Debtors' continued use of cash collateral during these Chapter 11 Cases), the adequacy of which is hereby confirmed, to the maximum extent permitted by law, the Debtors, the Committees, and **each holder of any Claim that votes to accept the Plan and, on its ballot indicates its intent to agree to the proposed release described herein**, shall be deemed to forever release, waive, and discharge all Claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action, and liabilities whatsoever, against ARC arising from or related to ARC's pre- and/or post-petition actions, omissions or liabilities.  The failure of any holder of a claim to choose whether or not to agree to the release described herein on his, her or its ballot shall be deemed to have agreed to the release.  Notwithstanding anything to the contrary herein, the Plan and this provision does not release or have any impact on any post-confirmation actions, omissions, or liabilities of ARC based upon facts and circumstances occurring after confirmation of the Plan.

*See* the DS and Plan at pp. 82-3 (§ 11.9 of the DS and Plan) (emphasis added).[3]

Despite the language of the above provision that the release would only apply to each holder of any Claim that votes to accept the Plan and, on its ballot indicates its intent to agree to the proposed release," the Debtors' proposed ballot actually includes an "opt out" provision by which those who vote in favor must check a box to avoid having the release imposed upon them, rather than checking a box if they actually consent to the release.  The ballot is attached to the Debtor's motion seeking approval of the DS and Plan [Dkt. No. 555].  For ease of reference, that proposed ballot is attached hereto as Exhibit 1.

Moreover, despite the opt out procedure in the ballot, the Plan includes a provision at 11.11(c) that attempts to deem acceptance of distributions as consent.  This provision must be stricken from the Plan.

Without limiting the effect of the foregoing upon any entity, by accepting distributions pursuant to the plan, each holder of an allowed claim receiving distributions pursuant to the plan shall be

---

[3] Citations to page numbers are to the PACER page numbers in the header of the document.

deemed to have specifically consented to the injunctions set forth in this section 11.11.

*See* the DS and Plan at p. 86 (§ 11.11(c) of the DS and Plan).

The Exculpation Clause provides:

A. Except as provided herein or in the Confirmation Order, as of the Effective Date, none of (i) the Debtors, (ii) the Reorganized Debtors, (iii) the Committees, (iv) ARC, and (v) **any of the respective current or former owners, partners, members, directors, officers, attorneys, professionals or stockholders of any of the foregoing**, shall have or incur any liability to any holder of a Claim or an Interest, or any of their respective members, directors, officers, advisors, attorneys, partners, or stockholders, or any of their respective successors or assigns, for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, negotiation or **implementation of the Plan**, the solicitation of acceptances of the Plan, the pursuit of Confirmation of the Plan, or the Confirmation of the Plan, except for acts or omissions which are the result of fraud, gross negligence, or willful misconduct, or willful violation of federal or state securities laws or the Internal Revenue Code (in each case as determined by a Final Order), and **in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan**. Notwithstanding the above, nothing contained in the Plan shall release anyone from any liability relating to the obligations created by the Plan or as to any property incorrectly distributed under the Plan.

B. Notwithstanding any other provision of the Plan, no holder of a Claim or an Interest, no other party in interest, none of their respective partners, directors, officers, employees, advisors, attorneys, professionals, agents, stockholders, or affiliates, and none of their respective successors or assigns, shall have any right of action against the (i) the Debtors, (ii) the Reorganized Debtors, (iii) the Committees, (iv) ARC, and (v) any of their respective current or former partners, members, directors, officers, employees, advisors, attorneys, professionals, agents, stockholders, or affiliates of the foregoing (but solely in their respective capacities as such), for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, negotiation, or implementation of the Plan, solicitation of acceptances of the Plan, the pursuit of Confirmation of the Plan, or the Confirmation of the Plan, except for acts or omissions which are the result of fraud, or willful misconduct or willful violation of federal or state securities laws or the Internal Revenue Code (in each case as determined by a Final Order). Notwithstanding the above, nothing contained in the Plan shall release anyone from any liability relating to the obligations created by the Plan or as to any property incorrectly distributed under the Plan.

*See* the DS and Plan at pp. 86-7 (§ 11.12 of the DS and Plan) (emphasis added).

//

//

**B.    ARGUMENT**

**1.    The Release Clause is Impermissible Because it Incorporates an Opt Out Procedure and Treats Silence as Acceptance of the Release**

The Supreme Court has definitively held that non-consensual third-party releases are not authorized under the Bankruptcy Code. *Harrington v. Purdue Pharma L.P.,* 603 U.S. 204 (2024). The Supreme Court in *Purdue* did not address whether consensual non-debtor releases can be included in a chapter 11 plan and confirmation order.

Here, the Release Clause provides that "to the maximum extent permitted by law, the Debtors, the Committees, and each holder of any Claim that votes to accept the Plan *and, on its ballot indicates its intent to agree to the proposed release* described herein, shall be deemed to forever release, waive, and discharge" ARC for pre and post-petition conduct. *See* DS and Plan at pp. 82-3 (§ 11.9 of the DS and Plan) (emphasis added). The DS and Plan read as if the proposed ballot provides creditors with the opportunity to "opt in" to the release. But a review of the proposed ballot reveals that the ballot actually imposes on creditors the obligation to "opt out" of the release. The Release Clause also provides that: "The failure of any holder of a claim to choose whether or not to agree to the release described herein on his, her or its ballot shall be deemed to have agreed to the release." *See id.* First, this language suggests that the release would apply to any creditor who votes on the Plan, rather than just those who vote to accept, and thus this language should be stricken from the Plan as conflicting with the earlier provision. Additionally, the only option the creditor who votes in favor of the Plan has is either to check an opt out box or be bound so this language makes no sense. Similarly, the language at 11.11(c) that tries to deem consent by acceptance of distributions conflicts with the earlier provisions that provide an opt out procedure and cannot establish consent for a release and should also be stricken from the Plan.

In any event, the use of the opt out procedures or the use of acceptance of distributions to deem silence as acceptance is impermissible and the Debtor has not demonstrated that they are otherwise appropriate under governing law.

//

### a. State Contract Law Applies, Not Federal Law

"[T]he basic federal rule in bankruptcy is that state law governs the substance of claims." *Travelers Cas. & Sur. Co. of America v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 450-451 (2007); *accord Butner v. United States*, 440 U.S. 48 (1979). Thus, courts apply state law when the question is whether a debtor has entered a valid settlement agreement. *See Houston v. Holder (In re Omni Video, Inc.)*, 60 F.3d 230, 232 (5th Cir. 1995) ("Federal bankruptcy law fails to address the validity of settlements and this gap should be filled by state law."); *De La Fuente v. Wells Fargo Bank, N.A. (In re De La Fuente)*, 409 B.R. 842, 845 (Bankr. S.D. Tex. 2009) ("Where the United States is not a party, it is well established that settlement agreements in pending bankruptcy cases are considered contract matters governed by state law.").

The rule is no different for third-party releases. Third-party releases are ancillary settlement agreements between non-debtor parties that are governed by state law. *See In re Tonawanda Coke Corp.*, 662 B.R. 220, 222 (Bankr. W.D.N.Y. 2024) ("[A]ny proposal for a nondebtor release is an ancillary offer that becomes a contract upon acceptance and consent [and] such consensual agreement would be governed [] by state law."). Unlike a bankruptcy discharge, which "is an involuntary release by operation of law," "[i]n the case of voluntary releases, the nondebtor is released from a debt, not by virtue of 11 U.S.C. § 1141(b), but because the creditor *agrees* to do so." *In re Arrowmill Dev. Corp.*, 211 B.R. 497, 503, 507 (Bankr. D.N.J. 1997) (emphasis added). *Cf. Purdue*, 603 U.S. 204 at 223 (observing that the Sacklers' releases "seek greater relief than a bankruptcy discharge normally affords").

No federal law applies to the question of whether the non-debtor releasing parties have agreed to release secured creditor ARC. The Bankruptcy Code itself does not provide an independent source of interpreting agreements, nor does it preempt otherwise applicable state contract law. *See, e.g.*, *Shady Grove Orthopedic Assocs. v. Allstate Ins. Co.*, 559 U.S. 393, 416 (2010) (plurality) ("For where neither the Constitution, a treaty, nor a statute provides the rule of decision or authorizes a federal court to supply one, 'state law must govern because there can be no other law.'" (quoting *Hanna v. Plumer*, 380 U.S. 460, 471-72 (1965)). Section 105(a) of the

Bankruptcy Code, for example, "serves only to carry out authorities expressly conferred elsewhere in the code." *Purdue*, 603 U.S. at 216 n.2 (quotation marks omitted).  But the Bankruptcy Code does not confer any authority to impose a release of claims between non-debtors that would not be valid under state law.

There is no definition in the Bankruptcy Code for a "consensual third-party release."  *See* 11 U.S.C. § 101.  "There is no rule that specifies an 'opt out' mechanism or a 'deemed consent' mechanism" for third-party releases in chapter 11 plans.  *In re Chassix Holdings, Inc.*, 533 B.R. 64, 78 (Bankr. S.D.N.Y. 2015).  And no Bankruptcy Code provision authorizes courts, as part of an order confirming a chapter 11 plan or otherwise, to deem a non-debtor to have consented to an agreement to release claims against other non-debtors where such consent would not otherwise be found to exist as a matter of state law.  Absent express authority in the Bankruptcy Code, bankruptcy courts cannot "create substantive rights that are otherwise unavailable under applicable law," nor do they possess a "roving commission to do equity."  *See In re Dairy Mart Convenience Stores, Inc.*, 351 F.3d 86, 92 (2d Cir. 2003) (quotation omitted).

For these reasons, state contract principles are the only source of authority in considering whether a release is consensual, as numerous courts have so found.  *See In re SunEdison, Inc.*, 576 B.R. 453, 458 (Bankr. S.D.N.Y. 2017) ("[c]ourts generally apply contract principles in deciding whether a creditor consents to a third-party release."); *In re Smallhold, Inc.*, No. 24-10267, 2024 WL 4296938, at *11 (Bankr. D. Del. Sept. 25, 2024) (requiring "some sort of affirmative expression of consent that would be sufficient as a matter of contract law"); *In re Ebix, Inc.*, No. 23-80004, Aug. 2, 2024 Hr'g Tr. at 15:2-69 (Bankr. N.D. Tex. Aug. 2, 2024) (finding that third-party releases are "more accurately construed as one of contract between those non-debtor parties."); *Patterson v. Mahwah Bergen Retail Grp., Inc.*, 636 B.R. 641, 684-85 (E.D. Va. 2022) ("Patterson") (describing bankruptcy courts in the District of New Jersey as "look[ing] to the principles of contract law rather than the bankruptcy court's confirmation authority to conclude that the validity of the releases require affirmative consent"); *Arrowmill*, 211 B.R. at 506-07 ("a

third-party release . . . hinge[s] upon principles of straight contract law or quasi-contract law rather than upon the bankruptcy court's confirmation order").

     *b.  Under State Law, Silence is Not Acceptance[4]*

By definition, an "opt-out" means "to choose not to participate in (something)." BLACK'S LAW DICTIONARY, 925 (8th ed. abr. 2005). It is a means of expressing dissent or objection, as when claimants object to and "choose not to participate" in a plan's third-party release, rather than expressing consent. *See, e.g.*, *Smallhold*, 2024 WL 4296938, at *11 ("The practice of including a box on creditors' ballots to check if they objected to the release was just an administrative shortcut to relieve those creditors of the burden of having to file a formal plan objection."). Instead, under applicable state law (which is the only governing source, as discussed, *supra*), an agreement to release claims generally requires a manifestation of assent to that agreement. *See Tonawanda*, 662 B.R. at 222 (finding that any consensual agreement to a third-party release "would be governed instead by state law.").

Under California law, "[s]ilence in the face of an offer is not an acceptance, unless there is a relationship between the parties or a previous course of dealing pursuant to which silence would be understood as acceptance." *See C9 Ventures v. SVC-W., L.P.*, 202 Cal. App. 4th 1483, 1500

---

[4] The U.S. Trustee reserves all rights at the disclosure statement hearing to make arguments regarding the specific opt-out procedures used by the Debtors should the Court allow any such process. Even where courts have authorized chapter 11 plans that contain opt-out mechanisms and allowed for inaction or silence to be binding on interest and claim holders, the standard of review is a "case by case" basis. *See, e.g.*, *In re Lumio Holdings, Inc.*, No. 24-11916 (JKS) (Bankr. D. Del. Jan. 3, 2025), Jan. 3, 2025 Hr'g Tr. 24:15-22 (requiring an opt-in for the general unsecured classes). Similarly, while the Court in *Lavie* approved a plan that bound various classes of creditors to the third-party releases there through an opt-out mechanism, the Court also expressed concern over those whose inactions or silence may not be deliberate, stating:

    [A]thought it may be reasonable (and even necessary) in general to assume that the creditors who were mailed a solicitation package received the package in a timely fashion, recognized that it was related to this case, and made a determination to do something or nothing with/about it, that may not be the case as to every creditor.

    […] As to any individual creditor there may be some set of facts, some circumstances, that would make it unreasonable to assume that their failure to respond constitutes their consent to the result. […] The possibilities are myriad.

*In re Lavie Care Ctrs, LLC*, No. 24-55507-PMB, 2024 WL 4988600 (Bankr. N.D. Ga. 2024).

(2012).[5]  An agreement to release claims—like any other contract—requires a manifestation of assent to that agreement.  *See, e.g.*, RESTATEMENT (SECOND) OF CONTRACTS § 17(1) (1981) ("[T]he formation of a contract requires a bargain in which there is manifestation of mutual assent to the exchange and a consideration.").  Thus, "[o]rdinarily[,] an offeror does not have power to cause the silence of the offeree to operate as acceptance."  *Id.* § 69 cmt. a. *See also Reichert v. Rapid Investments, Inc.*, 56 F.4th 1220, 1227 (9th Cir. 2022) ("[T]he offeror cannot prescribe conditions so as to turn silence into acceptance."); *Jacques v. Solomon & Solomon P.C.*, 886 F. Supp. 2d 429, 433 n.3 (D. Del. 2012) ("Merely sending an unsolicited offer does not impose upon the party receiving it any duty to speak or deprive the party of its privilege of remaining silent without accepting."); *Elfar v. Wilmington Trust, N.A.*, No. 20-0273, 2020 WL 7074609, at *2 n.3 (E.D. Cal. Dec. 3, 2020) ("The court is aware of no jurisdiction whose contract law construes silence as acceptance of an offer, as the general rule."), *adopted by* 2021 WL 1700778, at *1 (E.D. Cal. Feb. 11, 2021); *accord* 1 CORBIN ON CONTRACTS § 3.19 (2018); 4 WILLISTON ON CONTRACTS § 6:67 (4th ed.).

There are only very limited exceptions to the "general rule of contracts . . . that silence cannot manifest consent."  *Patterson*, 636 B.R. at 686; *see also, e.g.*, *McGurn v. Bell Microproducts, Inc.*, 284 F.3d 86, 90 (1st Cir. 2002) (recognizing "general rule" that "silence in response to an offer . . . does not constitute acceptance of the offer").  "[T]he exceptional cases where silence is acceptance fall into two main classes: those where the offeree silently takes offered benefits, and those where one party relies on the other party's manifestation of intention that silence may operate as acceptance.  Even in those cases the contract may be unenforceable under the Statute of Frauds."  RESTATEMENT (SECOND) OF CONTRACTS § 69 cmt. a (1981).  None of those exceptions apply here.

---

[5] Ordinary choice of law principles govern which state's law applies to contracts between non-debtors, although a choice of law analysis may not be necessary absent any assertion that there is a difference in potentially applicable state laws governing what constitutes consent.  *See Smallhold*, 2024 WL 4296938, at *13 n.57.  While the DS and Plan provides that its construction and enforcement is governed by California law, *see* DS and Plan at p. 88 (§ 11.16 of the DS and Plan), the Debtors cannot choose the law to apply to contracts between non-debtors.

Instead, these cases are governed by the general principle that, "[t]he mere receipt of an unsolicited offer does not impair the offeree's freedom of action or inaction or impose on him any duty to speak." *Id.* And "[t]he mere fact that an offeror states that silence will constitute acceptance does not deprive the offeree of his privilege to remain silent without accepting." *Id.* § 69, cmt. c; *see also Patterson*, 636 B.R. at 686 (explaining how contract law does not support deeming consent based upon a failure to opt out); *Jacques*, 886 F. Supp. 2d at 433 n.3.

### c. *Voting for a Plan Without Opting Out Cannot Establish Consent*

An affirmative agreement—something more than a mere failure to opt out—is required for a non-debtor release to be consensual. *See In re Tonawanda Coke Corp.*, 662 B.R. 220, 222-23 (Bankr. W.D.N.Y. 2024); *Patterson*, 636 B.R. at 686. Failing to "opt out" of an offer is not a manifestation of consent unless one of the exceptions to the rule that silence is not consent applies, such as conduct by the offeree that manifests an intention that silence means acceptance or taking offered benefits. RESTATEMENT (SECOND) OF CONTRACTS § 69 cmt. a (1981). For example, the *Patterson* court, in applying black letter contract principles to opt-out releases in a chapter 11 plan, found that contract law does not support consent by failure to opt-out. *Patterson*, 636 B.R. at 686. "Whether the Court labels these 'nonconsensual' or based on 'implied consent' matters not, because in either case there is a lack of sufficient affirmation of consent." *Id.* at 688.

The Ninth Circuit's decision in *Norcia v. Samsung Telecomms. America, LLC*, 845 F.3d 1279, 1286 (9th Cir. 2017) illustrates the point. In *Norcia*, a consumer bought a Samsung phone from a Verizon Wireless store and signed the Verizon Wireless Customer Agreement. *Norcia*, 845 F.3d at 1282. Among the contents of the phone's box was a Samsung "Product Safety & Warranty Information" brochure that contained an arbitration provision, which "stated that purchasers could opt out of the arbitration agreement by providing notice to Samsung within 30 calendar days of purchase, either through email or by calling a toll-free telephone number." *Id.* It also stated that opting out would not affect the warranty coverage. *Id.* The customer did not take any steps to opt out. *Id.* When the customer later sued Samsung, Samsung argued that the arbitration provision applied. *Id.* at 1282-83.

13

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

As an initial matter, the *Norcia* court rejected the argument that the customer agreed to the arbitration provision by signing his contract with Verizon: "The Customer Agreement is an agreement between Verizon Wireless and its customer.  Samsung is not a signatory."  845 F.3d at 1290.  Likewise, voting on a chapter 11 plan cannot be equated with consent to release non-debtor third parties.  Not only are the non-debtor released parties not signatories to the chapter 11 plan, a chapter 11 plan is a creature of the Bankruptcy Code specifically for determining how the debtor will pay its creditors, not a contract to resolve claims between non-debtors.  As the Ninth Circuit has explained, "[w]hen a bankruptcy court discharges the debtor, it does so by operation of the bankruptcy laws, not by consent of the creditors . . . . [T]he payment which effects a discharge is not consideration for any promise by the creditors, much less for one to release non-party obligators."  *Blixseth v. Credit Suisse*, 961 F.3d 1074, 1085 (9th Cir. 2020) (quotation marks omitted).

The Ninth Circuit in *Norcia* further held that the customer's failure to opt out did not constitute consent to arbitrate.  Unsurprisingly—because there was no applicable federal law—the court applied the "general rule," applicable under California law, that "silence or inaction does not constitute acceptance of an offer."  845 F.3d at 1284 (quotation marks omitted).  The customer did not agree to arbitrate because he did not "sign the brochure or otherwise act in a manner that would show his intent to use his silence, or failure to opt out, as a means of accepting the arbitration agreement."  *Norcia*, 845 F.3d at 1285 (quotation marks omitted).  This was true, even though the customer *did* take action to accept the offered contract from Verizon Wireless.  "Samsung's offer to arbitrate all disputes with [the customer] cannot be turned into an agreement because the person to whom it is made or sent makes no reply, even though the offer states that silence will be taken as consent, unless an exception to this general rule applies."  845 F.3d at 1286 (quotation marks and citation omitted).

The Ninth Circuit explained that there are two exceptions to this rule—when the offeree has a duty to respond, or when the offeree retains the offered benefits—but held neither exception applied.  *Norcia*, 845 F.3d at 1284-85.  There was no state law imposing a duty on the customer to

14

act in response to the offer, the parties did not have a prior course of dealing that might impose such a duty, and the customer did not retain any benefits by failing to act given that the warranty applied whether or not he opted out of the arbitration provision.  *Id.* at 1286.

Here, too, the Debtor's creditors have not signed an agreement to release the non-debtor releasees nor acted in any other manner to suggest that their silence manifests an intention to accept an offer to release ARC.  Voting for a plan without checking an opt-out box does not constitute the affirmative consent necessary to reflect acceptance of an offer to enter a contract to release claims against ARC.  *See* RESTATEMENT (SECOND) OF CONTRACTS § 69 cmt. a (1981).

As an initial matter, merely voting to approve a plan is not an expression of consent to a non-debtor release.  *See, e.g., In re Congoleum Corp.*, 362 B.R. 167, 194 (Bankr. D.N.J. 2007) ("[A] consensual release cannot be based solely on a vote in favor of a plan."); *In re Arrowmill Dev. Corp.*, 211 B.R. at 507 (reaching same conclusion).  As explained in *Arrowmill*, a voluntary release arises only "because the *creditor agrees*" to it.  211 B.R. at 507 (emphasis in original). There is nothing in the Code that authorizes treating a vote to accept a chapter 11 plan as consent to a third-party release.  Instead, the "validity of th[at] release" necessarily "hinges upon principles of straight contract law or quasi-contract law rather than upon the bankruptcy court's confirmation order."  *Id.* (citation and alterations omitted).  Because "a creditor's approval of the plan cannot be deemed an act of assent having significance beyond the confines of the bankruptcy proceedings," "it is not enough for a creditor . . . to simply vote 'yes' as to a plan" in order to destroy its rights under nonbankruptcy law.  *Id.* (quotation marks omitted); *accord Congoleum Corp.*, 362 B.R. at 194; *In re Digital Impact, Inc.*, 223 B.R. 1, 14 (Bankr. N.D. Okla. 1998).  Rather, a creditor must "unambiguously manifest[] assent to the release of the nondebtor from liability on its debt." *Arrowmill*, 211 B.R. at 507.

Because merely voting to approve a plan does not manifest consent to a non-debtor release, such a vote plus a failure to opt out is still nothing more than silence with respect to the offer to release claims against non-debtors.  Voting to accept a plan but remaining silent about a non-debtor

15

release by failing to check an opt-out box does not fit within any of the exceptions to the rule that silence is not acceptance of an offer.

Creditors who vote for a plan without opting out of a non-debtor release are not "silently tak[ing] offered benefits" from the released non-debtors, such that consent may be inferred. RESTATEMENT (SECOND) OF CONTRACTS § 69 cmt. a (1981).  The only benefits received by the creditors are distributions from the debtor's chapter 11 plan.  Thus, "[e]ssentially, creditors are being asked to give releases to third parties for no consideration." *Tonawanda Coke Corp.*, 662 B.R. at 222.  Because creditors are entitled to whatever distributions the Plan allocates them regardless of whether they opt out of the non-debtor releases, consent to the non-debtor release cannot be inferred from mere acceptance of the benefits of the debtor's plan.[6]  *See Norcia*, 845 F.3d at 1286 (explaining that customer's failure to opt out did not imply his consent where warranty applied regardless, meaning that customer did not thereby obtain any additional benefit). Further, non-debtors have no right to prevent a debtor's creditors from receiving distributions under the debtor's chapter 11 plan, and thus acceptance of those distributions does not manifest acceptance of an offer to release non-debtors.  *See Railroad Mgmt. Co., L.L.C. v. CFS La. Midstream Co.*, 428 F.3d 214, 223 (5th Cir. 2005) ("In the absence of any evidence that Strong had the right to exclude CFS from the property in question or that CFS accepted any service or thing of value from Strong, no reasonable jury could conclude that CFS's failure to remove its pipeline upon Strong's demand constituted consent to a contract.").

Nor does voting to approve a chapter 11 plan while remaining silent about a non-debtor release "manifest [an] intention that silence may operate as acceptance" of an offer to release claims against non-debtors.  RESTATEMENT (SECOND) OF CONTRACTS § 69 cmt. a.  Because impaired creditors have a federal right under the Bankruptcy Code to vote on a chapter 11 plan, 11 U.S.C. § 1126(a), merely exercising that right does not manifest consent to release claims against non-debtors.  Rather, voting on a chapter 11 plan is governed by the Bankruptcy Code, and a

---

[6] Thus, the Debtor must also strike section 11.11(c) from the Plan.

16

favorable vote reflects only approval of the plan's treatment of the voters' claims *against the debtor*.

And as in *Norcia*, creditors have no state law duty to respond to an offer to release non-debtors such that their silence can be understood as consent, nor have they any prior course of dealing with the released non-debtors that would impose such a duty. *See Norcia*, 845 F.3d at 1285-86. Nor do creditors have any affirmative obligation to act on a plan, either to vote or to opt out. *See, e.g.*, 11 U.S.C. § 1126(a) (providing that creditors "may" vote on a plan); *SunEdison, Inc.*, 576 B.R. at 460–61 (recognizing that creditors have no duty to speak regarding a plan that would allow a court to infer consent to third-party releases from silence). A claimant's vote in favor of a plan while remaining silent regarding a non-debtor release thus does not fit within the exception to the general rule that consent cannot be inferred from silence.

> d.   *Opt-out procedures cannot be imposed based on procedural default theory*

After *Purdue*, it is now clear that imposition of a nonconsensual non-debtor release is not available relief through a debtor's chapter 11 plan. *See Purdue*, 603 U.S. 204, 216-227, & n.1; *see also Smallhold*, 2024 WL 4296938, at *10 (holding that, after *Purdue*, it is "no longer appropriate to require creditors to object or else be subject to (or be deemed to 'consent' to) such a third-party release."). The Supreme Court's *Purdue* decision rejected a fundamental premise of the procedural default theory—that a bankruptcy proceeding legally could lead to the destruction of creditors' rights against non-debtors, so they had best pay attention lest they risk losing those rights. *Smallhold*, 2024 WL 4296938, at *1-2; *see also id*. at *10 ("The possibility that a plan might be confirmed that provided a nonconsensual release was sufficient to impose on the creditor the duty to speak up if it objected to what the debtor was proposing."). "Under established principles," courts may enter relief against a party who procedurally defaults by not responding "only after satisfying themselves that the relief the plaintiff seeks is relief that is at least potentially available to the plaintiff" in contested litigation. *Id*. at *2; *see also id*. at *13 ("[T]he obligation of a party served with pleadings to appear and protect its rights is limited to those circumstances in which it would be appropriate for a court to enter a default judgment if a litigant failed to do so."); *Thomson*

17

*v. Wooster*, 114 U.S. 104, 113 (1885) (holding a decree *pro confesso* may only be entered if it "is proper to be decreed"); *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th Cir. 2015) ("Entry of default judgment is only warranted when there is a sufficient basis in the pleadings for the judgment entered.") (cleaned up).

"[After *Purdue*] . . . [a] third-party release is not "an ordinary plan provision that can properly be entered by 'default' in the absence of an objection." *Smallhold*, 2024 WL 4296938, at *13. "It is unlike the listed cure amount where one can properly impose on a creditor the duty to object, and in the absence of such an objection bind the creditor to the judgment." *Id*. That is because, unlike for a creditor's claims against the debtor, the Bankruptcy Code affords no affirmative authority to order a release of claims against third parties. Because imposition of a nonconsensual non-debtor release is not relief available through a chapter 11 plan, it is not "appropriate to require creditors to object or else be subject to (or be deemed to 'consent' to) such a third-party release." *Id*. at *10. Rather, an "*affirmative expression of consent* that would be sufficient as a matter of contract law" is required. *Id*. at *11 (emphasis added).[7]

**2. The Exculpation Clause is Impermissible under Ninth Circuit Precedent**

*a. The Exculpation Clause is overbroad because it includes entities not entitled to exculpation.*

To the extent that applicable law authorizes exculpations beyond § 1125(e), the Ninth Circuit in *Blixseth v. Credit Suisse* has only approved an exculpation provision for a non-estate fiduciary that was "narrow in both scope and time" and "'closely involved' in drafting the Plan." 961 F.3d 1074, 1081 (9th Cir. 2020). In considering exculpation generally, the Ninth Circuit first cited with approval the Third Circuit's decision in *In re PWS Holding Corp.*, 228 F.3d 224, 246 (3d Cir. 2000). In *PWS*, the Third Circuit considered whether an official committee of unsecured creditors could be exculpated and held that 11 U.S.C. § 1103(c) implies both a fiduciary duty and a limited grant of immunity to members of the unsecured creditors' committee with approval. That

---

[7] For those reasons, the *Smallhold* court expressly disapproved of its prior decision in *Arsenal*, which had relied on the procedural default theory. *See id.* at *8 ("On the central question presented, the Court concludes that its decision in *Arsenal* does not survive *Purdue Pharma*.").

decision has been interpreted to limit exculpation solely to estate fiduciaries for conduct taken during a bankruptcy case. *See, e.g.*, *In re Washington Mutual, Inc.*, 442 B.R. 314, 350-51 (Bankr. D. Del. 2011) ("[An] exculpation clause must be limited to the fiduciaries who have served during the chapter 11 proceeding: estate professionals, the Committees and their members, and the Debtors' directors and officers."); *In re PTL Holdings LLC*, 2011 WL 5509031 at *12 (Bankr. D. Del. Nov. 10, 2011) ("the exculpation clause here must be reeled into include only those parties who have acted as estate fiduciaries and their professionals").[8]  The Ninth Circuit, however, was considering the application of exculpation to Credit Suisse, the debtors' largest creditor and noted that "[u]nlike the creditors committee in *PWS*, . . . Credit Suisse . . . does not have an implied fiduciary duty derived from the statute to the participants of the bankruptcy proceedings." *Blixseth v. Credit Suisse*, 961 F.3d 1074, 1085 n.8 (9th Cir. 2020).

The Ninth Circuit nevertheless approved the extension of exculpation to this non-estate fiduciary because the exculpation provision was "narrow in both scope and time," covering only parties "closely involved" in drafting the plan and involved in the plan approval process.  *Id.* at 1082.  *Blixseth* arose when a co-founder of the debtor companies objected to the exculpation provision in the joint debtors' plan as against section 524(e).  *Id.*  The *Blixseth* court found that "litigation and the threat of litigation is and was plentiful."  *Id.* at 1078 (quoting *In re Yellowstone Mountain Club, LLC*, 460 B.R. 254, 274 (Bankr. D. Mont. 2011)).  In that context, the Ninth Circuit held that the exculpation clause was narrowly tailored to allow "settling parties—including Credit Suisse, the Debtors' largest creditor—to engage" in negotiation of the bankruptcy

---

[8] Like the Third Circuit, most courts that have approved exculpation clauses have held that only estate fiduciaries, like trustees, the debtor's officers and directors, official committees and their members, and counsel to estate fiduciaries may be exculpated and only for conduct that is court-supervised conduct that carries out estate fiduciary duties during the chapter 11 case, that is, conduct that occurs after the petition has been filed and before the plan's effective date. *See, e.g., In re Highland Capital Mgmt., L.P.*, 48 F.4th 419, 437 (5th Cir. 2022) ("any exculpation in a Chapter 11 reorganization plan [must] be limited to the debtor, the creditors' committee and its members for conduct within the scope of their duties, 11 U.S.C. § 1103(c), and the trustees within the scope of their duties . . . ."); *Patterson v. Mahwah Bergen Retail Grp., Inc.*, 636 B.R. at 700-01 ("Exculpation is appropriate when it is solely limited to fiduciaries who have served a debtor through a chapter 11 proceeding.") (citing *In re Health Diagnostic Lab. Inc.*, 551 B.R. 218, 232 (Bankr. E.D. Va. 2016)).

proceedings "without fear of subsequent litigation."  As such, the Ninth Circuit in *Blixseth* held that the bankruptcy court "had the authority to approve an exculpation clause intended to trim subsequent litigation *over acts taken during the bankruptcy proceedings and so render the Plan viable*." *Id*. at 1084-1085 (emphasis added).

In contrast, here, the Exculpation Clause includes: 1) the Reorganized Debtors; 2) "current or former owners, partners, members, directors, officers, attorneys, professionals or stockholders" of the Debtors, Reorganized Debtors, the Committees, and ARC; and 3) "current or former partners, members, directors, officers, employees, advisors, attorneys, professionals, agents, stockholders, or affiliates" of the Debtors, Reorganized Debtors, the Committees, and ARC.  The Exculpation Clause as written extends beyond the protection of the case fiduciaries—generally defined as "the fiduciaries who have served during the chapter 11 proceeding: estate professionals, the Committees and their members, and the Debtors' directors and officers," *In re Washington Mutual, Inc.*, 442 B.R.  at 350-51, or to parties "closely involved" with drafting the Plan to which *Blixseth* allowed exculpation.

Indeed, the Reorganized Debtors do not come into existence until after the Effective Date so there is no practical way they could have been closely involved in the confirmation of the Plan. The Debtors simply have not demonstrated that it is appropriate to include the Reorganized Debtors as exculpated parties.  *See In re Fraser's Boiler Serv.*, 593 B.R. 636, 642 (Bankr. W.D. Wash. 2018) (sustaining objection to exculpation in liquidating trust agreement, where trustee would not exist until after plan is confirmed and had "not done anything yet that warrants exculpation or release"); *In re Mallinckrodt PLC*, 639 B.R. 837, 849 (Bankr. D. Del. 2022) ("Neither the reorganized debtor nor the distribution agents have any role in the bankruptcy prior to the effective date. The reorganized debtor does not even exist until the effective date, and the indenture trustees will not distribute anything until after the effective date, meaning they cannot act as distribution agents prior to that time. Accordingly, the exculpation provision's inclusion of either is improper here and must also be removed.").

//

1      Similarly, the Debtors have not demonstrated that the "former" entities were closely

2   involved in the drafting of the plan and that including them as exculpated parties is appropriate on

3   this record.  Importantly, there is no indication that the extension of these impermissible exculpated

4   parties is necessary to render the Plan viable.  In *Blixseth*, the Ninth Circuit found that the inclusion

5   of Credit Suisse as a party covered in the exculpation clause was necessary to the Plan's viability

6   given that it was the largest creditor in the case, and it "had the ability to single-handedly disrupt

7   the entire confirmation process."  *Id*. at 1082.  There is no such explanation for the inclusion of

8   the exculpated non-fiduciaries here.  No such person here can "single-handedly" disrupt the

9   confirmation process, nor have the Debtors provided evidence as to the need for their inclusion.

10      Moreover, the Exculpation Clause is so vague it can reach broad categories of persons the

11   Debtors have not even specifically identified.  The Ninth Circuit in *Blixseth* stated that because the

12   exculpation was limited to only those "'closely involved' in drafting the Plan, . . . the Exculpation

13   Clause is not a broad sweeping provision that seeks to discharge or release nondebtors from any

14   and all claims that belong to others." *Id.* at 1082.  The opposite is true here.

15          b.  *The Exculpation Clause is overbroad because it is not limited to the period between*

16              *the Petition Date and the Effective Date*

17      Exculpation "only extends to conduct that occurs between the Petition Date and the

18   Effective date."  *In re Mallinckrodt PLC*, 639 B.R. at 883.  In *Blixseth*, the Ninth Circuit approved

19   the exculpation there because it was "narrow in both scope and time."  961 F.3d at 1082.  The

20   bankruptcy court's decision on review in *Blixseth* specifies the narrow temporal scope of the

21   exculpation clause at issue: it only covered acts occurring during the case, specifically "between

22   November 10, 2008 [Petition Date] and July 17, 2009 [Notice of Effective Date]" could be

23   exculpated.  *In re Yellowstone Mountain Club, LLC*, 460 B.R. at 271.  "Acts falling outside the

24   foregoing dates are not protected."  *Id.*

25      Based on the Ninth Circuit's rationale in *Blixseth*, as well as the standards employed in

26   other courts, this court should not approve exculpation clauses that appear to extend beyond the

27   plan approval process. 961 F.3d at 1082; *see, e.g.*, *Mallinckrodt PLC*, 639 B.R. at 883.  In *Blixseth*,

28

21

the exculpation clause release was limited to "…any act or omission in connection with, relating to or arising out of the Chapter 11 cases or bankruptcy filing." 961 F.3d at 1081.

Here, while paragraph A of the Exculpation Clause appears to apply to conduct up until the Effective Date, there does not appear to be a similar limitation to paragraph B.  *See* DS and Plan at p. 86 (line 13).  Further, there appears to be no temporal limitation stating that the exculpated conduct only includes conduct post the Petition Date.  As written, the Exculpated Clause is overbroad and does not conform to the "narrow in both scope and time" requirement of *Blixseth.*

### 3. Legal Malpractice Should be Excepted from the Exculpation Clause and Paragraph B Should be Stricken

The Exculpation Clause includes attorneys.  Thus, it could be read to insulate professionals from the consequences of their violation of the rules of professional conduct.  The CA RPC 1.8.8 prevents a lawyer from "limiting the lawyer's liability to the client for the lawyer's professional malpractice . . .."  Allowing such a provision in this case makes little sense as it would discharge any potential consequences from the California State Bar Association, which is not a party to this proceeding.[9]

The United States Trustee also objects to the extent the exculpation shields the exculpated parties who rely upon the advice of counsel.  While such reliance may be raised as an affirmative defense, it should not serve as a predetermined absolute bar against liability.  The exculpated parties should have a claim against their legal advisors for improper or mistaken advice, and the exculpation should not extend any protection for such advice.

Finally, the United States Trustee objects to the duplicative exculpation provided in the Plan in Paragraph B which mostly restates the first paragraph but includes some differences.  To the extent that paragraph is attempting to provide the exculpated parties more protection beyond that sought in Paragraph A, it should not be approved.

---

[9] *But see In re Fraser's Boiler Service, Inc.*, 593 B.R. 636 (overruling the United States Trustee's objection to exculpation of attorneys without exceptions for legal malpractice).

1

## C.     CONCLUSION

2

        For the aforementioned reasons, the U.S. Trustee respectfully requests that the Court (i)

3

sustain the Objection; and (ii) not approve the DS and Plan or, alternatively, require amendments

4

pursuant to the above.

5       DATED: April 1, 2025                    Respectfully submitted,
                                                PETER C. ANDERSON
6                                               UNITED STATES TRUSTEE

7                                               /s/ Eryk R. Escobar

8                                               Eryk R. Escobar
                                                Attorney for the United States Trustee
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 1

DAVID L. NEALE (SBN 141225)
JEFFREY S. KWONG (SBN 288239)
LEVENE, NEALE, BENDER, YOO &
GOLUBCHIK L.L.P.
2818 La Cienega Avenue
Los Angeles, CA  90034
Telephone: (310) 229-1234
Fax: (310) 229-1244
Email: dln@lnbyg.com, jsk@lnbyg.com
Attorneys for the Chapter 11 Debtors and
Debtors in Possession

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re:<br><br>AFTERSHOCK COMICS, LLC, a California limited liability company,<br><br>     Debtor and Debtor in Possession.<br>_____<br>In re:<br><br>RIVE GAUCHE TELEVISION, a California corporation,<br><br>     Debtor and Debtor in Possession.<br>_____<br><br>☐ Affects AfterShock Comics, LLC only<br><br>☐ Affects Rive Gauche Television only. | Lead Case No.: 1:22-bk-11456-MB<br><br>Jointly administered with:<br>1:22-bk-11457-MB<br>(Rive Gauche Television).<br><br>Chapter 11 Cases<br><br>**CLASS ___ BALLOT FOR ACCEPTING OR REJECTING THE PLAN OF REORGANIZATION**<br><br>**[_____ CLAIMS]** |

AfterShock Comics, LLC, a California limited liability company ("Aftershock"), and Rive Gauche Television, a California corporation ("RGTV," and together with Aftershock, the "Debtors"), along with certain other plan proponents, filed that certain "*Joint Combined Disclosure Statement And Chapter 11 Plan Of Reorganization Dated March 14*, 2025 [Doc. No. 552] (the "DS/P"), which consists of both the disclosure statement (Sections I to VIII of the DS/P, the "Disclosure Statement") and the Chapter 11 plan (Section IX of the DS/Plan, the "Plan"), in the above-captioned Chapter 11 lead bankruptcy case.

The Court has approved the Disclosure Statement which provides information to assist you in deciding how to vote your ballot.  If you do not have a copy of the DS/P, you may obtain a copy from:

Counsel to the Debtors:
Levene, Neale, Bender, Yoo & Golubchik L.L.P.
2818 La Cienega Avenue
Los Angeles, CA 90034
Telephone: (310) 229-1234; Email: JSK@LNBYG.COM
Attn: Jeffrey S. Kwong, Esq.

The Court's approval of the Disclosure Statement does not indicate approval of the Plan by the Court.

You should review the DS/P before you vote. You may wish to seek legal advice concerning the Plan and your classification and treatment under the Plan. Your claim has been placed in Class ___ as a ___ claim under the Plan. If you hold claims in more than one class, you will receive a ballot for each class in which you may be entitled to vote. The fact that you have received a ballot is not an admission by the Debtors that you are entitled to vote.

If your ballot is not received by the Debtors at the address set forth below, on or before **_____, 2025, at 5:00 p.m. prevailing Pacific Time (the "Voting Deadline")**, and such deadline is not extended, your vote will not count as either an acceptance or rejection of the Plan. For a vote to be counted, you must (a) complete all the required information on this ballot, and (b) sign, date and return the completed ballot by first class mail, messenger, or overnight courier so that it is actually received no later than the Voting Deadline.

If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote.

**ACCEPTANCE OR REJECTION OF THE PLAN**

The undersigned, the holder of a Class ___ claim in the unpaid amount of _____ Dollars ($_____)

(Check one box only)

[ ] ACCEPTS THE PLAN                    [ ] REJECTS THE PLAN

**ELECTION TO OPT-OUT OF THIRD PARTY RELEASES IN PLAN**

YOU ARE ADVISED TO CAREFULLY REVIEW THE RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS SET FORTH IN THE PLAN, AS YOUR RIGHTS MIGHT BE AFFECTED. AS A HOLDER OF A CLAIM OR INTEREST UNDER THE PLAN, YOU ARE DEEMED TO CONSENT TO THE THIRD-PARTY RELEASES IF THE COURT CONFIRMS THE PLAN. YOU MAY CHECK THE BOX BELOW TO OPT OUT OF THE THIRD-PARTY RELEASE PROVISIONS SET FORTH IN ARTICLE 11 OF THE PLAN. IF YOU DO NOT OPT OUT OF THE THIRD-PARTY RELEASE PROVISIONS SET FORTH IN ARTICLE 11 OF THE PLAN, YOU WILL BE DEEMED TO HAVE EXPRESSLY, UNCONDITIONALLY, GENERALLY, INDIVIDUALLY, AND COLLECTIVELY CONSENTED TO THE RELEASE OF ALL CLAIMS AND CAUSES OF ACTION AGAINST THE RELEASED PARTIES. YOUR RECOVERY UNDER THE PLAN WILL BE THE SAME IF YOU OPT OUT. ELECTION TO WITHHOLD CONSENT IS AT YOUR OPTION.

2

The undersigned holder of a claim hereby elects to:

> [ ] Opt out of the third-party releases contained in Article 11 of the Plan. By checking
> this box, the undersigned hereby acknowledges that, to the extent it is a Releasing
> Party (as defined in Section 11.9 of the Plan) under the Plan, it is choosing to forego
> the benefits of obtaining such release and will not be considered a Releasing Party
> Party.

**ADMINISTRATIVE CLAIMANTS (PLEASE ONLY FILL OUT IF YOU ARE THE
HOLDER OF AN ADMINISTRATIVE CLAIM)**

The undersigned, the holder of an administrative priority claim in the unpaid amount of _____
Dollars ($_____) and who filed administrative proof of claim #__ with the Bankruptcy Court on
__/__/202_, hereby:

> [ ] AGREES WITH THE PLAN'S PROPOSED TREATMENT TO HOLDERS OF
> ADMINISTRATIVE CLAIMS

> [ ] DISAGREES WITH THE PLAN'S PROPOSED TREATMENT TO HOLDERS OF
> ADMINISTRATIVE CLAIMS

Dated: _____, 2025

Print or type name:_____

Signature:_____
Title (if corporation or partnership):_____
Address:        _____
                _____

RETURN THIS BALLOT TO:
Levene, Neale, Bender, Yoo & Golubchik L.L.P.
2818 La Cienega Avenue
Los Angeles, CA 90034
Telephone: (310) 229-1234
Attn: Jeffrey S. Kwong, Esq.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 915 Wilshire Blvd., Suite 1850, Los Angeles, CA 90017.

A true and correct copy of the foregoing document entitled: **UNITED STATES TRUSTEE'S OBJECTION TO PLAN PROPONENTS' JOINT COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN OF REORGANIZATION DATED MARCH 14, 2025** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On 04/01/2025, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Jessica L Bagdanov**    jbagdanov@bg.law, ecf@bg.law
- **Keith Patrick Banner**    kbanner@greenbergglusker.com; calendar@greenbergglusker.com; cmillerwatkins@greenbergglusker.com
- **Sara Chenetz**    schenetz@perkinscoie.com; docketLA@perkinscoie.com; cmallahi@perkinscoie.com; jkulow@perkinscoie.com; chenetz-sara-perkins-coie-8670@ecf.pacerpro.com; rleibowitz@perkinscoie.com
- **Russell Clementson**    russell.clementson@usdoj.gov
- **Alan W Forsley**    alan.forsley@flpllp.com; awf@fkllawfirm.com; awf@fl-lawyers.net; addy@flpllp.com; andrea@flpllp.com
- **Evelina Gentry**    evelina.gentry@akerman.com; rob.diwa@akerman.com; reyko.delpino@akerman.com
- **Tracy Green**    tgreen@fennemorelaw.com; ecfbankruptcy@fennemorelaw.com
- **Robbin L. Itkin**    ritkin@sklarkirsh.com; mduran@sklarkirsh.com; KFRAZIER@SKLARKIRSH.COM
- **Michael S Kogan**    mkogan@koganlawfirm.com
- **Jeffrey S Kwong**    jsk@lnbyg.com; jsk@ecf.inforuptcy.com
- **Aaron J Malo**    amalo@sheppardmullin.com; abilly@sheppardmullin.com; mlinker@sheppardmullin.com
- **Timothy McMahon**    tmcmahon@sklarkirsh.com; mduran@sklarkirsh.com
- **David L. Neale**    dln@lnbyg.com
- **Howard Steinberg**    steinbergh@gtlaw.com; pearsallt@gtlaw.com; NEF-BK@gtlaw.com; howard-steinberg-6096@ecf.pacerpro.com
- **United States Trustee (SV)**    ustpregion16.wh.ecf@usdoj.gov

**2. SERVED BY UNITED STATES MAIL**: On (date) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (date) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 04/01/2025 | Eryk R. Escobar | /s/ Eryk R. Escobar |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.